**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

| | | |
|---|---|---|
| KYLE BUTLER RASHLEY, *et al.* | : | |
| Plaintiffs, | : | Case No. 1:25-cv-21690-KMW |
| | : | |
| v. | : | Judge Kathleen Williams |
| : | | |
| BOOST HEALTH INSURANCE AGENCY, LLC, | : : | Magistrate Judge Enjolique Lett |
| Defendant. | : : | |

## JOINT MOTION FOR A DISCOVERY HEARING

**Boost's Position:** Boost seeks, and the Parties agree to, a search of the Counterclaim Defendants' devices identified as the ones they used during the relevant time period here. The issue before the Court is the scope of this search, which has already been coordinated by Boost.[1]

With respect to the search, Boost requests the following:

(1) All communications between Counterclaim Defendants including, calls, text messages, emails, direct messages, and social media messages, that refer to: (i) Boost, (ii) lawsuits, (iii) the Telephone Consumer Protection Act ("TCPA");

(2) All communications between Mr. Dungey and any individual including, but not limited to: calls, text messages, emails, direct messages, and social media messages, that refer or relate to, without limitation: (i) Boost, (ii) lawsuits, (iii) the TCPA;

(3) All communications between Mr. Rashley and any individual including, but not limited to: calls, text messages, emails, direct messages, and social media messages, that refer or relate to, without limitation: (i) Boost, (ii) lawsuits, (iii) the TCPA;

(4) Website browser history related to Boost;

[1] In March, Boost retained KDL Discovery to conduct imaging and forensic examination of the three devices, with several options to complete the process. KDL provides several options by which to complete this process, including an in-person imaging at counsel's office or Plaintiffs' homes or at KDL's Tampa, FL location. Upon completion of the imaging, KDL will conduct a search based on the parameters provided by the Parties. The Parties have not reached complete agreement on the manner for this inspection to occur. Given that Boost has already incurred significant legal fees on this issue during the preceding three months, it advocates for the in-person imaging at KDL's office in Tampa as the most cost effective. In the alternative, Boost requests that the imaging take place at the Counterclaim Defendants' counsel's office or their homes, and be subject to an equal division of costs between them given the extra expenses, including KDL's travel and mileage.

(5) Website browser history between February 1, 2025 and April 30, 2025; and

(6) Any affirmative efforts to delete information on the devices from February 1, 2025 to the present.

The Counterclaim Defendants agreed to very little - only to a limited search of Boost's website on the days in question. They argue No. 6 is too broad and must be limited to the deletion of actual evidence, not the general deletion of information. Boost's position is this information from the devices is highly relevant to both the claims and defenses of the Parties and is narrowly tailored with reasonable time limitations. Counterclaim Defendants brought this putative class action alleging violations of the TCPA stemming from **calls and text messages** allegedly placed to **their devices without consent**. Notably, as affirmative defenses to Counterclaim Defendants' TCPA claims, Boost asserts that Counterclaim Defendants consented to be contacted, that the contact to the Counterclaim Defendants occurred by their own actions and due to unclean hands.[2]

Furthermore, Boost asserts counterclaims that, prior to the alleged receipt of the calls and texts at issue here, Counterclaim Defendants conferred with each other through their devices and purposefully engaged in fraud to engender these calls and texts by using their devices to access Boost's website and deliberately enter false opt-in information. Boost exclusively controls its website, does not use third-parties to drive traffic to it, and tracks information inputted onto the website. Here, Boost alleges in its affirmative counterclaims that Counterclaim Defendants entered their real telephone numbers, provided consent to be contacted on the website but otherwise provided false information, including that: (1) Mr. Rashley used the alias of John Renoylds; and (2) Mr. Dungey used the alias of Thomas Murphy. (Doc. 14)[3] A search of Counterclaim Defendants' devices will reveal information that is the crux of the counterclaims and defenses of Boost, including coordinated actions, fraudulent conduct, consent, affirmative conduct to solicit contact and the potential spoliation of evidence.

---

[2] (Doc. 7)

[3] This Court has already established Boost's allegations constitute a *prima facie* case. (Doc. 26)

In addition, a search of Counterclaim Defendants' devices will reveal information going to credibility. In their sworn Declarations and verified discovery responses, Counterclaim Defendants represent they have never communicated with each other. Boost seeks information from their devices related to whether that is truthful (excluding privileged communications). In addition, Mr. Rashley's device appears to be a pre-paid or disposable phone that may not be able to track call detail records from the carrier. This may undermine his TCPA claims, and inspection will permit for this additional credibility challenge to his claims.[4]

**Position of Mr. Rashley and Mr. Dungey[5]**

**I. Requests 1–4: Objection**

A. Boost's Own Records Are the Best Evidence of Its Counterclaim Theory.

Boost's counterclaims allege that Plaintiffs submitted fraudulent lead-generation forms under false aliases ("John Renoylds" for Mr. Rashley and "Thomas Murphy" for Mr. Dungey). Yet Boost has admitted it "has exclusive control over its first party website, does not use third-parties to drive traffic to it, and tracks the information inputted onto the website." [D.E. 28 at 6]. That admission is dispositive. If Plaintiffs submitted forms, Boost's own servers recorded the data, IP address, and timestamp. Boost does not need Plaintiffs' devices to prove its counterclaims. The proper course is for Boost to obtain the originating IP address from its own records and subpoena subscriber information from the relevant ISP, a far less invasive step. Forensic imaging of an entire phone to answer a question Boost can answer with its own website logs is textbook disproportionality. *See* Fed. R. Civ. P. 26(b)(1).

