UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

KYLE BUTLER RASHLEY, and
NICHOLAS DUNGEY, on behalf of
Themselves and others similarly situated,

Plaintiffs, Case No.: 1:25-CV-21690-KMW

v.

BOOST HEALTH INSURANCE, INC.,

Defendant.
____________________________________/

**NON-PARTIES ANDREW HEIDARPOUR, ESQ.,**
**DANA OLIVER, ESQ., AND HEIDARPOUR LAW OFFICE PLLC'S**
**<u>MOTION FOR PROTECTIVE ORDER</u>**

Non-Parties Andrew Heidarpour, Esq. ("**Heidarpour**"), Dana Oliver, Esq. ("**Oliver**"), and Heidarpour Law Office PLLC ("the **Firm**") ("the **Non-Parties**"), by and through the undersigned counsel, and pursuant to Fed. R. Civ. P. 45(d)(1) and (3), respectfully moves for a protective order quashing or modifying, the three subpoenas issued and served by Boost Health Insurance, Inc. ("**Boost**") on or about August 6, 2026 (the "**Subpoenas**") (attached hereto as ***Exhibit 1***), and state as follows:

## I. <u>INTRODUCTION</u>

With the Subpoenas, Boost ostensibly seeks a litany of documents and materials, and testimony regarding those materials, related to the litigation and parties in the above-captioned case, No. 1:25-CV-21690-KMW, arising out of alleged violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 (the "**TCPA Action**").

Through the Firm, Heidarpour and Oliver represented Plaintiffs Kyle Butler Rashley ("**Rashley**") and Nicholas Dungey ("**Dungey**") (collectively, "**Plaintiffs**") in connection with the

TCPA Action. Without disclosing confidential details, the Non-Parties also represented Plaintiffs in other, unrelated matters. Although the Firm did not enter an appearance in the TCPA Action as counsel of record, it entered into separate engagement agreements with respect to the TCPA Action with Rashley on April 9, 2025; and Dungey on April 11, 2025.

On behalf of his clients, Heidarpour liaised with local counsel Avi Robert Kaufman, Esq., and Allison B. Duffie, Esq., who entered appearances as counsel for Plaintiffs in this TCPA Action. Due to irreconcilable differences, Heidarpour terminated those engagement agreements and ended his representation of Plaintiffs on August 12, 2026. However, the attorney-client and work product privileges survive the termination of an engagement agreement or legal representation.[1]

Boost's Subpoenas seek the production of numerous materials that are protected by the attorney-client and work product privileges and therefore exempt from production. Furthermore, the requests in the Subpoenas are so broadly asserted as to make any production of nonprivileged materials unduly burdensome; they are grossly disproportionate to the needs of the case. The Non-Parties timely responded to the Subpoenas and asserted these objections with particularity, but noted that even preparing a privilege log would be unduly burdensome and costly given the vast universe of materials requested by the Subpoenas *See the Non-Parties' Responses to the Subpoenas*, attached hereto as ***Exhibit 2***.

[1] *See Rule 4-1.6, R. Regul. Fla. Bar, Comment, June 30, 2026* ("The duty of confidentiality continues after the client-lawyer relationship has terminated."); *Rule 4-1.9(c), R. Regul. Fla. Bar* ("A lawyer who has formerly represented a client in a matter must not afterwards . . . reveal information relating to the representation except as these rules would permit or require with respect to a client.").