B. Plaintiffs' Sworn Discovery Responses Already Address the Key Questions.

---

[4] Boost previously fully briefed the reasons for this inspection request in its Motion to Compel (Doc. 28), which was denied for procedural reasons and not based on the merits. Boost refers the Court to such briefing for a full elucidation of Boost's position should the Court seek additional details and explanation.

[5] As a threshold matter, Plaintiffs assert that the Court already considered and denied Boost's request for device inspection. The Court denied Boost's Motion to Compel Discovery [D.E. 28] by Paperless Order on May 14, 2026. Nothing has changed since that ruling; Boost has adduced no new facts and identified no new argument.

In verified discovery responses, Mr. Rashley denied: (1) using a VPN in 2025; (2) ever using the name "John Reynolds" or "John Renoylds"; (3) communicating with Daina Belo Francois; and (4) visiting findyourhealthplan.org. Mr. Rashley further explained that other companies also sent texts referencing "John" to his number, consistent with someone else having used that alias without his knowledge. These sworn responses are the appropriate vehicle. If Boost disputes them, the remedy is a deposition, not forensic imaging. Boost has not deposed either Plaintiff, served targeted document requests, obtained its own website records, or subpoenaed any ISP.

C. <u>Requests 1–3 Would Compel Disclosure of Privileged Communications.</u>

Requests 1–3 seek all communications between Plaintiffs and any person that mention Boost, lawsuits, or the TCPA, encompassing every attorney-client communication, every communication between co-Plaintiffs through shared counsel, and every communication with litigation consultants. All such communications are protected by the attorney-client privilege and/or common interest doctrine. Co-plaintiffs represented by common counsel routinely coordinate through counsel, and such communications are shielded. *See, e.g., Procaps S.A.* at *6. If Boost doubts Plaintiffs' representations, it may take their depositions, not image entire devices containing years of personal, medical, financial, and privileged communications.

D. <u>Request 4 Is Overbroad, and Boost's Cited Cases Are Distinguishable.</u>

Request 4 seeks all browser history "related to Boost Health Insurance Agency", which is vague, overbroad, and entirely subsumed by the narrowed Request 5 Plaintiffs are prepared to provide. Both need not be ordered. Boost's primary authority, *Hunt v. 21st Mortgage Corp.*, 2013 U.S. Dist. LEXIS 132574, is inapposite: that case permitted inspection of the *defendant's own* call-center hardware because no alternative existed. Here, the analogous evidence, the lead form submissions and originating IP addresses, is already in Boost's custody. Similarly, *Walker v. Credit Protection Ass'n, L.P.*, 2015 U.S. Dist. LEXIS 124276, denied a site-inspection motion because the moving party had

not first attempted written discovery or depositions. Boost has already received sworn responses but has likewise failed to conduct depositions.

## II. Request 5: Limited Agreement

Plaintiffs are willing to provide browser history for the specific lead-generation URLs identified in or associated with Boost's own outbound communications, including any form-submission pages cited in Boost's text messages, limited to the specific dates on which those communications were received. This targets the only browser history bearing on whether Plaintiffs visited any Boost web property. Plaintiffs have denied doing so under oath, and no history on those pages on those dates is expected to exist; if it does, Plaintiffs will provide it.

A wholesale production of all browser history from February 1 through April 30, 2025 (nearly three months of unrestricted browsing) would expose personal, financial, medical, and legal activity wholly unrelated to this litigation, and all of which is plainly disproportionate to the case's needs. *See* Fed. R. Civ. P. 26(b)(1); *Procaps S.A.* at *3.

## III. Request 6: Limited Agreement

Plaintiffs are willing to provide information about any affirmative destruction of evidence relevant to this litigation, meaning communications or data responsive to legitimate discovery requests that were deliberately destroyed after the duty to preserve arose. As drafted, however, the request demands disclosure of "any affirmative efforts to erase or delete information" from February 1, 2025 to the present, encompasses every deleted text, removed app, cleared cache, and deleted file over sixteen months, regardless of relevance. Routine device management is not spoliation and is not a proper subject of forensic discovery.[6]

---

[6] The Court denied Boost's Motion to Compel device imaging six weeks ago and nothing has changed. Boost's own records are the best evidence of its counterclaim theory; Plaintiffs have answered the key questions under oath; and depositions and targeted requests remain available. Requests 1–4 would sweep in privileged communications and years of unrelated personal data in clear violation of Rule 26(b)(1)'s proportionality requirement. Plaintiffs respectfully request that the Court: (1) deny Requests 1 through 4; (2) limit Request 5 to browser history for the lead-generation websites in Boost's own outbound communications, restricted to the dates those communications were received; and (3) limit Request 6 to evidence of affirmative destruction of material relevant to this litigation.

Respectfully submitted,

/s/ Lisa A. Messner
Lisa A. Messner
Admitted *pro hac vice*
Ohio Bar No. 74034
Mac Murray & Shuster, LLP
6525 West Campus Oval, Suite 210
New Albany, Ohio 43054
Tel: (614) 939-9955
E: lmessner@mslawgroup.com

Nelson Bellido
Florida Bar No. 974048
Florida Bar No. 974048
ROIG LAWYERS
201 S. Biscayne Blvd, 28th Floor
Miami, FL 33131
Tel: (305) 405-0997
E: nbellido@roiglawyers.com

*Attorneys for Defendant Boost Health Agency Insurance, LLC*

/s Allison B. Duffie
Allison B. Duffie, Esq.
Fla. Bar No. 649902
DUFFIE LAW, PLLC
2234 North Federal Highway
No. 1196
Boca Raton, Florida 33431
Tel: 561.440.1196
E: allison@duffie.law

*Attorney for Plaintiffs Kyle Butler Rashley and Nicholas Dungey*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on June 24, 2026 I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

*/s/Allison B. Duffie, Esquire*