After timely raising the above-referenced arguments in the responses to the Subpoenas, the undersigned counsel attempted to confer with Boost's counsel regarding the scope of the subpoenas in an effort to resolve these issues without the Court's intervention as required by the Local Rules. *See Written Conferral Correspondence*, attached hereto as ***Exhibit 3***. During those extensive conferral efforts, the undersigned repeatedly noted the undue burden the Subpoenas placed on the Non-Parties as the result of their overbreadth and the plain attorney-client privilege implications, and sought an appropriate narrowing of the Subpoenas' scope by agreement of counsel. *See id.* Despite those efforts, on September 24, 2026, counsel for Boost advised the undersigned that an impasse had been reached. *See id.*

Because the Subpoenas improperly seek an unreasonably vast universe of irrelevant and privileged information and impose an undue burden on the Non-Parties and because the Non-Parties' good faith conferral efforts to narrow the Subpoenas were unsuccessful, the Non-Parties are left with no alternative but to respectfully request that the Court enter a protective order (1) finding that the Subpoenas are violative of the Federal Rules of Civil Procedure; and (2) quashing or limiting the Subpoenas.

## II. LEGAL STANDARDS

### A. General Discovery Standards

Under Fed. R. Civ. P. 26(b)(1), "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." Relevant matter is broadly defined as information that "appears reasonably calculated to lead to the discovery of admissible evidence." *Id.* Although the Rules "strongly favor full discovery whenever possible," *Farnsworth v. Procter & Gamble Co.*, 758 F.2d 1545, 1547 (11th Cir. 1985), discovery "is not without limits,"

*Maharaj v. GEICO Cas. Co.*, 289 F.R.D. 666, 669 (S.D. Fla. 2013) (citing *Washington v. Brown & Williamson Tobacco*, 959 F.2d 1566, 1570 (11th Cir. 1992)).

Under Rule 26(b)(2)(C), courts are **required** to limit discovery if it is determined that the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues.

Under Rule 26(c)(1), "[t]he court **may for good cause**, issue an order to protect a party or person from annoyance, embarrassment, oppression, or **undue burden or expense.**" (emphasis added). Good cause for a protective order generally requires "'a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements.'" *Auto-Owners Ins. Co. v. Se. Floating Docks, Inc.*, 231 F.R.D. 426, 430 (M.D. Fla. 2005) (quoting *U.S. v. Garrett*, 571 F.2d 1323, 1326 n.3 (5th Cir. 1978)). In such a protective order, courts may outright forbid the discovery, forbid inquiry into certain matters, or limit the scope of disclosure or discovery to certain matters, in addition to other possible courses of action. *See* Fed. R. Civ. P. 26(c)(1)(A), (D).

There are additional high standards in place specifically protecting non-parties who are subpoenaed in connection with a federal action. With respect to subpoenaing a non-party, Rule 45(d)(3)(A) **requires** a court to quash or modify a subpoena that "requires disclosure of privileged or other protected matter, if no exception or waiver applies," or "subjects a person to undue burden." Further, Rule 45(d)(1) imposes a duty on the subpoenaing party to "take reasonable steps to avoid imposing undue burden or expense on [non-parties]." Courts "**must** enforce this duty and

impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply." *Id.* (emphasis added).

**B. The Attorney-Client Privilege**

A universal principle of American jurisprudence is that a lawyer has a legal and an ethical duty to keep confidential information relating to a client's representation. *See Rule 4-1.6(a), R. Regul. Fla. Bar* ("A lawyer must not reveal information relating to a client's representation . . . unless the client gives informed consent."); Fla. Stat. § 90.502(1)(c). ("A communication between lawyer and client is "confidential" if it is not intended to be disclosed to third persons other than: 1. Those to whom disclosure is in furtherance of the rendition of legal services to the client. 2. Those reasonably necessary for the transmission of the communication.").[2]

Indeed, "[a] fundamental principle in the client-lawyer relationship is that, in the absence of the client's informed consent, the lawyer must not reveal information relating to the representation." *Rule 4-1.6, R. Regul. Fla. Bar, Comment, June 30, 2026.* As noted above, this principle extends to both clients and former clients. *See Rule 4-1.6, R. Regul. Fla. Bar, Comment, June 30, 2026*; *Rule 4-1.9(c), R. Regul. Fla. Bar.*

[2] Mr. Heidarpour is not licensed to practice law in Florida; rather, he is licensed in Washington, D.C. Nevertheless, the rules of professional conduct of that jurisdiction are substantially similar in nature to those governing this jurisdiction and are informed by the same principles. *See D.C. Rules of Prof'l Conduct R.1.6(a)* ("Except when permitted [by rule], a lawyer shall not knowingly: (1) reveal a confidence or secret of the layer's client; (2) use a confidence or secret of the lawyer's client to the disadvantage of the client; (3) use a confidence or secret of the lawyer's client for the advantage of the lawyer or of a third person."); *see also Model Rules of Pro. Conduct r. 1.6(a)* (A.B.A. 2026) ("A lawyer shall not reveal information relating to the representation of a client unless the client gives informed consent, the disclosure is impliedly authorized in order to carry out the representation, or the disclosure is permitted [by rule].").

The confidentiality of attorney-client privileged communications is considered to be "***one of the most sacrosanct principles of the law***," *Reuter v. Physicians Cas. Risk Retention Grp.*, 2017 WL 395242, at *4 (S.D. Fla. Jan. 27, 2017) (emphasis added), and is "traditionally deemed worthy of ***maximum legal protection.***" *Maharaj v. GEICO Cas. Co.*, 289 F.R.D. 666, 669 (S.D. Fla. 2013) (emphasis added). Importantly, "the confidentiality rule applies not merely to matters communicated in confidence by the client but also to ***all information relating to the representation, whatever its source.***" *Rule 4-1.6, R. Regul. Fla. Bar, Comment, June 30, 2026* (emphasis added).[3]

The Eleventh Circuit long has acknowledged the importance of the protection afforded by both the attorney-client privilege and the work product doctrine. Citing precedent from the United States Supreme Court, the Eleventh Circuit has held that these protections promote the public interests in the observance of law and the administration of justice, and protect the integrity of the adversarial process of litigation:

> The attorney-client privilege attaches, of course, to confidential communications between an attorney and client for the purposes of securing legal advice or assistance. *See In re Grand Jury Investigation*, 842 F.2d 1223, 1224 (11th Cir. 1987). The purpose of the privilege is "to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." *United States v. Zolin*, 491 U.S. 554, 562, 109 S.Ct. 2619, 105 L.Ed.2d 469 (1989) (internal quotation marks omitted).

---

[3] This rule is applicable across jurisdictions. *See D.C. Rules of Prof'l Conduct R.1.6, Comment [8]* ("The rule of client-lawyer confidentiality applies . . . not merely to matters communicated in confidence by the client (i.e. confidences) but also to all information gained in the course of the professional relationship that the client has requested to be inviolate, or the disclosure of which would be embarrassing or would be likely to be detrimental to the client (i.e., secrets)."); *see also Model Rules of Pro. Conduct r. 1.6, Comment [3]* (A.B.A. 2026) ("The confidentiality rule . . . applies not only to matters communicated in confidence by the client but also to all information relating to the representation, whatever its source.").

> Attorney work product protection extends to material obtained or prepared by counsel in the course of their legal duties provided that the work was done with an eye toward litigation. *See* Fed. R Civ. P. 26(b)(3)(A); *Cox v. Adm'r U.S. Steel & Carnegie*, 17 F.3d 1386, 1421–22 (11th Cir. 1994). Work product protection prevents most inquiries into an attorney's work files and mental impressions. *Hickman v. Taylor*, 329 U.S. 495, 510, 67 S.Ct. 385, 91 L.Ed. 451 (1947). The purpose of this protection is to protect the integrity of the adversary process by allowing a lawyer to work "with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel." *Id.*

*Drummond Co., Inc. v. Conrad & Scherer, LLP*, 885 F.3d 1324, 1334–35 (11th Cir. 2018).

### C. <u>**Exceedingly Broad and Unduly Burdensome Subpoena Requests**</u>

Parties subpoenaing non-parties are required to "take reasonable steps to avoid imposing undue burden or expense on a person subject to [a] subpoena." Fed. R. Civ. P. 45(d)(1). A party issuing a subpoena therefore must narrow its requests and "take reasonable steps to identify the correct recipient." *See Feingold v. Cardinale*, No. 22-CV-20375, 2023 WL 8476408 at *8 (S.D. Fla. November 1, 2023) (Reid, M.J.). Federal trial courts in this District have rejected subpoena requests where "[t]he universe of information covered by [the] requests appears to be boundless and untethered to the claims or defenses actually at issue in the case." *See Am. Federation of State, Cnty., and Mun. Employees (AFSCME) Council 79 v. Scott*, No. 11-21976-CIV, 277 F.R.D. 474, 478 (S.D. Fla. December 5, 2011) (Torres, M.J.); *see also McMullen v. GEICO Indem. Co.*, No. 14-CV-62467, 2015 WL 2226537 at *8 (S.D. Fla. May 13, 2015) (Valle, M.J.) ("The problem with the subpoenas . . . is that they are incredibly overbroad and unduly burdensome as written. Instead of narrowly tailoring the subpoenas to specific issues in the case, GEICO seeks *all* of the documents in the lawyers' files related to the accident, claim, and resulting lawsuit.").

Discovery is not a fishing expedition. *See Cox*, 17 F.3d at 1416 (quoting *Zolin*, 491 U.S. at 571). The Federal Rules of Civil Procedure demand both relevance and proportionality, twin

guardrails that prevent litigation from devolving into costly theatrical productions. The 2015 amendments to Rule 26(b)(1) reinforced these limitations with surgical precision, recognizing that unbridled discovery privilege had become discovery abuse.

**D. <u>The Crime-Fraud Exception</u>**

During preliminary meet and confer sessions, counsel for Boost suggested that the materials sought in the Subpoenas were stripped of the protections of the attorney-client privilege and the work product doctrine due to the application of the crime-fraud exception. *See* ***Exhibit 3***

To determine whether the crime-fraud exception applies, the Eleventh Circuit established a two-part test requiring from the proponent of the exception both (1) a *prima facie* showing of a qualifying completed or planned crime or fraud by the client; and (2) a showing that the client obtained the attorney's assistance to further that crime or fraud, or that the assistance was closely related to the crime or fraud:

> **First**, there must be a *prima facie* showing that the client was engaged in criminal or fraudulent conduct when he sought the advice of counsel, that he was planning such conduct when he sought the advice of counsel, or that he committed a crime or fraud subsequent to receiving the benefit of counsel's advice. **Second**, there must be a showing that the attorney's assistance was obtained in furtherance of the criminal or fraudulent activity or was closely related to it.

*In re Grand Jury Investigation (Schroeder)*, 842 F.2d 1223, 1226 (11th Cir. 1987) (emphasis added).

"The first prong is satisfied by a showing of evidence that, if believed by a trier of fact, would establish the elements of some violation that was ongoing or about to be committed." *Id.* "The second prong is satisfied by a showing that the communication is related to the criminal or fraudulent activity established under the first prong." *Id.* at 1227.

The Eleventh Circuit has clearly identified that the crime-fraud exception targets communications "that should not be privileged ***because they were used to further a crime or a fraud.***" *Id.* Accordingly, federal courts in this District applying the litmus test for the crime-fraud exception have held that "***the existence of a crime or fraud does not create a blanket evisceration of the privilege; it only extinguishes the privilege for those communications and documents connected to the crime or fraud.***" *Hominski v. Gusar, LLC*, No. 24-CV-21590, 2026 WL 1261972 at *7 (S.D. Fla. May 8, 2026) (emphasis added) (quoting *Diamond Resorts U.S. Collection Dev., LLC v. US Consumer Att'ys, P.A.*, No. 9:18-CV-80311, 519 F. Supp. 3d 1184, 1222 (S.D. Fla. 2011).

Thus, the crime-fraud exception must be narrowly construed and applied with caution to prevent opponents of the privilege from engaging in "groundless fishing expeditions." *See Cox*, 17 F.3d at 1416 (quoting *Zolin*, 491 U.S. at 571).

While the Eleventh Circuit has not elaborated on what constitutes a *prima facie* showing, federal trial courts in this District use a shifting standard regarding the burden of proof for determining the applicability of the crime-fraud exception. That shifting standard places the initial burden on the party opposing the attorney-client privilege to make a *prima facie* case that the exception applies, and then gives the party invoking the attorney-client privilege the opportunity to rebut:

> [T]he party opposing attorney-client privilege based on the crime/fraud exception has the initial burden of producing evidence which, if unexplained, would be *prima facie* proof of the existence of the exception. If that occurs, the burden of persuasion then shifts to the party asserting the privilege to give a reasonable explanation of its conduct, which it can do by demonstrating by a preponderance of the evidence that the *prima facie* showing that the crime/fraud exception applies should not be accepted. If the court accepts the explanation as sufficient to rebut the evidence presented by the party opposing the privilege, then the privilege remains. If the

> court does not find the evidence is sufficient to rebut the *prima facie* case, then the *prima facie* case still exists and the privilege is lost.

*Hominski*, 2026 WL 1261972 at *4 (internal quotes and citations omitted).

If a showing of "factual basis adequate to support a good faith belief by a reasonable person that *in camera* review of the materials may reveal evidence to establish the claim that the crime-fraud exception applies," then the Court may, in its sound discretion, decide to so engage in *in camera* review of the relevant materials. *Zolin*, 491 U.S. at 572.

## III. ANALYSIS

### A. The Subpoenas Are Unreasonably Overbroad and Unduly Burdensome

In this case, Boost has made no apparent effort to reasonably narrow the requests in the Subpoena and in multiple, appears to have failed to even identify the correct recipient. Many of the requests seek "all documents that refer or relate" to one of the Non-Parties themselves, one of the Non-Parties' former clients, or other persons or telephone numbers without any limitation whatsoever. Cursory review of the requests demonstrates that the Subpoenas "sweep[] more broadly than relevance and proportionality permit." *See Wendy's Netherlands B.V. v. Levy*, No. 26-14162-MC, 2026 WL 1649603 at *4 (S.D. Fla. May 27, 2026) (Maynard, M.J.); *See also McMullen*, 2015 WL 2226537 at *8 ("The problem with the subpoenas . . . is that they are incredibly overbroad and unduly burdensome as written. Instead of narrowly tailoring the subpoenas to specific issues in the case, GEICO seeks *all* of the documents in the lawyers' files related to the accident, claim, and resulting lawsuit."). Indeed, the Subpoenas do not, as drafted, even limit their scope to the present case.

As noted above, neither Heidarpour nor the Firm appeared as counsel of record in the TCPA Action, and the Non-Parties' involvement in the TCPA Action was limited. *See* ***Exhibit 2***.

However, the Subpoena gives these facts no consideration. As drafted, the Subpoenas constitute the exact type of fishing expedition that courts routinely and summarily forbid. *See Cox*, 17 F.3d at 1416 (quoting *Zolin*, 491 U.S. at 571).

Further illustrating the unreasonable breadth of the Subpoenas, in request no. 14, Boost asked the each of the Non-Parties, Heidarpour and the Firm included, to produce "[a]ll documents exchanged between you and Andrew Heidarpour" referring or relating to a litany of persons and subjects, again without limitation. This request, like most of the Subpoenas' requests, on its face seeks a universe of information that is "boundless and untethered to the claims or defenses actually at issue in the case." *Id.* Further, as Heidarpour is the founding attorney and primary actor in the name of the Firm, this request is logically incoherent; Heidarpour has not "exchanged" documents with himself, and it is unclear how that could ever occur. It is important to note that the requests in the Subpoena to the Firm, including request no. 14, are identical to those in two other Subpoenas issued by Boost to Heidarpour himself and to Oliver. *See* ***Exhibit 1***. The apparent copy-and-paste approach Boost has taken to the Subpoenas is a strong indicator that the Subpoenas is an impermissible fishing expedition. *See Cox*, 17 F.3d at 1416 (quoting *Zolin*, 491 U.S. at 571).

More seriously, the Subpoena's unreasonably overbroad requests represent an attempt to discover how the Firm, investigates, works on, and prosecutes TCPA claims generally, rather than to discover facts and materials relevant to the TCPA Action at issue. Allowing Boost to pierce the attorney-client privilege for such an improper purpose would not only violate the confidentiality of these Plaintiffs but would create a chilling effect across similarly situated parties and potential class action lawsuits.

As discussed in the Non-Parties' responses to the Subpoenas, *see* ***Exhibit 2***, and below, the Non-Parties have no choice but to invoke the attorney-client privilege in objecting to the Subpoenas generally, and as to their specific requests. It is well-settled that generally a party asserting the attorney-client privilege bears the burden of proving the existence of the privilege. *See United States v. Schaltenbrand*, 930 F.2d 1554, 1562 (11th Cir. 1991). Ordinarily, courts require parties to meet this burden by producing a privilege log or index rather than asserting a blanket claim of privilege, or otherwise waive the privilege. *See Thermoset Corp v. Building Materials Corp. of America*, No. 14-60268-CIV, 2015 WL 1565310 at *6 (S.D. Fla. April 8, 2015 (citing *Universal City Dev. Partners, Ltd. v. Ride & Show Eng'g, Inc.*, 230 F.R.D. 688, 695 (M.D. Fla. Sept. 23, 2025)).

"The Eleventh Circuit has never determined what constitutes a timely production of a privilege log in response to a request for production of documents." *Id.* However, courts in this District evaluating this question have employed helpful analysis provided by the Ninth Circuit in *Burlington N. & Santa Fe. Ry. Co. v. United States Dist. Court for the Dist. Of Montana*, 408 F.3d 1142 (9th Cir. 2005). *See Thermoset Corp.*, 2015 WL 1565310 at *6. Under the *Burlington* analysis, courts apply several factors "in the context of a holistic reasonableness analysis" to determine the timeliness of the production of a privilege log, which are:

> the degree to which the objection or assertion of privilege enables the litigant seeking discovery and the court to evaluate whether each of the withheld documents is privileged (where providing particulars typically contained in a privilege log is presumptively sufficient and boilerplate objections are presumptively insufficient); the timeliness of the objection and accompanying information about the withheld documents . . . ; the magnitude of the document production; and other particular circumstances of the litigation that make responding to discovery unusually easy . . . or unusually hard.

*Id.*, citing *Burlington*, 408 F.3d at 1149.

As attested in the affidavit attached to the Non-Parties' responses to the Subpoenas, Heidarpour, on behalf of the Firm, made a good-faith effort to timely respond to the Subpoenas. *See **Exhibit 2***. However, due to the sheer unreasonable breadth of the Subpoenas, there are an estimated **70,000** pages of documents to be reviewed, organized, and catalogued.[4] None of the Non-Parties have access to vast resources sufficient to respond with even a privilege log without incurring enormous and disproportionate cost and burden. Even if the Subpoenas were reasonably narrowly tailored to require, or militate in favor of the production of a privilege log, a later-in-time privilege log production does not waive the attorney-client privilege, which is "a cornerstone of the entire judicial/legal system in this country." *Id.* (quoting *Adega v. State Farm Fire & Cas. Ins. Co.*, No. 07-20696-CIV, 2008 WL 1009719, at *2 (S.D. Fla. Apr. 9, 2008) (Brown, M.J.)).

As attested to in Heidarpour's affidavit, the documents requested include vast amounts of materials that are unrelated to the TCPA Action at issue, and review of such documents sufficient to produce a detailed privilege log would take an inordinate amount of time and incur an inordinate cost, and is not likely to lead to the production of relevant information or documents. *See **Exhibit 2***.

During conferral correspondence, despite the contents of the Subpoenas, counsel for Boost indicated that that Boost was not interested in privileged materials unrelated to the TCPA Action, and that 70,000 pages was excessive for a privilege log. Also during conferral correspondence, counsel for Boost was advised of the undue burden the Subpoenas imposed upon the Non-Parties, but refused to modify the Subpoenas or issue modified Subpoenas out of concern that doing so

[4] This figure is a good-faith estimate based on review of records, and does not include the approximately 1,350 pages of documents that Oliver has identified as being described in the subpoena issued to him.

would take too long in light of approaching deadlines in the TCPA Action. *See* ***Exhibit 3***. Additionally, in an apparent attempt to narrow the Subpoena, counsel for Boost *added* document search requests for materials related to a "John Reynolds or John Renoylds," which did not appear in the original subpoenas, increasing the amount of materials sought. *See id.*

A litigant's time restrictions do not obviate the litigant's obligations to a subpoenaed non-party under the Federal Rules of Civil Procedure. As drafted, the Subpoenas impose an undue burden on the Non-Parties and therefore plainly run afoul of Rule 45. Therefore, the Court should quash the Subpoenas or order that they be appropriately limited.

**B. Applying the Law Governing the Crime-Fraud Exception in this Case**

In this case, Boost has thus far made no such evidentiary showing as to either prong of the Eleventh Circuit's litmus test in *Schroeder* sufficient to demonstrate that the crime-fraud exception eviscerates the attorney-client privilege that obviously attaches to the Non-Parties' communications with their former clients regarding the instant TCPA Action and other cases and claims involving those former clients.

Counsel for Boost has communicated a belief that the crime-fraud exception applies to the materials sought in their Subpoenas because the Plaintiffs in this TCPA Action allegedly committed perjury by making false statements—namely that they each respectively did not know each other and did not communicate with each other—in affidavits in this TCPA Action. However, even a demonstration of the commission of perjury (which Boost has not plainly made yet) is not a sufficient *prima facie* showing for Boost to invoke the crime-fraud exception to pierce the sacrosanct attorney-client privilege.

Rather, to invoke the crime-fraud exception and oppose the applicable attorney-client privilege here, Boost must adhere to the law governing the crime-fraud exception as outlined above.

**First**, for each request in the Subpoenas that seeks privileged information, Boost must make a *prima facie* showing that the Firm's former client either (1) was engaged in criminal or fraudulent conduct when he sought the Non-Parties' advice; (2) was planning criminal or fraudulent conduct when he sought the Non-Parties' advice; *or* (3) committed a crime or fraud subsequent to receiving the benefit of the Non-Parties' advice. *See Schroeder*, 842 F.2d at 1226.

**Second**, if Boost succeeds in making such a *prima facie* showing, it must then show that the Non-Parties' assistance was obtained in furtherance of the criminal or fraudulent activity or was closely related to it. *Id.*

Boost has made no such showing to date and therefore has demonstrated no basis for the Firm to violate the attorney-client privilege by production of the protected materials it has sought in its Subpoenas. Further, even if Boost had done so, that does not end the inquiry: the Non-Parties, on behalf of their clients, would then have the opportunity to rebut any presumption that the crime-fraud exception applies. *See Hominski*, 2026 WL 1261972 at *4. The Court also retains discretion to perform an *in camera* review of the requested materials before ordering their production. *See Zolin*, 491 U.S. at 572.

Finally, even if Boost should somehow clear the high hurdles necessary to invoke the crime-fraud exception and pierce the attorney-client privilege, it can **only do so as to those particular materials and communications that were used to further the alleged crime or fraud**, since this exception does not give a party license for "groundless fishing expeditions," *see*

*Cox*, 17 F.3d at 1416 (quoting *Zolin*, 491 U.S. at 571), and does not create a "blanket evisceration" of the attorney-client privilege. *See Hominski*, 2026 WL 1261972 at *4. As explained above, the Subpoenas do not limit their reach in any meaningful way even to the present TCPA Action, but seek a vast universe of irrelevant and privileged materials with no apparent justification other than the crime-fraud exception. To satisfy their burden under *Schroeder*, Boost must demonstrate a connection between the crime or fraud and the specific materials sought. *See Schroeder*, 842 F.2d at 1227. With the Subpoenas seeking such a vast universe of materials, and the purported crime or fraud being ostensibly limited to discrete false statements in affidavits in the TCPA Action alone, it is exceedingly unlikely that Boost could ever make such a demonstration.

Therefore, until and unless Boost satisfies the stringent legal requirements set forth by the Eleventh Circuit, the Non-Parties are under **strict ethical and legal obligations** to continue to safeguard the Non-Parties' former clients' confidentiality and withhold those materials the Subpoenas request that are protected by the attorney-client privilege and work-product doctrine.

During conferral correspondence, counsel for Boost was advised that the Subpoenas as drafted improperly sought irrelevant materials protected by the attorney-privilege, but refused to modify the Subpoenas or issue modified Subpoenas out of concern that doing so would take too long in light of approaching deadlines in the TCPA Action. *See **Exhibit 3***. However, a litigant's time restrictions do not obviate the litigant's obligations to a subpoenaed non-party under the Federal Rules of Civil Procedure. As drafted, the Subpoenas seek privileged materials to which no exception or waiver applies, and therefore plainly run afoul of Rule 45.

Accordingly, the Court should enter a protective order quashing the Subpoenas or ordering a reasonable limitation to their requests.

## IV. CONCLUSION

In sum, all three Subpoenas as drafted are impermissibly broad, and the vast universe of materials sought by the Subpoenas includes wholly irrelevant materials, and materials protected by the attorney-client privilege. Even forcing the Non-Parties to create a privilege log documenting these materials as runs counter to the Federal Rules of Civil Procedure, and does not meaningfully further Boost's discovery interests in the TCPA Action. Under Rule 45, the Subpoenas plainly seek privileged materials not within any exception, and impose an undue burden upon the Non-Parties.

For the foregoing reasons, the Non-Parties respectfully request that the Court enter a protective order: (1) finding good cause to quash each of the Subpoenas as violative of the Federal Rules of Civil Procedure; and (2) quashing each of the three Subpoenas issued to the Non-Parties; or, in the alternative, requiring reasonable limitations to the Subpoenas; (3) awarding the Non-Parties reasonable attorney's fees and costs incurred in responding to the Subpoenas and filing this Motion under Fed. R. Civ. P. 45(d)(1); and (4) awarding any other such relief as the Court deems appropriate and just.

## CERTIFICATE OF CONFERRAL UNDER S.D. FLA. L. R. 7.1(a)(3)

**I HEREBY CERTIFY** that on September 17, 18, 22, and 23, 2026, counsel for the Non-Parties and counsel for Boost conferred via a telephone conference and e-mail correspondence about the relief requested in this Motion and no resolution was achieved. *See* ***Exhibit 3***.

Dated: September 24, 2026 Respectfully submitted,

COLE, SCOTT & KISSANE, P.A.

*Counsel for Non-Parties Heidarpour Law Office PLLC, Andrew Heidarpour, Esq., and Dana Oliver, Esq.*
Esperante Building
222 Lakeview Avenue, Suite 500
West Palm Beach, FL 33401
Telephone (561) 383-9234
Facsimile (561) 683-8977
Primary e-mail: Jeremy.Colvin@csklegal.com
Primary e-mail: Jensen.Hoernig@csklegal.com
Secondary e-mail: Bianca.Brostrom@csklegal.com

By:

*/s/ Jensen C. Hoernig*
Jeremy M. Colvin, Esq.
Florida Bar No.: 152226
Jensen C. Hoernig, Esq.
Florida Bar No.: 1055056