UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

KYLE BUTLER RASHLEY, and
NICHOLAS DUNGEY, on behalf of
Themselves and others similarly situated,

Plaintiffs, Case No.: 1:25-CV-21690-KMW

v.

BOOST HEALTH INSURANCE, INC.,

Defendant.
__________________________________/

**NON-PARTY ANDREW HEIDARPOUR, ESQ.'S**
**RESPONSE TO SUBPOENA**

Non-Party Andrew Heidarpour, Esq. ("**Heidarpour**"), by and through the undersigned counsel, and pursuant to Fed. R. Civ. P. 45 hereby responds to the subpoena issued and served by Boost Health Insurance, Inc. ("**Boost**") on or about August 6, 2026 (the "**Subpoena**"), and states as follows:

**MEMORANDUM OF LAW**

With the Subpoena, Boost seeks a litany of documents related to the litigation and parties in the above-captioned case, No. 1:25-CV-21690-KMW, arising out of alleged violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 (the "**TCPA Action**").

Through his law firm known as Heidarpour Law Office PLLC ("the **Firm**"), Mr. Heidarpour represented Plaintiffs Kyle Butler Rashley ("**Rashley**") and Nicholas Dungey ("**Dungey**") (collectively, "**Plaintiffs**") in connection with the TCPA Action. Without disclosing confidential details, the Firm also represented Plaintiffs on other matters. *See Affidavit of Andrew Heidarpour, Esq., attached hereto as **Exhibit 1.*** Although the Firm did not enter an appearance in

the TCPA Action as counsel of record, it entered into separate engagement agreements with respect to the TCPA Action with Rashley on April 9, 2025; and Dungey on April 11, 2025.

On behalf of his clients, Heidarpour liaised with local counsel Avi Robert Kaufman, Esq., and Allison B. Duffie, Esq., who entered appearances as counsel for Plaintiffs in this TCPA Action. Due to irreconcilable differences, Heidarpour terminated those engagement agreements and ended his representation of Plaintiffs on August 12, 2026. However, the attorney-client and work product privileges survive the termination of an engagement agreement or legal representation.[1]

Boost's Subpoena seeks the production of numerous materials that are protected by the attorney-client and work product privileges and therefore exempt from production. Furthermore, the requests in the Subpoena are so broadly asserted as to make any production of nonprivileged materials unduly burdensome.

## I. <u>The Attorney-Client Privilege</u>

A universal principle of American jurisprudence is that a lawyer has a legal and an ethical duty to keep confidential information relating to a client's representation. *See Rule 4-1.6(a), R. Regul. Fla. Bar* ("A lawyer must not reveal information relating to a client's representation . . . unless the client gives informed consent."); Fla. Stat. § 90.502(1)(c). ("A communication between lawyer and client is "confidential" if it is not intended to be disclosed to third persons other than:

---

[1] *See Rule 4-1.6, R. Regul. Fla. Bar, Comment, June 30, 2026* ("The duty of confidentiality continues after the client-lawyer relationship has terminated."); *Rule 4-1.9(c), R. Regul. Fla. Bar* ("A lawyer who has formerly represented a client in a matter must not afterwards . . . reveal information relating to the representation except as these rules would permit or require with respect to a client.").

1. Those to whom disclosure is in furtherance of the rendition of legal services to the client. 2. Those reasonably necessary for the transmission of the communication.").[2]

Indeed, "[a] fundamental principle in the client-lawyer relationship is that, in the absence of the client's informed consent, the lawyer must not reveal information relating to the representation." *Rule 4-1.6, R. Regul. Fla. Bar, Comment, June 30, 2026.* As noted above, this principle extends to both clients and former clients. *See Rule 4-1.6, R. Regul. Fla. Bar, Comment, June 30, 2026*; *Rule 4-1.9(c), R. Regul. Fla. Bar.*

The confidentiality of attorney-client privileged communications is considered to be "***one of the most sacrosanct principles of the law***," *Reuter v. Physicians Cas. Risk Retention Grp.*, 2017 WL 395242, at *4 (S.D. Fla. Jan. 27, 2017) (emphasis added), and is "traditionally deemed worthy of ***maximum legal protection.***" *Maharaj v. GEICO Cas. Co.*, 289 F.R.D. 666, 669 (S.D. Fla. 2013) (emphasis added). Importantly, "the confidentiality rule applies not merely to matters communicated in confidence by the client but also to ***all information relating to the***

[2] Mr. Heidarpour is not licensed to practice law in Florida; rather, he is licensed in Washington, D.C. Nevertheless, the rules of professional conduct of that jurisdiction are substantially similar in nature to those governing this jurisdiction and are informed by the same principles. *See D.C. Rules of Prof'l Conduct R.1.6(a)* ("Except when permitted [by rule], a lawyer shall not knowingly: (1) reveal a confidence or secret of the layer's client; (2) use a confidence or secret of the lawyer's client to the disadvantage of the client; (3) use a confidence or secret of the lawyer's client for the advantage of the lawyer or of a third person."); *see also Model Rules of Pro. Conduct r. 1.6(a)* (A.B.A. 2026) ("A lawyer shall not reveal information relating to the representation of a client unless the client gives informed consent, the disclosure is impliedly authorized in order to carry out the representation, or the disclosure is permitted [by rule].").

***representation, whatever its source.***" *Rule 4-1.6, R. Regul. Fla. Bar, Comment, June 30, 2026* (emphasis added).[3]

The Eleventh Circuit long has acknowledged the importance of the protection afforded by both the attorney-client privilege and the work product doctrine. Citing precedent from the United States Supreme Court, the Eleventh Circuit has held that these protections promote the public interests in the observance of law and the administration of justice, and protect the integrity of the adversarial process of litigation:

> The attorney-client privilege attaches, of course, to confidential communications between an attorney and client for the purposes of securing legal advice or assistance. *See In re Grand Jury Investigation*, 842 F.2d 1223, 1224 (11th Cir. 1987). The purpose of the privilege is "to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." *United States v. Zolin*, 491 U.S. 554, 562, 109 S.Ct. 2619, 105 L.Ed.2d 469 (1989) (internal quotation marks omitted).
>
> Attorney work product protection extends to material obtained or prepared by counsel in the course of their legal duties provided that the work was done with an eye toward litigation. *See* Fed. R Civ. P. 26(b)(3)(A); *Cox v. Adm'r U.S. Steel & Carnegie*, 17 F.3d 1386, 1421–22 (11th Cir. 1994). Work product protection prevents most inquiries into an attorney's work files and mental impressions. *Hickman v. Taylor*, 329 U.S. 495, 510, 67 S.Ct. 385, 91 L.Ed. 451 (1947). The purpose of this protection is to protect the integrity of the adversary process by allowing a lawyer to work "with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel." *Id.*

*Drummond Co., Inc. v. Conrad & Scherer, LLP*, 885 F.3d 1324, 1334–35 (11th Cir. 2018).

---

[3] This rule is applicable across jurisdictions. *See D.C. Rules of Prof'l Conduct R.1.6, Comment [8]* ("The rule of client-lawyer confidentiality applies . . . not merely to matters communicated in confidence by the client (i.e. confidences) but also to all information gained in the course of the professional relationship that the client has requested to be inviolate, or the disclosure of which would be embarrassing or would be likely to be detrimental to the client (i.e., secrets)."); *see also Model Rules of Pro. Conduct r. 1.6, Comment [3]* (A.B.A. 2026) ("The confidentiality rule . . . applies not only to matters communicated in confidence by the client but also to all information relating to the representation, whatever its source.").

## II. The Crime-Fraud Exception

During a preliminary meet and confer session, counsel for Boost suggested that the materials sought in the Subpoena were stripped of the protections of the attorney-client privilege and the work product doctrine due to the application of the crime-fraud exception. However, the crime-fraud exception is narrowly construed and requires an evidentiary showing by the party seeking privileged materials or information that Boost has not, and cannot, meet in this TCPA Action.

### A. Relevant Law Governing the Crime-Fraud Exception

To determine whether the crime-fraud exception applies, the Eleventh Circuit established a two-part test requiring from the proponent of the exception both a *prima facie* showing of a qualifying completed or planned crime or fraud by the client, and a showing that the client obtained the attorney's assistance to further that crime or fraud, or that the assistance was closely related to the crime or fraud:

> **First**, there must be a *prima facie* showing that the client was engaged in criminal or fraudulent conduct when he sought the advice of counsel, that he was planning such conduct when he sought the advice of counsel, or that he committed a crime or fraud subsequent to receiving the benefit of counsel's advice. **Second**, there must be a showing that the attorney's assistance was obtained in furtherance of the criminal or fraudulent activity or was closely related to it.

*In re Grand Jury Investigation (Schroeder)*, 842 F.2d 1223, 1226 (11th Cir. 1987) (emphasis added).

"The first prong is satisfied by a showing of evidence that, if believed by a trier of fact, would establish the elements of some violation that was ongoing or about to be committed." *Id.* "The second prong is satisfied by a showing that the communication is related to the criminal or fraudulent activity established under the first prong." *Id.* at 1227.

The Eleventh Circuit has clearly identified that the crime-fraud exception targets communications "that should not be privileged ***because they were used to further a crime or a fraud.***" *Id.* Accordingly, federal courts in this District applying the litmus test for the crime-fraud exception have held that "***the existence of a crime or fraud does not create a blanket evisceration of the privilege; it only extinguishes the privilege for those communications and documents connected to the crime or fraud.***" *Hominski v. Gusar, LLC*, No. 24-CV-21590, 2026 WL 1261972 at *7 (S.D. Fla. May 8, 2026) (emphasis added) (quoting *Diamond Resorts U.S. Collection Dev., LLC v. US Consumer Att'ys, P.A.*, No. 9:18-CV-80311, 519 F. Supp. 3d 1184, 1222 (S.D. Fla. 2011).

Thus, the crime-fraud exception must be narrowly construed and applied with caution to prevent opponents of the privilege from engaging in "groundless fishing expeditions." *See Cox*, 17 F.3d at 1416 (quoting *Zolin*, 491 U.S. at 571).

While the Eleventh Circuit has not elaborated on what constitutes a *prima facie* showing, federal trial courts in this District use a shifting standard regarding the burden of proof for determining the applicability of the crime-fraud exception. That shifting standard places the initial burden on the party opposing the attorney-client privilege to make a *prima facie* case that the exception applies, and then gives the party invoking the attorney-client privilege the opportunity to rebut:

> [T]he party opposing attorney-client privilege based on the crime/fraud exception has the initial burden of producing evidence which, if unexplained, would be *prima facie* proof of the existence of the exception. If that occurs, the burden of persuasion then shifts to the party asserting the privilege to give a reasonable explanation of its conduct, which it can do by demonstrating by a preponderance of the evidence that the *prima facie* showing that the crime/fraud exception applies should not be accepted. If the court accepts the explanation as sufficient to rebut the evidence presented by the party opposing the privilege, then the privilege remains. If the

> court does not find the evidence is sufficient to rebut the *prima facie* case, then the *prima facie* case still exists and the privilege is lost.

*Hominski*, 2026 WL 1261972 at *4 (internal quotes and citations omitted).

If a showing of "factual basis adequate to support a good faith belief by a reasonable person that *in camera* review of the materials may reveal evidence to establish the claim that the crime-fraud exception applies," then the Court may, in its sound discretion, decide to so engage in *in camera* review of the relevant materials. *Zolin*, 491 U.S. at 572.

### B. Applying the Law Governing the Crime-Fraud Exception in this Case

In this case, Boost has made no such evidentiary showing as to either prong of the Eleventh Circuit's litmus test in *Schroeder* sufficient to demonstrate that the crime-fraud exception eviscerates the attorney-client privilege that obviously attaches to Heidarpour's communications with his former clients regarding the instant TCPA Action and other cases and claims involving those former clients.

Counsel for Boost has communicated a belief that the crime-fraud exception applies to the materials sought in their Subpoena because the Plaintiffs in this TCPA Action allegedly committed perjury by making false statements—namely that they each respectively did not know each other and did not communicate with each other—in affidavits in this TCPA Action. However, even a demonstration of the commission of perjury (which Boost has not plainly made yet) is not a sufficient *prima facie* showing for Boost to invoke the crime-fraud exception to pierce the sacrosanct attorney-client privilege.

Rather, to invoke the crime-fraud exception and oppose the applicable attorney-client privilege here, Boost must adhere to the law governing the crime-fraud exception as outlined above.

**First**, for each request in the Subpoena that seeks privileged information, Boost must make a *prima facie* showing that Heidarpour's former client either (1) was engaged in criminal or fraudulent conduct when he sought Heidarpour's advice; (2) was planning criminal or fraudulent conduct when he sought Heidarpour's advice; *or* (3) committed a crime or fraud subsequent to receiving the benefit of Heidarpour's advice. *See Schroeder*, 842 F.2d at 1226.

**Second**, if Boost succeeds in making such a *prima facie* showing, it must then show that Heidarpour's assistance was obtained in furtherance of the criminal or fraudulent activity or was closely related to it. *Id.*

Boost has made no such showing and therefore has demonstrated no basis for Heidarpour to violate the attorney-client privilege by production of the protected materials it has sought in its Subpoena. Further, even if Boost had done so, that does not end the inquiry: Heidarpour, on behalf of his clients, would then have the opportunity to rebut any presumption that the crime-fraud exception applies. *See Hominski*, 2026 WL 1261972 at *4. The Court also retains discretion to perform an *in camera* review of the requested materials before ordering their production. *See Zolin*, 491 U.S. at 572.

Finally, even if Boost should somehow clear the high hurdles necessary to invoke the crime-fraud exception and pierce the attorney-client privilege, it can only do so as to those particular materials and communications that were used to further the alleged crime or fraud, since this exception does not give a party license for "groundless fishing expeditions," *see Cox*, 17 F.3d at 1416 (quoting *Zolin*, 491 U.S. at 571), and does not create a "blanket evisceration" of the attorney-client privilege. *See Hominski*, 2026 WL 1261972 at *4.

Therefore, until and unless Boost satisfies the stringent legal requirements set forth by the Eleventh Circuit, Heidarpour is under **strict ethical and legal obligations** to continue to safeguard

his former clients' confidentiality and withhold those materials the Subpoena requests that are protected by the attorney-client privilege and work-product doctrine.

### III. Exceedingly Broad and Unduly Burdensome Subpoena Requests

Like all parties in a federal civil action, Boost is required to "take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Fed. R. Civ. P. 45(d)(1). A party issuing a subpoena therefore must narrow its requests and "take reasonable steps to identify the correct recipient." *See Feingold v. Cardinale*, No. 22-CV-20375, 2023 WL 8476408 at *8 (S.D. Fla. November 1, 2023) (Reid, M.J.). Federal trial courts in this District have rejected subpoena requests where "[t]he universe of information covered by [the] requests appears to be boundless and untethered to the claims or defenses actually at issue in the case." *See Am. Federation of State, Cnty., and Mun. Employees (AFSCME) Council 79 v. Scott*, No. 11-21976-CIV, 277 F.R.D. 474, 478 (S.D. Fla. December 5, 2011) (Torres, M.J.).

In this case, Boost has made no apparent effort to reasonably narrow the requests in the Subpoena and appears to have failed to even identify the correct recipient. Many of the requests seek "all documents that refer or relate" to one of Heidarpour's former clients, or other persons or telephone numbers without any limitation whatsoever. Cursory review of the requests demonstrates that the Subpoena "sweeps more broadly than relevance and proportionality permit." *See Wendy's Netherlands B.V. v. Levy*, No. 26-14162-MC, 2026 WL 1649603 at *4 (S.D. Fla. May 27, 2026) (Maynard, M.J.).

As noted above, Heidarpour did not appear as counsel of record in the TCPA Action, and his involvement in the TCPA Action was limited. *See **Exhibit 1***. However, the Subpoena gives these facts no consideration. As drafted, the Subpoena constitutes the exact type of fishing

expedition that courts routinely and summarily forbid. *See Cox*, 17 F.3d at 1416 (quoting *Zolin*, 491 U.S. at 571).

Further illustrating the unreasonable breadth of the Subpoena, in request no. 14, Boost asked Heidarpour to produce "[a]ll documents exchanged between you and Andrew Heidarpour" referring or relating to a litany of persons and subjects, again without limitation. This request, like most of the Subpoena's requests, on its face seeks a universe of information that is "boundless and untethered to the claims or defenses actually at issue in the case." *Id.* Further, it is logically incoherent; Heidarpour has not "exchanged" documents with himself, and it is unclear how that could ever occur. It is important to note that the requests in this Subpoena, including request no. 14, are identical to those in two other subpoenas issued by Boost to the Firm and to Dana Oliver, Esq. ("**Oliver**"). The apparent copy-and-paste approach Boost has taken to this Subpoena and its duplicates to the Firm and Oliver is a strong indicator that the Subpoena is an impermissible fishing expedition. *See Cox*, 17 F.3d at 1416 (quoting *Zolin*, 491 U.S. at 571).

More seriously, the Subpoena's unreasonably overbroad requests represent an attempt to discover how the Firm, investigates, works on, and prosecutes TCPA claims generally, rather than to discover facts and materials relevant to the TCPA Action at issue. Allowing Boost to pierce the attorney-client privilege for such an improper purpose would not only violate the confidentiality of these Plaintiffs but would create a chilling effect across similarly situated parties and potential class action lawsuits.

As discussed at length above and in the specific responses below, Heidarpour has no choice but to invoke the attorney-client privilege in objecting to the Subpoena generally, and as to its specific requests. It is well-settled that generally a party asserting the attorney-client privilege bears the burden of proving the existence of the privilege. *See United States v. Schaltenbrand*, 930

F.2d 1554, 1562 (11th Cir. 1991). Ordinarily, courts require parties to meet this burden by producing a privilege log or index rather than asserting a blanket claim of privilege, or otherwise waive the privilege. *See Thermoset Corp v. Building Materials Corp. of America*, No. 14-60268-CIV, 2015 WL 1565310 at *6 (S.D. Fla. April 8, 2015 (citing *Universal City Dev. Partners, Ltd. v. Ride & Show Eng'g, Inc.*, 230 F.R.D. 688, 695 (M.D. Fla. Sept. 23, 2025)).

"The Eleventh Circuit has never determined what constitutes a timely production of a privilege log in response to a request for production of documents." *Id.* However, courts in this District evaluating this question have employed helpful analysis provided by the Ninth Circuit in *Burlington N. & Santa Fe. Ry. Co. v. United States Dist. Court for the Dist. Of Montana*, 408 F.3d 1142 (9th Cir. 2005). *See Thermoset Corp.*, 2015 WL 1565310 at *6. Under the *Burlington* analysis, courts apply several factors "in the context of a holistic reasonableness analysis" to determine the timeliness of the production of a privilege log, which are:

> the degree to which the objection or assertion of privilege enables the litigant seeking discovery and the court to evaluate whether each of the withheld documents is privileged (where providing particulars typically contained in a privilege log is presumptively sufficient and boilerplate objections are presumptively insufficient); the timeliness of the objection and accompanying information about the withheld documents . . . ; the magnitude of the document production; and other particular circumstances of the litigation that make responding to discovery unusually easy . . . or unusually hard.

*Id.*, citing *Burlington*, 408 F.3d at 1149.

As attested in the attached affidavit, Heidarpour has made a good-faith effort to timely respond to the Subpoena. *See* ***Exhibit 1***. However, due to the sheer unreasonable breadth of the Subpoena, there are an estimated **70,000** pages of documents to be reviewed, organized, and

catalogued.[4] While this response is not accompanied by a privilege log, under these circumstances and the above factors, a later-in-time privilege log production does not waive the attorney-client privilege, which is "a cornerstone of the entire judicial/legal system in this country." *Id.* (quoting *Adega v. State Farm Fire & Cas. Ins. Co.*, No. 07-20696-CIV, 2008 WL 1009719, at *2 (S.D. Fla. Apr. 9, 2008) (Brown, M.J.)). As attested to in Heidarpour's affidavit, the documents requested include vast amounts of materials that are unrelated to the TCPA Action at issue, and review of such documents sufficient to produce a detailed privilege log would take an inordinate amount of time, and is not likely to lead to the production of relevant information or documents. *See* ***Exhibit 1***. In light of the foregoing principles and analysis, Heidarpour objects to the Subpoena as follows.

## SPECIFIC RESPONSES TO THE SUBPOENA

**Request No. 1:**

All documents that refer or relate to the Lawsuit.

**Response:**

Heidarpour objects to this request because it is vague, overly broad, unreasonable in scope, and not reasonably calculated to lead to the discovery of admissible evidence. *See e.g.*, *Sharpe Inv. Land Tr. No. C v. Pac. Ins. Co., Ltd.*, No. 08-22061-CIV, 2009 WL 10667812, at *2 (S.D. Fla. Oct. 6, 2009) ("[T]he Court agrees that the phrase 'entire file' is overly broad."); *Alabama & Gulf Coast Ry., LLC v. United States*, No. CA 10-0352-WS-C, 2011 WL 1838882, at *2 (S.D. Ala. May 13, 2011) ("Certainly, the request for production of the entire files is overbroad."); *Cadle v. GEICO Gen. Ins. Co.*, No. 6:13-CV-1591-Orl-31GJK, 2014 WL 12621189, at *3 (M.D. Fla. May 28, 2014)

[4] This figure is a good-faith estimate based on review of records, and does not include the approximately 1,350 pages of documents that Oliver has identified as being described in the subpoena issued to him.

("[W]hile counsel's entire file from the underlying action may contain some information relevant to this [bad faith] case, the request at issue will undoubtedly capture materials that are completely irrelevant to this matter. The Defendant made no effort to tailor the Subpoena to the issues in this case."). Heidarpour further objects to this request to the extent it seeks documents which are protected under the attorney-client and work-product privilege doctrines. *See* Fed. R. Civ. P. 45(e)(2)(A).

**Request No. 2:**

All documents that refer or relate to Nicholas Dungey.

**Response:**

Heidarpour objects to this request because it is vague, overly broad, unreasonable in scope, not reasonably calculated to lead to the discovery of admissible evidence, and not proportional to the needs of the case. *See, e.g.*, *Mancuso v. Fla. Metro. Univ., Inc.*, No. 09-61984-CIV, 2011 WL 310726, *3 n.3 (S.D. Fla. Jan 28, 2011) ("The scope of discovery under a Rule 45 subpoena is the same as the scope of discovery under Rule 26." (citing *Barrington v. Mortgage, IT, Inc.*, No. 07-61304-CIV, 2007 WL 4370647, at *3 (S.D. Fla. Dec. 10, 2007)); *see also* Fed. R. Civ. P. 26(b)(1) (Documents sought must be "reasonably calculated to lead to the discovery of admissible evidence."). Notably, this request is not limited by case, claim, subject matter, or any other criteria. Nicholas Dungey is Heidarpour's former client in this matter, and, without disclosing details, Heidarpour has represented him in other matters. *See* ***Exhibit 1***. Therefore, Heidarpour further objects to this request to the extent it seeks documents which are protected under the attorney-client and work-product privilege doctrines. *See* Fed. R. Civ. P. 45(e)(2)(A).

**Request No. 3:**

All documents that refer or relate to Kyle Butler Rashley.

**Response:**

Heidarpour objects to this request because it is vague, overly broad, unreasonable in scope, not reasonably calculated to lead to the discovery of admissible evidence, and not proportional to the needs of the case. *See, e.g.*, *Mancuso.*, 2011 WL 310726, at *3 n.3. Notably, this request is not limited by case, claim, subject matter, or any other criteria. Kyle Butler Rashley is Heidarpour's former client in this matter, and, without disclosing details, Heidarpour has represented him in other matters. *See* ***Exhibit 1***. Therefore, Heidarpour further objects to this request to the extent it seeks documents which are protected under the attorney-client and work-product privilege doctrines. *See* Fed. R. Civ. P. 45(e)(2)(A).

**Request No. 4:**

All documents that refer or relate to communications you had with Nicholas Dungey between January 1, 2025 and April 12, 2025.

**Response:**

Heidarpour objects to this request because it is vague, overly broad, unreasonable in scope, not reasonably calculated to lead to the discovery of admissible evidence, and not proportional to the needs of the case. *See, e.g.*, *Mancuso.*, 2011 WL 310726, at *3 n.3. Notably, this request is not limited by case, claim, or subject matter. Nicholas Dungey is Heidarpour's former client in this matter, and, without disclosing details, Heidarpour has represented him in other matters. *See* ***Exhibit 1***. Therefore, Heidarpour further objects to this request to the extent it seeks documents which are protected under the attorney-client and work-product privilege doctrines. *See* Fed. R. Civ. P. 45(e)(2)(A).

While the request appears cognizant of the date of the April 11, 2025 engagement agreement between Heidarpour's Firm and Dungey, Heidarpour's duty to maintain confidentiality

extends beyond the dates covered by the effective dates of that agreement. *See, e.g., Preamble, Ch. 4 R. Regul. Fla. Bar* ("there are some duties, for example confidentiality under rule 4-1.6, which attach when the lawyer agrees to consider whether a client-lawyer relationship will be established."); *R. Regul. Fla. Bar 4-1.6(a)* ("A lawyer must not reveal information relating to a client's representation . . . unless the client gives informed consent.").

**Request No. 5:**

All documents that refer or relate to communications you had with Kyle Rashley between January 1, 2025 and April 12, 2025.

**Response:**

Heidarpour objects to this request because it is vague, overly broad, unreasonable in scope, not reasonably calculated to lead to the discovery of admissible evidence, and not proportional to the needs of the case. *See, e.g.*, *Mancuso.*, 2011 WL 310726, at *3 n.3. Notably, this request is not limited by case, claim, or subject matter. Kyle Rashley is Heidarpour's former client in this matter, and, without disclosing details, Heidarpour has represented him in other matters. *See* ***Exhibit 1***. Therefore, Heidarpour further objects to this request to the extent it seeks documents which are protected under the attorney-client and work-product privilege doctrines. *See* Fed. R. Civ. P. 45(e)(2)(A).

While the request appears cognizant of the date of the April 9, 2025 engagement agreement between Heidarpour's Firm and Rashley, Heidarpour's duty to maintain confidentiality extends beyond the dates covered by the effective dates of that agreement. *See Preamble, Ch. 4 R. Regul. Fla. Bar* ("there are some duties, for example confidentiality under rule 4-1.6, which attach when the lawyer agrees to consider whether a client-lawyer relationship will be established."); *R. Regul.*

*Fla. Bar 4-1.6(a)* ("A lawyer must not reveal information relating to a client's representation . . . unless the client gives informed consent.").

**Request No. 6:**

All documents that refer or relate to Boost Health Insurance Agency.

**Response:**

Heidarpour objects to this request because it is vague, overly broad, unreasonable in scope, not reasonably calculated to lead to the discovery of admissible evidence, and not proportional to the needs of the case. *See, e.g.*, *Mancuso.*, 2011 WL 310726, at *3 n.3. Notably, this request is not limited by case, claim, or subject matter. Heidarpour further objects to this request to the extent it seeks documents which are protected under the attorney-client and work-product privilege doctrines. *See* Fed. R. Civ. P. 45(e)(2)(A).

**Request No. 7:**

All documents that refer or relate to www.findyourhealthplan.org.

**Response:**

Heidarpour objects to this request because it is vague, overly broad, unreasonable in scope, not reasonably calculated to lead to the discovery of admissible evidence, and not proportional to the needs of the case. *See, e.g.*, *Mancuso.*, 2011 WL 310726, at *3 n.3. Notably, this request is not limited by case, claim, or subject matter. Heidarpour further objects to this request to the extent it seeks documents which are protected under the attorney-client and work-product privilege doctrines. *See* Fed. R. Civ. P. 45(e)(2)(A).

**Request No. 8:**

All documents that refer or relate to Thomas Murphy.

**Response:**

Heidarpour objects to this request because it is vague, overly broad, unreasonable in scope, not reasonably calculated to lead to the discovery of admissible evidence, and not proportional to the needs of the case. *See, e.g.*, *Mancuso.*, 2011 WL 310726, at *3 n.3. Heidarpour further objects to this request to the extent it seeks documents which are protected under the attorney-client and work-product privilege doctrines. *See* Fed. R. Civ. P. 45(e)(2)(A).

**Request No. 9:**

All documents that refer or relate to Thomas Murphy's association with the telephone number (561) 943-0417 as referenced in your April 3, 2025 email to Peter Rosenweig.

**Response:**

Heidarpour objects to this request because it is vague, overly broad, unreasonable in scope, not reasonably calculated to lead to the discovery of admissible evidence, and not proportional to the needs of the case. *See, e.g.*, *Mancuso.*, 2011 WL 310726, at *3 n.3. The telephone number (561) 943-0417 belongs to Dungey, who is Heidarpour's former client in the TCPA Action at issue. Boost's requests regarding this telephone number are functionally the same as requests seeking confidential information about Dungey himself. Therefore, Heidarpour further objects to this request to the extent it seeks documents which are protected under the attorney-client and work-product privilege doctrines. *See* Fed. R. Civ. P. 45(e)(2)(A).

**Request No. 10:**

All documents that refer or relate to the telephone number (561) 460-8422.

**Response:**

Heidarpour objects to this request because it is vague, overly broad, unreasonable in scope, not reasonably calculated to lead to the discovery of admissible evidence, and not proportional to the needs of the case. *See, e.g.*, *Mancuso.*, 2011 WL 310726, at *3 n.3. The telephone number

(561) 460-8422 belongs to Rashley, who is Heidarpour's former client in the TCPA Action at issue. Boost's requests regarding this telephone number are functionally the same as requests seeking confidential information about Rashley himself. Therefore, Heidarpour further objects to this request to the extent it seeks documents which are protected under the attorney-client and work-product privilege doctrines. *See* Fed. R. Civ. P. 45(e)(2)(A).

**Request No. 11:**

All documents that refer or relate to the telephone number (561) 943-0417.

**Response:**

Heidarpour objects to this request because it is vague, overly broad, unreasonable in scope, not reasonably calculated to lead to the discovery of admissible evidence, and not proportional to the needs of the case. *See, e.g.*, *Mancuso.*, 2011 WL 310726, at *3 n.3. The telephone number (561) 943-0417 belongs to Dungey, who is Heidarpour's former client in the TCPA Action at issue. Boost's requests regarding this telephone number are functionally the same as requests seeking confidential information about Dungey himself. Therefore, Heidarpour further objects to this request to the extent it seeks documents which are protected under the attorney-client and work-product privilege doctrines. *See* Fed. R. Civ. P. 45(e)(2)(A).

**Request No. 12:**

All documents that refer or relate to the telephone number (305) 776-8306.

**Response:**

Heidarpour objects to this request because it is vague, overly broad, unreasonable in scope, not reasonably calculated to lead to the discovery of admissible evidence, and not proportional to the needs of the case. *See, e.g.*, *Mancuso.*, 2011 WL 310726, at *3 n.3. The telephone number (305) 776-8306 belongs to Dungey, who is Heidarpour's former client in the TCPA Action at issue.

Boost's requests regarding this telephone number are functionally the same as requests seeking confidential information about Dungey himself. Therefore, Heidarpour further objects to this request to the extent it seeks documents which are protected under the attorney-client and work-product privilege doctrines. *See* Fed. R. Civ. P. 45(e)(2)(A).

**Request No. 13:**

All documents exchanged between you and Avi Kaufman that refer or relate to: (i) the Lawsuit, (ii) Nicholas Dungey, (iii) Kyle Rashley, (iv) Boost Health Insurance Agency.

**Response:**

Heidarpour objects to this request because it is vague, overly broad, unreasonable in scope, not reasonably calculated to lead to the discovery of admissible evidence, and not proportional to the needs of the case. *See, e.g.*, *Mancuso.*, 2011 WL 310726, at *3 n.3. Heidarpour further objects to this request to the extent it seeks documents which are protected under the attorney-client and work-product privilege doctrines. *See* Fed. R. Civ. P. 45(e)(2)(A).

**Request No. 14:**

All documents exchanged between you and Andrew Heidarpour that refer or relate to: (i) the Lawsuit, (ii) Nicholas Dungey, (iii) Kyle Rashley, (iv) Boost Health Insurance Agency.

**Response:**

Heidarpour objects to this request because it is vague, overly broad, unreasonable in scope, not reasonably calculated to lead to the discovery of admissible evidence, and not proportional to the needs of the case. *See, e.g.*, *Mancuso.*, 2011 WL 310726, at *3 n.3. Further, this request is non-sensical and incoherent insofar as Heidarpour has not exchanged documents with himself. Regardless, to the extent any such documents exist, Heidarpour further objects to this request to

the extent it seeks documents which are protected under the attorney-client and work-product privilege doctrines. *See* Fed. R. Civ. P. 45(e)(2)(A).

**Request No. 15:**

All documents that refer or relate to instructions you gave to Nicholas Dungey to preserve relevant evidence including, without limitation, his telephones and records of incoming and outgoing telephone communications.

**Response:**

Heidarpour objects to this request because it is vague, overly broad, unreasonable in scope, not reasonably calculated to lead to the discovery of admissible evidence, and not proportional to the needs of the case. *See, e.g.*, *Mancuso.*, 2011 WL 310726, at *3 n.3. Heidarpour further objects to this request to the extent it seeks documents which are protected under the attorney-client and work-product privilege doctrines. *See* Fed. R. Civ. P. 45(e)(2)(A).

**Request No. 16:**

All documents that refer or relate to instructions you gave to Kyle Rashley to preserve relevant evidence including, without limitation, his telephones and records of incoming and outgoing telephone communications.

**Response:**

Heidarpour objects to this request because it is vague, overly broad, unreasonable in scope, not reasonably calculated to lead to the discovery of admissible evidence, and not proportional to the needs of the case. *See, e.g.*, *Mancuso.*, 2011 WL 310726, at *3 n.3. Heidarpour further objects to this request to the extent it seeks documents which are protected under the attorney-client and work-product privilege doctrines. *See* Fed. R. Civ. P. 45(e)(2)(A).

Dated: September 2, 2026 Respectfully submitted,

COLE, SCOTT & KISSANE, P.A.
*Counsel for Non-Party Andrew Heidarpour, Esq.*
Esperante Building
222 Lakeview Avenue, Suite 500
West Palm Beach, FL 33401
Telephone (561) 383-9234
Facsimile (561) 683-8977
Primary e-mail: Jeremy.Colvin@csklegal.com
Primary e-mail: Jensen.Hoernig@csklegal.com
Secondary e-mail: Bianca.Brostrom@csklegal.com

By:

*/s/ Jensen C. Hoernig*
Jeremy M. Colvin, Esq.
Florida Bar No.: 152226
Jensen C. Hoernig, Esq.
Florida Bar No.: 1055056

# EXHIBIT 1

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

KYLE BUTLER RASHLEY, and
NICHOLAS DUNGEY, on behalf of
Themselves and others similarly situated,

Plaintiffs,

Case No.: 1:25-CV-21690-KMW

v.

BOOST HEALTH INSURANCE, INC.,

Defendant.
________________________________/

**AFFIDAVIT OF ANDREW HEIDARPOUR, ESQ.**

BEFORE ME, the undersigned authority, personally appeared Andrew Heidarpour, Esq., who being first duly sworn, deposes, and says:

1. My name is Andrew Heidarpour, Esq.

2. I am the founding attorney of Heidarpour Law Office, PLLC (the "Firm").

3. One of the Firm's primary practice areas involves asserting claims under the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("**TCPA**") claims on behalf of class action plaintiffs.

4. Since May 2022, I have handled approximately 1,000 claims for filing.

5. Once a client retains the Firm to handle a TCPA claim, when appropriate I refer the day-to-day file management to appropriate local or otherwise qualified counsel.

6. Even when I refer a claim to another attorney, I continue to represent the clients and serve as a resource for the clients and the referral counsel as needed.

7. I have known and worked on multiple claims with Avi Kaufman, Esq. for approximately five years.

8. Dana Oliver, Esq., is an independent contractor who performs work on behalf of the Firm, including on the instant TCPA claim and other claims connected with Plaintiffs, and has acted on behalf of the Firm with respect to those claims.

9. Without disclosing details, I have represented Kyle Rashley ("Rashley") in approximately sixteen (16) claims, including the instant TCPA claim.

10. I began my engagement with Rashley in the instant TCPA claim on April 9, 2025.

11. I terminated my engagement with Rashley in the instant TCPA claim on August 12, 2026.

12. Without disclosing details, I have represented Nicholas Dungey ("Dungey") in approximately twenty-five (25) claims, including the instant TCPA claim.

13. I began my engagement with Dungey in the instant TCPA claim on April 11, 2025.

14. I terminated my engagement with Dungey in the instant TCPA claim on August 12, 2026.

15. I am familiar with the issues described in the instant TCPA claim.

16. I have made a good-faith effort to comply with the Subpoena.

17. In preparing for the Response to the Subpoena, I utilized the following search terms to compile the voluminous materials from two (2) firm email addresses, aheidarpour@hlfirm.com, and heidarpourlawfirm@gmail.com:

   a. "Rashley";

   b. "Thomas Murphy";

   c. "Dungey";

d. "Boost";

e. "Dungey," and "Rashley," excluding "Boost";

f. "Avi," Dungey," and "Rashley," excluding "Boost";

g. "Mirror/Mirroring";

h. "Add/Delete/Remove";

i. "561-460-8422";

j. "561-943-0417";

k. "305-776-8306";

l. "(561) 460-8422";

m. "(561) 943-0417";

n. "(305) 776-8306";

o. "Preserving or keeping evidence";

p. "Old phone/old device/previous";

q. "findyourhealthplan.org";

r. "Preserve Data"; and

s. "Preservation".

18. The above search terms yielded over 70,000 pages of documents.

19. The above search did not include searching for and obtaining additional documents, communications, and materials possessed by Dana Oliver, Esq. via the email address doliver.heidarpourlawfirm@gmail.com, which themselves presently appear to number approximately an additional 1,350 pages.

20. Review of these documents would take an inordinate hours to search, review, and categorize for privileged information.

21. Because these documents include vast amounts of materials that are not related to the TCPA Action at issue, review of these documents is not likely to result in the production of any relevant information or documents.

22. I am unable to effectuate review of all the documents requested by the Subpoena in advance of the compliance deadline.

23. Responding to the Subpoena, including by preparing and producing a privilege log, will incur extensive monetary costs.

24. Responding to the Subpoena, including by preparing and producing a privilege log, will severely disrupt my regular business activities.

FURTHER AFFIANT SAYETH NOT.

______________________________
Andrew Heidarpour, Esq.

The foregoing instrument was acknowledged before me this 2nd day of September, 2026, by Andrew Heidarpour, Esq. who is personally known to me and who did/did not take an oath.

Notary Public State of Florida
Bianca M. Brostrom
My Commission HH 796759
Expires 6/12/2030

______________________________
Notary Signature

Bianca M. Brostrom
Notary Name – print

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

KYLE BUTLER RASHLEY, and
NICHOLAS DUNGEY, on behalf of
Themselves and others similarly situated,

Plaintiffs, Case No.: 1:25-CV-21690-KMW

v.

BOOST HEALTH INSURANCE, INC.,

Defendant.
_________________________________/

**NON-PARTY DANA OLIVER, ESQ.'S**
**RESPONSE TO SUBPOENA**

Non-Party Dana Oliver, Esq. ("**Oliver**"), by and through the undersigned counsel, and pursuant to Fed. R. Civ. P. 45 hereby responds to the subpoena issued and served by Boost Health Insurance, Inc. ("**Boost**") on or about August 6, 2026 (the "**Subpoena**"), and states as follows:

**MEMORANDUM OF LAW**

With the Subpoena, Boost seeks a litany of documents related to the litigation and parties in the above-captioned case, No. 1:25-CV-21690-KMW, arising out of alleged violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 (the "**TCPA Action**").

Acting as an independent contractor on behalf of and in the service of Andrew Heidarpour, Esq.'s ("**Heidarpour**") law firm, Heidarpour Law Office PLLC ("the **Firm**"), Oliver, an attorney, assisted in the Firm's representation of Plaintiffs Kyle Butler Rashley ("**Rashley**") and Nicholas Dungey ("**Dungey**") (collectively, "**Plaintiffs**") in connection with the TCPA Action. Without disclosing confidential details, the Firm also represented Plaintiffs on other matters in which Oliver provided assistance as counsel and was included in privileged communications. *See Affidavit of*

*Andrew Heidarpour, Esq., attached hereto as* ***Exhibit 1.*** Although the Firm did not enter an appearance in the TCPA Action as counsel of record, it entered into separate engagement agreements with respect to the TCPA Action with Rashley on April 9, 2025; and Dungey on April 11, 2025.

On behalf of his clients, Heidarpour liaised with local counsel Avi Robert Kaufman, Esq., and Allison B. Duffie, Esq., who entered appearances as counsel for Plaintiffs in this TCPA Action. Due to irreconcilable differences, Heidarpour terminated those engagement agreements and ended the Firm's representation of Plaintiffs on August 12, 2026. However, the attorney-client and work product privileges survive the termination of an engagement agreement or legal representation.[1]

Boost's Subpoena seeks the production of numerous materials that are protected by the attorney-client and work product privileges and therefore exempt from production. Furthermore, the requests in the Subpoena are so broadly asserted as to make any production of nonprivileged materials unduly burdensome.

## I. <u>The Attorney-Client Privilege</u>

A universal principle of American jurisprudence is that a lawyer has a legal and an ethical duty to keep confidential information relating to a client's representation. *See Rule 4-1.6(a), R. Regul. Fla. Bar* ("A lawyer must not reveal information relating to a client's representation . . . unless the client gives informed consent."); Fla. Stat. § 90.502(1)(c). ("A communication between lawyer and client is "confidential" if it is not intended to be disclosed to third persons other than:

[1] *See Rule 4-1.6, R. Regul. Fla. Bar, Comment, June 30, 2026* ("The duty of confidentiality continues after the client-lawyer relationship has terminated."); *Rule 4-1.9(c), R. Regul. Fla. Bar* ("A lawyer who has formerly represented a client in a matter must not afterwards . . . reveal information relating to the representation except as these rules would permit or require with respect to a client.").

1. Those to whom disclosure is in furtherance of the rendition of legal services to the client. 2. Those reasonably necessary for the transmission of the communication.").[2]

Indeed, "[a] fundamental principle in the client-lawyer relationship is that, in the absence of the client's informed consent, the lawyer must not reveal information relating to the representation." *Rule 4-1.6, R. Regul. Fla. Bar, Comment, June 30, 2026.* As noted above, this principle extends to both clients and former clients. *See Rule 4-1.6, R. Regul. Fla. Bar, Comment, June 30, 2026*; *Rule 4-1.9(c), R. Regul. Fla. Bar.*

The confidentiality of attorney-client privileged communications is considered to be "***one of the most sacrosanct principles of the law***," *Reuter v. Physicians Cas. Risk Retention Grp.*, 2017 WL 395242, at *4 (S.D. Fla. Jan. 27, 2017) (emphasis added), and is "traditionally deemed worthy of ***maximum legal protection.***" *Maharaj v. GEICO Cas. Co.*, 289 F.R.D. 666, 669 (S.D. Fla. 2013) (emphasis added). Importantly, "the confidentiality rule applies not merely to matters communicated in confidence by the client but also to ***all information relating to the***

[2] Mr. Heidarpour is not licensed to practice law in Florida; rather, he is licensed in Washington, D.C. Nevertheless, the rules of professional conduct of that jurisdiction are substantially similar in nature to those governing this jurisdiction and are informed by the same principles. *See D.C. Rules of Prof'l Conduct R.1.6(a)* ("Except when permitted [by rule], a lawyer shall not knowingly: (1) reveal a confidence or secret of the layer's client; (2) use a confidence or secret of the lawyer's client to the disadvantage of the client; (3) use a confidence or secret of the lawyer's client for the advantage of the lawyer or of a third person."); *see also Model Rules of Pro. Conduct r. 1.6(a)* (A.B.A. 2026) ("A lawyer shall not reveal information relating to the representation of a client unless the client gives informed consent, the disclosure is impliedly authorized in order to carry out the representation, or the disclosure is permitted [by rule].").

***representation, whatever its source.***" *Rule 4-1.6, R. Regul. Fla. Bar, Comment, June 30, 2026* (emphasis added).[3]

The Eleventh Circuit long has acknowledged the importance of the protection afforded by both the attorney-client privilege and the work product doctrine. Citing precedent from the United States Supreme Court, the Eleventh Circuit has held that these protections promote the public interests in the observance of law and the administration of justice, and protect the integrity of the adversarial process of litigation:

> The attorney-client privilege attaches, of course, to confidential communications between an attorney and client for the purposes of securing legal advice or assistance. *See In re Grand Jury Investigation*, 842 F.2d 1223, 1224 (11th Cir. 1987). The purpose of the privilege is "to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." *United States v. Zolin*, 491 U.S. 554, 562, 109 S.Ct. 2619, 105 L.Ed.2d 469 (1989) (internal quotation marks omitted).
>
> Attorney work product protection extends to material obtained or prepared by counsel in the course of their legal duties provided that the work was done with an eye toward litigation. *See* Fed. R Civ. P. 26(b)(3)(A); *Cox v. Adm'r U.S. Steel & Carnegie*, 17 F.3d 1386, 1421–22 (11th Cir. 1994). Work product protection prevents most inquiries into an attorney's work files and mental impressions. *Hickman v. Taylor*, 329 U.S. 495, 510, 67 S.Ct. 385, 91 L.Ed. 451 (1947). The purpose of this protection is to protect the integrity of the adversary process by allowing a lawyer to work "with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel." *Id.*

*Drummond Co., Inc. v. Conrad & Scherer, LLP*, 885 F.3d 1324, 1334–35 (11th Cir. 2018).

---

[3] This rule is applicable across jurisdictions. *See D.C. Rules of Prof'l Conduct R.1.6, Comment [8]* ("The rule of client-lawyer confidentiality applies . . . not merely to matters communicated in confidence by the client (i.e. confidences) but also to all information gained in the course of the professional relationship that the client has requested to be inviolate, or the disclosure of which would be embarrassing or would be likely to be detrimental to the client (i.e., secrets)."); *see also Model Rules of Pro. Conduct r. 1.6, Comment [3]* (A.B.A. 2026) ("The confidentiality rule . . . applies not only to matters communicated in confidence by the client but also to all information relating to the representation, whatever its source.").

## II. The Crime-Fraud Exception

During a preliminary meet and confer session, counsel for Boost suggested that the materials sought in the Subpoena were stripped of the protections of the attorney-client privilege and the work product doctrine due to the application of the crime-fraud exception. However, the crime-fraud exception is narrowly construed and requires an evidentiary showing by the party seeking privileged materials or information that Boost has not, and cannot, meet in this TCPA Action.

### A. Relevant Law Governing the Crime-Fraud Exception

To determine whether the crime-fraud exception applies, the Eleventh Circuit established a two-part test requiring from the proponent of the exception both a *prima facie* showing of a qualifying completed or planned crime or fraud by the client, and a showing that the client obtained the attorney's assistance to further that crime or fraud, or that the assistance was closely related to the crime or fraud:

> **First**, there must be a *prima facie* showing that the client was engaged in criminal or fraudulent conduct when he sought the advice of counsel, that he was planning such conduct when he sought the advice of counsel, or that he committed a crime or fraud subsequent to receiving the benefit of counsel's advice. **Second**, there must be a showing that the attorney's assistance was obtained in furtherance of the criminal or fraudulent activity or was closely related to it.

*In re Grand Jury Investigation (Schroeder)*, 842 F.2d 1223, 1226 (11th Cir. 1987) (emphasis added).

"The first prong is satisfied by a showing of evidence that, if believed by a trier of fact, would establish the elements of some violation that was ongoing or about to be committed." *Id.* "The second prong is satisfied by a showing that the communication is related to the criminal or fraudulent activity established under the first prong." *Id.* at 1227.

The Eleventh Circuit has clearly identified that the crime-fraud exception targets communications "that should not be privileged ***because they were used to further a crime or a fraud.***" *Id.* Accordingly, federal courts in this District applying the litmus test for the crime-fraud exception have held that "***the existence of a crime or fraud does not create a blanket evisceration of the privilege; it only extinguishes the privilege for those communications and documents connected to the crime or fraud.***" *Hominski v. Gusar, LLC*, No. 24-CV-21590, 2026 WL 1261972 at *7 (S.D. Fla. May 8, 2026) (emphasis added) (quoting *Diamond Resorts U.S. Collection Dev., LLC v. US Consumer Att'ys, P.A.*, No. 9:18-CV-80311, 519 F. Supp. 3d 1184, 1222 (S.D. Fla. 2011).

Thus, the crime-fraud exception must be narrowly construed and applied with caution to prevent opponents of the privilege from engaging in "groundless fishing expeditions." *See Cox*, 17 F.3d at 1416 (quoting *Zolin*, 491 U.S. at 571).

While the Eleventh Circuit has not elaborated on what constitutes a *prima facie* showing, federal trial courts in this District use a shifting standard regarding the burden of proof for determining the applicability of the crime-fraud exception. That shifting standard places the initial burden on the party opposing the attorney-client privilege to make a *prima facie* case that the exception applies, and then gives the party invoking the attorney-client privilege the opportunity to rebut:

> [T]he party opposing attorney-client privilege based on the crime/fraud exception has the initial burden of producing evidence which, if unexplained, would be *prima facie* proof of the existence of the exception. If that occurs, the burden of persuasion then shifts to the party asserting the privilege to give a reasonable explanation of its conduct, which it can do by demonstrating by a preponderance of the evidence that the *prima facie* showing that the crime/fraud exception applies should not be accepted. If the court accepts the explanation as sufficient to rebut the evidence presented by the party opposing the privilege, then the privilege remains. If the

> court does not find the evidence is sufficient to rebut the *prima facie* case, then the *prima facie* case still exists and the privilege is lost.

*Hominski*, 2026 WL 1261972 at *4 (internal quotes and citations omitted).

If a showing of "factual basis adequate to support a good faith belief by a reasonable person that *in camera* review of the materials may reveal evidence to establish the claim that the crime-fraud exception applies," then the Court may, in its sound discretion, decide to so engage in *in camera* review of the relevant materials. *Zolin*, 491 U.S. at 572.

**B. <u>Applying the Law Governing the Crime-Fraud Exception in this Case</u>**

In this case, Boost has made no such evidentiary showing as to either prong of the Eleventh Circuit's litmus test in *Schroeder* sufficient to demonstrate that the crime-fraud exception eviscerates the attorney-client privilege that obviously attaches to Heidarpour's, Oliver's, and the Firm's communications with the Firm's former clients regarding the instant TCPA Action and other cases and claims involving those former clients.

Counsel for Boost has communicated a belief that the crime-fraud exception applies to the materials sought in their Subpoena because the Plaintiffs in this TCPA Action allegedly committed perjury by making false statements—namely that they each respectively did not know each other and did not communicate with each other—in affidavits in this TCPA Action. However, even a demonstration of the commission of perjury (which Boost has not plainly made yet) is not a sufficient *prima facie* showing for Boost to invoke the crime-fraud exception to pierce the sacrosanct attorney-client privilege.

Rather, to invoke the crime-fraud exception and oppose the applicable attorney-client privilege here, Boost must adhere to the law governing the crime-fraud exception as outlined above.

**First**, for each request in the Subpoena that seeks privileged information, Boost must make a *prima facie* showing that the Firm's, and by extension, Oliver's, former client either (1) was engaged in criminal or fraudulent conduct when he sought the Firm's advice; (2) was planning criminal or fraudulent conduct when he sought the Firm's advice; *or* (3) committed a crime or fraud subsequent to receiving the benefit of the Firm's advice. *See Schroeder*, 842 F.2d at 1226.

**Second**, if Boost succeeds in making such a *prima facie* showing, it must then show that the Firm's assistance was obtained in furtherance of the criminal or fraudulent activity or was closely related to it. *Id.*

Boost has made no such showing and therefore has demonstrated no basis for Oliver to violate the attorney-client privilege by production of the protected materials he has in his possession through his work for the Firm on behalf of its former clients that Boost has sought in its Subpoena. Further, even if Boost had done so, that does not end the inquiry: Oliver and the Firm, on behalf of the former clients, would then have the opportunity to rebut any presumption that the crime-fraud exception applies. *See Hominski*, 2026 WL 1261972 at *4. The Court also retains discretion to perform an *in camera* review of the requested materials before ordering their production. *See Zolin*, 491 U.S. at 572.

Finally, even if Boost should somehow clear the high hurdles necessary to invoke the crime-fraud exception and pierce the attorney-client privilege, it can only do so as to those particular materials and communications that were used to further the alleged crime or fraud, since this exception does not give a party license for "groundless fishing expeditions," *see Cox*, 17 F.3d at 1416 (quoting *Zolin*, 491 U.S. at 571), and does not create a "blanket evisceration" of the attorney-client privilege. *See Hominski*, 2026 WL 1261972 at *4.

Therefore, until and unless Boost satisfies the stringent legal requirements set forth by the Eleventh Circuit, Oliver, Heidarpour and the Firm are under **strict ethical and legal obligations** to continue to safeguard the Firm's former clients' confidentiality and withhold those materials the Subpoena requests that are protected by the attorney-client privilege and work-product doctrine.

**III. Exceedingly Broad and Unduly Burdensome Subpoena Requests**

Like all parties in a federal civil action, Boost is required to "take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Fed. R. Civ. P. 45(d)(1). A party issuing a subpoena therefore must narrow its requests and "take reasonable steps to identify the correct recipient." *See Feingold v. Cardinale*, No. 22-CV-20375, 2023 WL 8476408 at *8 (S.D. Fla. November 1, 2023) (Reid, M.J.). Federal trial courts in this District have rejected subpoena requests where "[t]he universe of information covered by [the] requests appears to be boundless and untethered to the claims or defenses actually at issue in the case." *See Am. Federation of State, Cnty., and Mun. Employees (AFSCME) Council 79 v. Scott*, No. 11-21976-CIV, 277 F.R.D. 474, 478 (S.D. Fla. December 5, 2011) (Torres, M.J.).

In this case, Boost has made no apparent effort to reasonably narrow the requests in the Subpoena and appears to have failed to even identify the correct recipient. Many of the requests seek "all documents that refer or relate" to one of the Firm's former clients, or other persons or telephone numbers without any limitation whatsoever. Cursory review of the requests demonstrates that the Subpoena "sweeps more broadly than relevance and proportionality permit." *See Wendy's Netherlands B.V. v. Levy*, No. 26-14162-MC, 2026 WL 1649603 at *4 (S.D. Fla. May 27, 2026) (Maynard, M.J.).

As noted above, neither Heidarpour, nor Oliver, nor the Firm appeared as counsel of record in the TCPA Action, and the Firm's involvement in the TCPA Action was limited. *See **Exhibit 1***.

However, the Subpoena gives these facts no consideration. As drafted, the Subpoena constitutes the exact type of fishing expedition that courts routinely and summarily forbid. *See Cox*, 17 F.3d at 1416 (quoting *Zolin*, 491 U.S. at 571).

Further illustrating the unreasonable breadth of the Subpoena, in request no. 14, Boost asked the Firm to produce "[a]ll documents exchanged between you and Andrew Heidarpour" referring or relating to a litany of persons and subjects, again without limitation. This request, like most of the Subpoena's requests, on its face seeks a universe of information that is "boundless and untethered to the claims or defenses actually at issue in the case." *Id.* It is important to note that the requests in this Subpoena, including request no. 14, are identical to those in two other subpoenas issued by Boost to Heidarpour and to the Firm. The apparent copy-and-paste approach Boost has taken to this Subpoena and its duplicates to Heidarpour and the Firm is a strong indicator that the Subpoena is an impermissible fishing expedition. *See Cox*, 17 F.3d at 1416 (quoting *Zolin*, 491 U.S. at 571).

More seriously, the Subpoena's unreasonably overbroad requests represent an attempt to discover how the Firm, investigates, works on, and prosecutes TCPA claims generally, rather than to discover facts and materials relevant to the TCPA Action at issue. Allowing Boost to pierce the attorney-client privilege for such an improper purpose would not only violate the confidentiality of these Plaintiffs but would create a chilling effect across similarly situated parties and potential class action lawsuits.

As discussed at length above and in the specific responses below, Oliver has no choice but to invoke the attorney-client privilege in objecting to the Subpoena generally, and as to its specific requests. It is well-settled that generally a party asserting the attorney-client privilege bears the burden of proving the existence of the privilege. *See United States v. Schaltenbrand*, 930 F.2d

1554, 1562 (11th Cir. 1991). Ordinarily, courts require parties to meet this burden by producing a privilege log or index rather than asserting a blanket claim of privilege, or otherwise waive the privilege. *See Thermoset Corp v. Building Materials Corp. of America*, No. 14-60268-CIV, 2015 WL 1565310 at *6 (S.D. Fla. April 8, 2015 (citing *Universal City Dev. Partners, Ltd. v. Ride & Show Eng'g, Inc.*, 230 F.R.D. 688, 695 (M.D. Fla. Sept. 23, 2025)).

"The Eleventh Circuit has never determined what constitutes a timely production of a privilege log in response to a request for production of documents." *Id.* However, courts in this District evaluating this question have employed helpful analysis provided by the Ninth Circuit in *Burlington N. & Santa Fe. Ry. Co. v. United States Dist. Court for the Dist. Of Montana*, 408 F.3d 1142 (9th Cir. 2005). *See Thermoset Corp.*, 2015 WL 1565310 at *6. Under the *Burlington* analysis, courts apply several factors "in the context of a holistic reasonableness analysis" to determine the timeliness of the production of a privilege log, which are:

> the degree to which the objection or assertion of privilege enables the litigant seeking discovery and the court to evaluate whether each of the withheld documents is privileged (where providing particulars typically contained in a privilege log is presumptively sufficient and boilerplate objections are presumptively insufficient); the timeliness of the objection and accompanying information about the withheld documents . . . ; the magnitude of the document production; and other particular circumstances of the litigation that make responding to discovery unusually easy . . . or unusually hard.

*Id.*, citing *Burlington*, 408 F.3d at 1149.

As attested in the attached affidavit, Heidarpour, on behalf of the Firm, has made a good-faith effort to timely respond to the Subpoena. *See **Exhibit 1***. However, due to the sheer unreasonable breadth of the Subpoena, there are an estimated **70,000** pages of documents to be

reviewed, organized, and catalogued.[4] While this response is not accompanied by a privilege log, under these circumstances and the above factors, a later-in-time privilege log production does not waive the attorney-client privilege, which is "a cornerstone of the entire judicial/legal system in this country." *Id.* (quoting *Adega v. State Farm Fire & Cas. Ins. Co.*, No. 07-20696-CIV, 2008 WL 1009719, at *2 (S.D. Fla. Apr. 9, 2008) (Brown, M.J.)). As attested to in Heidarpour's affidavit, the documents requested include vast amounts of materials that are unrelated to the TCPA Action at issue, and review of such documents sufficient to produce a detailed privilege log would take an inordinate amount of time, and is not likely to lead to the production of relevant information or documents. *See* ***Exhibit 1***. In light of the foregoing principles and analysis, Oliver objects to the Subpoena as follows.

**SPECIFIC RESPONSES TO THE SUBPOENA**

**Request No. 1:**

All documents that refer or relate to the Lawsuit.

**Response:**

Oliver objects to this request because it is vague, overly broad, unreasonable in scope, and not reasonably calculated to lead to the discovery of admissible evidence. *See e.g.*, *Sharpe Inv. Land Tr. No. C v. Pac. Ins. Co., Ltd.*, No. 08-22061-CIV, 2009 WL 10667812, at *2 (S.D. Fla. Oct. 6, 2009) ("[T]he Court agrees that the phrase 'entire file' is overly broad."); *Alabama & Gulf Coast Ry., LLC v. United States*, No. CA 10-0352-WS-C, 2011 WL 1838882, at *2 (S.D. Ala. May 13, 2011) ("Certainly, the request for production of the entire files is overbroad."); *Cadle v. GEICO*

[4] This figure is a good-faith estimate based on review of records, and does not include the additional approximately 1,350 pages of documents that Oliver has identified as being described in the Subpoena.

*Gen. Ins. Co.*, No. 6:13-CV-1591-Orl-31GJK, 2014 WL 12621189, at *3 (M.D. Fla. May 28, 2014) ("[W]hile counsel's entire file from the underlying action may contain some information relevant to this [bad faith] case, the request at issue will undoubtedly capture materials that are completely irrelevant to this matter. The Defendant made no effort to tailor the Subpoena to the issues in this case."). Oliver further objects to this request to the extent it seeks documents which are protected under the attorney-client and work-product privilege doctrines. *See* Fed. R. Civ. P. 45(e)(2)(A).

**Request No. 2:**

All documents that refer or relate to Nicholas Dungey.

**Response:**

Oliver objects to this request because it is vague, overly broad, unreasonable in scope, not reasonably calculated to lead to the discovery of admissible evidence, and not proportional to the needs of the case. *See, e.g.*, *Mancuso v. Fla. Metro. Univ., Inc.*, No. 09-61984-CIV, 2011 WL 310726, *3 n.3 (S.D. Fla. Jan 28, 2011) ("The scope of discovery under a Rule 45 subpoena is the same as the scope of discovery under Rule 26." (citing *Barrington v. Mortgage, IT, Inc.*, No. 07-61304-CIV, 2007 WL 4370647, at *3 (S.D. Fla. Dec. 10, 2007)); *see also* Fed. R. Civ. P. 26(b)(1) (Documents sought must be "reasonably calculated to lead to the discovery of admissible evidence."). Notably, this request is not limited by case, claim, subject matter, or any other criteria. Nicholas Dungey is the Firm's former client in this matter, and, without disclosing details, the Firm has represented him in other matters. *See* ***Exhibit 1***. Therefore, Oliver further objects to this request to the extent it seeks documents which are protected under the attorney-client and work-product privilege doctrines. *See* Fed. R. Civ. P. 45(e)(2)(A).

**Request No. 3:**

All documents that refer or relate to Kyle Butler Rashley.

**Response:**

Oliver objects to this request because it is vague, overly broad, unreasonable in scope, not reasonably calculated to lead to the discovery of admissible evidence, and not proportional to the needs of the case. *See, e.g.*, *Mancuso.*, 2011 WL 310726, at *3 n.3. Notably, this request is not limited by case, claim, subject matter, or any other criteria. Kyle Butler Rashley is the Firm's former client in this matter, and, without disclosing details, the Firm has represented him in other matters. *See **Exhibit 1***. Therefore, Oliver further objects to this request to the extent it seeks documents which are protected under the attorney-client and work-product privilege doctrines. *See* Fed. R. Civ. P. 45(e)(2)(A).

**Request No. 4:**

All documents that refer or relate to communications you had with Nicholas Dungey between January 1, 2025 and April 12, 2025.

**Response:**

Oliver objects to this request because it is vague, overly broad, unreasonable in scope, not reasonably calculated to lead to the discovery of admissible evidence, and not proportional to the needs of the case. *See, e.g.*, *Mancuso.*, 2011 WL 310726, at *3 n.3. Notably, this request is not limited by case, claim, or subject matter. Nicholas Dungey is the Firm's former client in this matter, and, without disclosing details, the Firm has represented him in other matters. *See **Exhibit 1***. Therefore, Oliver further objects to this request to the extent it seeks documents which are protected under the attorney-client and work-product privilege doctrines. *See* Fed. R. Civ. P. 45(e)(2)(A).

While the request appears cognizant of the date of the April 11, 2025 engagement agreement between the Firm and Dungey, Oliver's duty to maintain confidentiality extends beyond

the dates covered by the effective dates of that agreement. *See, e.g., Preamble, Ch. 4 R. Regul. Fla. Bar* ("there are some duties, for example confidentiality under rule 4-1.6, which attach when the lawyer agrees to consider whether a client-lawyer relationship will be established."); *R. Regul. Fla. Bar 4-1.6(a)* ("A lawyer must not reveal information relating to a client's representation . . . unless the client gives informed consent.").

**Request No. 5:**

All documents that refer or relate to communications you had with Kyle Rashley between January 1, 2025 and April 12, 2025.

**Response:**

Oliver objects to this request because it is vague, overly broad, unreasonable in scope, not reasonably calculated to lead to the discovery of admissible evidence, and not proportional to the needs of the case. *See, e.g.*, *Mancuso.*, 2011 WL 310726, at *3 n.3. Notably, this request is not limited by case, claim, or subject matter. Kyle Rashley is the Firm's former client in this matter, and, without disclosing details, the Firm has represented him in other matters. *See **Exhibit 1***. Therefore, Oliver further objects to this request to the extent it seeks documents which are protected under the attorney-client and work-product privilege doctrines. *See* Fed. R. Civ. P. 45(e)(2)(A).

While the request appears cognizant of the date of the April 9, 2025 engagement agreement between the Firm and Rashley, Oliver's duty to maintain confidentiality extends beyond the dates covered by the effective dates of that agreement. *See Preamble, Ch. 4 R. Regul. Fla. Bar* ("there are some duties, for example confidentiality under rule 4-1.6, which attach when the lawyer agrees to consider whether a client-lawyer relationship will be established."); *R. Regul. Fla. Bar 4-1.6(a)*

("A lawyer must not reveal information relating to a client's representation . . . unless the client gives informed consent.").

**Request No. 6:**

All documents that refer or relate to Boost Health Insurance Agency.

**Response:**

Oliver objects to this request because it is vague, overly broad, unreasonable in scope, not reasonably calculated to lead to the discovery of admissible evidence, and not proportional to the needs of the case. *See, e.g.*, *Mancuso.*, 2011 WL 310726, at *3 n.3. Notably, this request is not limited by case, claim, or subject matter. Oliver further objects to this request to the extent it seeks documents which are protected under the attorney-client and work-product privilege doctrines. *See* Fed. R. Civ. P. 45(e)(2)(A).

**Request No. 7:**

All documents that refer or relate to www.findyourhealthplan.org.

**Response:**

Oliver objects to this request because it is vague, overly broad, unreasonable in scope, not reasonably calculated to lead to the discovery of admissible evidence, and not proportional to the needs of the case. *See, e.g.*, *Mancuso.*, 2011 WL 310726, at *3 n.3. Notably, this request is not limited by case, claim, or subject matter. Oliver further objects to this request to the extent it seeks documents which are protected under the attorney-client and work-product privilege doctrines. *See* Fed. R. Civ. P. 45(e)(2)(A).

**Request No. 8:**

All documents that refer or relate to Thomas Murphy.

**Response:**

Oliver objects to this request because it is vague, overly broad, unreasonable in scope, not reasonably calculated to lead to the discovery of admissible evidence, and not proportional to the needs of the case. *See, e.g.*, *Mancuso.*, 2011 WL 310726, at *3 n.3. Oliver further objects to this request to the extent it seeks documents which are protected under the attorney-client and work-product privilege doctrines. *See* Fed. R. Civ. P. 45(e)(2)(A).

**Request No. 9:**

All documents that refer or relate to Thomas Murphy's association with the telephone number (561) 943-0417 as referenced in your April 3, 2025 email to Peter Rosenweig.

**Response:**

Oliver objects to this request because it is vague, overly broad, unreasonable in scope, not reasonably calculated to lead to the discovery of admissible evidence, and not proportional to the needs of the case. *See, e.g.*, *Mancuso.*, 2011 WL 310726, at *3 n.3. The telephone number (561) 943-0417 belongs to Dungey, who is the Firm's former client in the TCPA Action at issue. Boost's requests regarding this telephone number are functionally the same as requests seeking confidential information about Dungey himself. Therefore, Oliver further objects to this request to the extent it seeks documents which are protected under the attorney-client and work-product privilege doctrines. *See* Fed. R. Civ. P. 45(e)(2)(A).

**Request No. 10:**

All documents that refer or relate to the telephone number (561) 460-8422.

**Response:**

Oliver objects to this request because it is vague, overly broad, unreasonable in scope, not reasonably calculated to lead to the discovery of admissible evidence, and not proportional to the needs of the case. *See, e.g.*, *Mancuso.*, 2011 WL 310726, at *3 n.3. The telephone number (561)

460-8422 belongs to Rashley, who is the Firm's former client in the TCPA Action at issue. Boost's requests regarding this telephone number are functionally the same as requests seeking confidential information about Rashley himself. Therefore, Oliver further objects to this request to the extent it seeks documents which are protected under the attorney-client and work-product privilege doctrines. *See* Fed. R. Civ. P. 45(e)(2)(A).

**Request No. 11:**

All documents that refer or relate to the telephone number (561) 943-0417.

**Response:**

Oliver objects to this request because it is vague, overly broad, unreasonable in scope, not reasonably calculated to lead to the discovery of admissible evidence, and not proportional to the needs of the case. *See, e.g.*, *Mancuso.*, 2011 WL 310726, at *3 n.3. The telephone number (561) 943-0417 belongs to Dungey, who is the Firm's former client in the TCPA Action at issue. Boost's requests regarding this telephone number are functionally the same as requests seeking confidential information about Dungey himself. Therefore, Oliver further objects to this request to the extent it seeks documents which are protected under the attorney-client and work-product privilege doctrines. *See* Fed. R. Civ. P. 45(e)(2)(A).

**Request No. 12:**

All documents that refer or relate to the telephone number (305) 776-8306.

**Response:**

Oliver objects to this request because it is vague, overly broad, unreasonable in scope, not reasonably calculated to lead to the discovery of admissible evidence, and not proportional to the needs of the case. *See, e.g.*, *Mancuso.*, 2011 WL 310726, at *3 n.3. The telephone number (305) 776-8306 belongs to Dungey, who is the Firm's former client in the TCPA Action at issue. Boost's

requests regarding this telephone number are functionally the same as requests seeking confidential information about Dungey himself. Therefore, Oliver further objects to this request to the extent it seeks documents which are protected under the attorney-client and work-product privilege doctrines. *See* Fed. R. Civ. P. 45(e)(2)(A).

**Request No. 13:**

All documents exchanged between you and Avi Kaufman that refer or relate to: (i) the Lawsuit, (ii) Nicholas Dungey, (iii) Kyle Rashley, (iv) Boost Health Insurance Agency.

**Response:**

Oliver objects to this request because it is vague, overly broad, unreasonable in scope, not reasonably calculated to lead to the discovery of admissible evidence, and not proportional to the needs of the case. *See, e.g.*, *Mancuso.*, 2011 WL 310726, at *3 n.3. Oliver further objects to this request to the extent it seeks documents which are protected under the attorney-client and work-product privilege doctrines. *See* Fed. R. Civ. P. 45(e)(2)(A).

**Request No. 14:**

All documents exchanged between you and Andrew Heidarpour that refer or relate to: (i) the Lawsuit, (ii) Nicholas Dungey, (iii) Kyle Rashley, (iv) Boost Health Insurance Agency.

**Response:**

Oliver objects to this request because it is vague, overly broad, unreasonable in scope, not reasonably calculated to lead to the discovery of admissible evidence, and not proportional to the needs of the case. *See, e.g.*, *Mancuso.*, 2011 WL 310726, at *3 n.3. Oliver further objects to this request to the extent it seeks documents which are protected under the attorney-client and work-product privilege doctrines. *See* Fed. R. Civ. P. 45(e)(2)(A).

**Request No. 15:**

All documents that refer or relate to instructions you gave to Nicholas Dungey to preserve relevant evidence including, without limitation, his telephones and records of incoming and outgoing telephone communications.

**Response:**

Oliver objects to this request because it is vague, overly broad, unreasonable in scope, not reasonably calculated to lead to the discovery of admissible evidence, and not proportional to the needs of the case. *See, e.g.*, *Mancuso.*, 2011 WL 310726, at *3 n.3. Oliver further objects to this request to the extent it seeks documents which are protected under the attorney-client and work-product privilege doctrines. *See* Fed. R. Civ. P. 45(e)(2)(A).

**Request No. 16:**

All documents that refer or relate to instructions you gave to Kyle Rashley to preserve relevant evidence including, without limitation, his telephones and records of incoming and outgoing telephone communications.

**Response:**

Oliver objects to this request because it is vague, overly broad, unreasonable in scope, not reasonably calculated to lead to the discovery of admissible evidence, and not proportional to the needs of the case. *See, e.g.*, *Mancuso.*, 2011 WL 310726, at *3 n.3. Oliver further objects to this request to the extent it seeks documents which are protected under the attorney-client and work-product privilege doctrines. *See* Fed. R. Civ. P. 45(e)(2)(A).

Dated: September 2, 2026

Respectfully submitted,

COLE, SCOTT & KISSANE, P.A.
*Counsel for Non-Party Heidarpour Law Office PLLC.*
Esperante Building
222 Lakeview Avenue, Suite 500
West Palm Beach, FL 33401

Telephone (561) 383-9234
Facsimile (561) 683-8977
Primary e-mail: Jeremy.Colvin@csklegal.com
Primary e-mail: Jensen.Hoernig@csklegal.com
Secondary e-mail: Bianca.Brostrom@csklegal.com

By:

*/s/ Jensen C. Hoernig*
Jeremy M. Colvin, Esq.
Florida Bar No.: 152226
Jensen C. Hoernig, Esq.
Florida Bar No.: 1055056

# EXHIBIT 1

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

KYLE BUTLER RASHLEY, and
NICHOLAS DUNGEY, on behalf of
Themselves and others similarly situated,

Plaintiffs, Case No.: 1:25-CV-21690-KMW

v.

BOOST HEALTH INSURANCE, INC.,

Defendant.
_______________________________/

**AFFIDAVIT OF ANDREW HEIDARPOUR, ESQ.**

BEFORE ME, the undersigned authority, personally appeared Andrew Heidarpour, Esq., who being first duly sworn, deposes, and says:

1. My name is Andrew Heidarpour, Esq.

2. I am the founding attorney of Heidarpour Law Office, PLLC (the "Firm").

3. One of the Firm's primary practice areas involves asserting claims under the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("**TCPA**") claims on behalf of class action plaintiffs.

4. Since May 2022, I have handled approximately 1,000 claims for filing.

5. Once a client retains the Firm to handle a TCPA claim, when appropriate I refer the day-to-day file management to appropriate local or otherwise qualified counsel.

6. Even when I refer a claim to another attorney, I continue to represent the clients and serve as a resource for the clients and the referral counsel as needed.

7. I have known and worked on multiple claims with Avi Kaufman, Esq. for approximately five years.

8. Dana Oliver, Esq., is an independent contractor who performs work on behalf of the Firm, including on the instant TCPA claim and other claims connected with Plaintiffs, and has acted on behalf of the Firm with respect to those claims.

9. Without disclosing details, I have represented Kyle Rashley ("Rashley") in approximately sixteen (16) claims, including the instant TCPA claim.

10. I began my engagement with Rashley in the instant TCPA claim on April 9, 2025.

11. I terminated my engagement with Rashley in the instant TCPA claim on August 12, 2026.

12. Without disclosing details, I have represented Nicholas Dungey ("Dungey") in approximately twenty-five (25) claims, including the instant TCPA claim.

13. I began my engagement with Dungey in the instant TCPA claim on April 11, 2025.

14. I terminated my engagement with Dungey in the instant TCPA claim on August 12, 2026.

15. I am familiar with the issues described in the instant TCPA claim.

16. I have made a good-faith effort to comply with the Subpoena.

17. In preparing for the Response to the Subpoena, I utilized the following search terms to compile the voluminous materials from two (2) firm email addresses, aheidarpour@hlfirm.com, and heidarpourlawfirm@gmail.com:

a. "Rashley";

b. "Thomas Murphy";

c. "Dungey";

d. "Boost";

e. "Dungey," and "Rashley," excluding "Boost";

f. "Avi," Dungey," and "Rashley," excluding "Boost";

g. "Mirror/Mirroring";

h. "Add/Delete/Remove";

i. "561-460-8422";

j. "561-943-0417";

k. "305-776-8306";

l. "(561) 460-8422";

m. "(561) 943-0417";

n. "(305) 776-8306";

o. "Preserving or keeping evidence";

p. "Old phone/old device/previous";

q. "findyourhealthplan.org";

r. "Preserve Data"; and

s. "Preservation".

18. The above search terms yielded over 70,000 pages of documents.

19. The above search did not include searching for and obtaining additional documents, communications, and materials possessed by Dana Oliver, Esq. via the email address doliver.heidarpourlawfirm@gmail.com, which themselves presently appear to number approximately an additional 1,350 pages.

20. Review of these documents would take an inordinate hours to search, review, and categorize for privileged information.

21. Because these documents include vast amounts of materials that are not related to the TCPA Action at issue, review of these documents is not likely to result in the production of any relevant information or documents.

22. I am unable to effectuate review of all the documents requested by the Subpoena in advance of the compliance deadline.

23. Responding to the Subpoena, including by preparing and producing a privilege log, will incur extensive monetary costs.

24. Responding to the Subpoena, including by preparing and producing a privilege log, will severely disrupt my regular business activities.

FURTHER AFFIANT SAYETH NOT.

[signature]
Andrew Heidarpour, Esq.

The foregoing instrument was acknowledged before me this 2nd day of September, 2026, by Andrew Heidarpour, Esq. who is personally known to me and who did/did not take an oath.

[signature]
Notary Signature

Bianca M. Brostrom
Notary Name – print

Notary Public State of Florida
Bianca M. Brostrom
My Commission HH 796759
Expires 6/12/2030

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

KYLE BUTLER RASHLEY, and
NICHOLAS DUNGEY, on behalf of
Themselves and others similarly situated,

Plaintiffs, Case No.: 1:25-CV-21690-KMW

v.

BOOST HEALTH INSURANCE, INC.,

Defendant.
___________________________________/

**NON-PARTY ANDREW HEIDARPOUR, ESQ.'S**
**RESPONSE TO SUBPOENA**

Non-Party Heidarpour Law Office PLLC ("the **Firm**"), by and through the undersigned counsel, and pursuant to Fed. R. Civ. P. 45 hereby responds to the subpoena issued and served by Boost Health Insurance, Inc. ("**Boost**") on or about August 6, 2026 (the "**Subpoena**"), and states as follows:

**MEMORANDUM OF LAW**

With the Subpoena, Boost seeks a litany of documents related to the litigation and parties in the above-captioned case, No. 1:25-CV-21690-KMW, arising out of alleged violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 (the "**TCPA Action**").

Through the Firm, Andrew Heidarpour, Esq. ("**Heidarpour**") represented Plaintiffs Kyle Butler Rashley ("**Rashley**") and Nicholas Dungey ("**Dungey**") (collectively, "**Plaintiffs**") in connection with the TCPA Action. Without disclosing confidential details, the Firm also represented Plaintiffs on other matters. *See Affidavit of Andrew Heidarpour, Esq., attached hereto as **Exhibit 1.*** Although the Firm did not enter an appearance in the TCPA Action as counsel of

record, it entered into separate engagement agreements with respect to the TCPA Action with Rashley on April 9, 2025; and Dungey on April 11, 2025.

On behalf of his clients, Heidarpour liaised with local counsel Avi Robert Kaufman, Esq., and Allison B. Duffie, Esq., who entered appearances as counsel for Plaintiffs in this TCPA Action. Due to irreconcilable differences, Heidarpour terminated those engagement agreements and ended his representation of Plaintiffs on August 12, 2026. However, the attorney-client and work product privileges survive the termination of an engagement agreement or legal representation.[1]

Boost's Subpoena seeks the production of numerous materials that are protected by the attorney-client and work product privileges and therefore exempt from production. Furthermore, the requests in the Subpoena are so broadly asserted as to make any production of nonprivileged materials unduly burdensome.

## I. **The Attorney-Client Privilege**

A universal principle of American jurisprudence is that a lawyer has a legal and an ethical duty to keep confidential information relating to a client's representation. *See Rule 4-1.6(a), R. Regul. Fla. Bar* ("A lawyer must not reveal information relating to a client's representation . . . unless the client gives informed consent."); Fla. Stat. § 90.502(1)(c). ("A communication between lawyer and client is "confidential" if it is not intended to be disclosed to third persons other than:

[1] *See Rule 4-1.6, R. Regul. Fla. Bar, Comment, June 30, 2026* ("The duty of confidentiality continues after the client-lawyer relationship has terminated."); *Rule 4-1.9(c), R. Regul. Fla. Bar* ("A lawyer who has formerly represented a client in a matter must not afterwards . . . reveal information relating to the representation except as these rules would permit or require with respect to a client.").

1. Those to whom disclosure is in furtherance of the rendition of legal services to the client. 2. Those reasonably necessary for the transmission of the communication.").[2]

Indeed, "[a] fundamental principle in the client-lawyer relationship is that, in the absence of the client's informed consent, the lawyer must not reveal information relating to the representation." *Rule 4-1.6, R. Regul. Fla. Bar, Comment, June 30, 2026.* As noted above, this principle extends to both clients and former clients. *See Rule 4-1.6, R. Regul. Fla. Bar, Comment, June 30, 2026*; *Rule 4-1.9(c), R. Regul. Fla. Bar.*

The confidentiality of attorney-client privileged communications is considered to be "***one of the most sacrosanct principles of the law***," *Reuter v. Physicians Cas. Risk Retention Grp.*, 2017 WL 395242, at *4 (S.D. Fla. Jan. 27, 2017) (emphasis added), and is "traditionally deemed worthy of ***maximum legal protection.***" *Maharaj v. GEICO Cas. Co.*, 289 F.R.D. 666, 669 (S.D. Fla. 2013) (emphasis added). Importantly, "the confidentiality rule applies not merely to matters communicated in confidence by the client but also to ***all information relating to the***

[2] Mr. Heidarpour is not licensed to practice law in Florida; rather, he is licensed in Washington, D.C. Nevertheless, the rules of professional conduct of that jurisdiction are substantially similar in nature to those governing this jurisdiction and are informed by the same principles. *See D.C. Rules of Prof'l Conduct R.1.6(a)* ("Except when permitted [by rule], a lawyer shall not knowingly: (1) reveal a confidence or secret of the layer's client; (2) use a confidence or secret of the lawyer's client to the disadvantage of the client; (3) use a confidence or secret of the lawyer's client for the advantage of the lawyer or of a third person."); *see also Model Rules of Pro. Conduct r. 1.6(a)* (A.B.A. 2026) ("A lawyer shall not reveal information relating to the representation of a client unless the client gives informed consent, the disclosure is impliedly authorized in order to carry out the representation, or the disclosure is permitted [by rule].").

***representation, whatever its source.***" *Rule 4-1.6, R. Regul. Fla. Bar, Comment, June 30, 2026* (emphasis added).[3]

The Eleventh Circuit long has acknowledged the importance of the protection afforded by both the attorney-client privilege and the work product doctrine. Citing precedent from the United States Supreme Court, the Eleventh Circuit has held that these protections promote the public interests in the observance of law and the administration of justice, and protect the integrity of the adversarial process of litigation:

> The attorney-client privilege attaches, of course, to confidential communications between an attorney and client for the purposes of securing legal advice or assistance. *See In re Grand Jury Investigation*, 842 F.2d 1223, 1224 (11th Cir. 1987). The purpose of the privilege is "to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." *United States v. Zolin*, 491 U.S. 554, 562, 109 S.Ct. 2619, 105 L.Ed.2d 469 (1989) (internal quotation marks omitted).
>
> Attorney work product protection extends to material obtained or prepared by counsel in the course of their legal duties provided that the work was done with an eye toward litigation. *See* Fed. R Civ. P. 26(b)(3)(A); *Cox v. Adm'r U.S. Steel & Carnegie*, 17 F.3d 1386, 1421–22 (11th Cir. 1994). Work product protection prevents most inquiries into an attorney's work files and mental impressions. *Hickman v. Taylor*, 329 U.S. 495, 510, 67 S.Ct. 385, 91 L.Ed. 451 (1947). The purpose of this protection is to protect the integrity of the adversary process by allowing a lawyer to work "with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel." *Id.*

*Drummond Co., Inc. v. Conrad & Scherer, LLP*, 885 F.3d 1324, 1334–35 (11th Cir. 2018).

---

[3] This rule is applicable across jurisdictions. *See D.C. Rules of Prof'l Conduct R.1.6, Comment [8]* ("The rule of client-lawyer confidentiality applies . . . not merely to matters communicated in confidence by the client (i.e. confidences) but also to all information gained in the course of the professional relationship that the client has requested to be inviolate, or the disclosure of which would be embarrassing or would be likely to be detrimental to the client (i.e., secrets)."); *see also Model Rules of Pro. Conduct r. 1.6, Comment [3]* (A.B.A. 2026) ("The confidentiality rule . . . applies not only to matters communicated in confidence by the client but also to all information relating to the representation, whatever its source.").

## II. The Crime-Fraud Exception

During a preliminary meet and confer session, counsel for Boost suggested that the materials sought in the Subpoena were stripped of the protections of the attorney-client privilege and the work product doctrine due to the application of the crime-fraud exception. However, the crime-fraud exception is narrowly construed and requires an evidentiary showing by the party seeking privileged materials or information that Boost has not, and cannot, meet in this TCPA Action.

### A. Relevant Law Governing the Crime-Fraud Exception

To determine whether the crime-fraud exception applies, the Eleventh Circuit established a two-part test requiring from the proponent of the exception both a *prima facie* showing of a qualifying completed or planned crime or fraud by the client, and a showing that the client obtained the attorney's assistance to further that crime or fraud, or that the assistance was closely related to the crime or fraud:

> **First**, there must be a *prima facie* showing that the client was engaged in criminal or fraudulent conduct when he sought the advice of counsel, that he was planning such conduct when he sought the advice of counsel, or that he committed a crime or fraud subsequent to receiving the benefit of counsel's advice. **Second**, there must be a showing that the attorney's assistance was obtained in furtherance of the criminal or fraudulent activity or was closely related to it.

*In re Grand Jury Investigation (Schroeder)*, 842 F.2d 1223, 1226 (11th Cir. 1987) (emphasis added).

"The first prong is satisfied by a showing of evidence that, if believed by a trier of fact, would establish the elements of some violation that was ongoing or about to be committed." *Id.* "The second prong is satisfied by a showing that the communication is related to the criminal or fraudulent activity established under the first prong." *Id.* at 1227.

The Eleventh Circuit has clearly identified that the crime-fraud exception targets communications "that should not be privileged ***because they were used to further a crime or a fraud.***" *Id.* Accordingly, federal courts in this District applying the litmus test for the crime-fraud exception have held that "***the existence of a crime or fraud does not create a blanket evisceration of the privilege; it only extinguishes the privilege for those communications and documents connected to the crime or fraud.***" *Hominski v. Gusar, LLC*, No. 24-CV-21590, 2026 WL 1261972 at *7 (S.D. Fla. May 8, 2026) (emphasis added) (quoting *Diamond Resorts U.S. Collection Dev., LLC v. US Consumer Att'ys, P.A.*, No. 9:18-CV-80311, 519 F. Supp. 3d 1184, 1222 (S.D. Fla. 2011).

Thus, the crime-fraud exception must be narrowly construed and applied with caution to prevent opponents of the privilege from engaging in "groundless fishing expeditions." *See Cox*, 17 F.3d at 1416 (quoting *Zolin*, 491 U.S. at 571).

While the Eleventh Circuit has not elaborated on what constitutes a *prima facie* showing, federal trial courts in this District use a shifting standard regarding the burden of proof for determining the applicability of the crime-fraud exception. That shifting standard places the initial burden on the party opposing the attorney-client privilege to make a *prima facie* case that the exception applies, and then gives the party invoking the attorney-client privilege the opportunity to rebut:

> [T]he party opposing attorney-client privilege based on the crime/fraud exception has the initial burden of producing evidence which, if unexplained, would be *prima facie* proof of the existence of the exception. If that occurs, the burden of persuasion then shifts to the party asserting the privilege to give a reasonable explanation of its conduct, which it can do by demonstrating by a preponderance of the evidence that the *prima facie* showing that the crime/fraud exception applies should not be accepted. If the court accepts the explanation as sufficient to rebut the evidence presented by the party opposing the privilege, then the privilege remains. If the

> court does not find the evidence is sufficient to rebut the *prima facie* case, then the *prima facie* case still exists and the privilege is lost.

*Hominski*, 2026 WL 1261972 at *4 (internal quotes and citations omitted).

If a showing of "factual basis adequate to support a good faith belief by a reasonable person that *in camera* review of the materials may reveal evidence to establish the claim that the crime-fraud exception applies," then the Court may, in its sound discretion, decide to so engage in *in camera* review of the relevant materials. *Zolin*, 491 U.S. at 572.

### B. Applying the Law Governing the Crime-Fraud Exception in this Case

In this case, Boost has made no such evidentiary showing as to either prong of the Eleventh Circuit's litmus test in *Schroeder* sufficient to demonstrate that the crime-fraud exception eviscerates the attorney-client privilege that obviously attaches to Heidarpour's and the Firm's communications with the Firm's former clients regarding the instant TCPA Action and other cases and claims involving those former clients.

Counsel for Boost has communicated a belief that the crime-fraud exception applies to the materials sought in their Subpoena because the Plaintiffs in this TCPA Action allegedly committed perjury by making false statements—namely that they each respectively did not know each other and did not communicate with each other—in affidavits in this TCPA Action. However, even a demonstration of the commission of perjury (which Boost has not plainly made yet) is not a sufficient *prima facie* showing for Boost to invoke the crime-fraud exception to pierce the sacrosanct attorney-client privilege.

Rather, to invoke the crime-fraud exception and oppose the applicable attorney-client privilege here, Boost must adhere to the law governing the crime-fraud exception as outlined above.

**First**, for each request in the Subpoena that seeks privileged information, Boost must make a *prima facie* showing that the Firm's former client either (1) was engaged in criminal or fraudulent conduct when he sought Heidarpour's advice; (2) was planning criminal or fraudulent conduct when he sought Heidarpour's advice; *or* (3) committed a crime or fraud subsequent to receiving the benefit of Heidarpour's advice. *See Schroeder*, 842 F.2d at 1226.

**Second**, if Boost succeeds in making such a *prima facie* showing, it must then show that the Firm's assistance was obtained in furtherance of the criminal or fraudulent activity or was closely related to it. *Id.*

Boost has made no such showing and therefore has demonstrated no basis for the Firm to violate the attorney-client privilege by production of the protected materials it has sought in its Subpoena. Further, even if Boost had done so, that does not end the inquiry: the Firm, on behalf of its clients, would then have the opportunity to rebut any presumption that the crime-fraud exception applies. *See Hominski*, 2026 WL 1261972 at *4. The Court also retains discretion to perform an *in camera* review of the requested materials before ordering their production. *See Zolin*, 491 U.S. at 572.

Finally, even if Boost should somehow clear the high hurdles necessary to invoke the crime-fraud exception and pierce the attorney-client privilege, it can only do so as to those particular materials and communications that were used to further the alleged crime or fraud, since this exception does not give a party license for "groundless fishing expeditions," *see Cox*, 17 F.3d at 1416 (quoting *Zolin*, 491 U.S. at 571), and does not create a "blanket evisceration" of the attorney-client privilege. *See Hominski*, 2026 WL 1261972 at *4.

Therefore, until and unless Boost satisfies the stringent legal requirements set forth by the Eleventh Circuit, Heidarpour and the Firm are under <u>**strict ethical and legal obligations**</u> to

continue to safeguard the Firm's former clients' confidentiality and withhold those materials the Subpoena requests that are protected by the attorney-client privilege and work-product doctrine.

**III. Exceedingly Broad and Unduly Burdensome Subpoena Requests**

Like all parties in a federal civil action, Boost is required to "take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Fed. R. Civ. P. 45(d)(1). A party issuing a subpoena therefore must narrow its requests and "take reasonable steps to identify the correct recipient." *See Feingold v. Cardinale*, No. 22-CV-20375, 2023 WL 8476408 at *8 (S.D. Fla. November 1, 2023) (Reid, M.J.). Federal trial courts in this District have rejected subpoena requests where "[t]he universe of information covered by [the] requests appears to be boundless and untethered to the claims or defenses actually at issue in the case." *See Am. Federation of State, Cnty., and Mun. Employees (AFSCME) Council 79 v. Scott*, No. 11-21976-CIV, 277 F.R.D. 474, 478 (S.D. Fla. December 5, 2011) (Torres, M.J.).

In this case, Boost has made no apparent effort to reasonably narrow the requests in the Subpoena and appears to have failed to even identify the correct recipient. Many of the requests seek "all documents that refer or relate" to one of the Firm's former clients, or other persons or telephone numbers without any limitation whatsoever. Cursory review of the requests demonstrates that the Subpoena "sweeps more broadly than relevance and proportionality permit." *See Wendy's Netherlands B.V. v. Levy*, No. 26-14162-MC, 2026 WL 1649603 at *4 (S.D. Fla. May 27, 2026) (Maynard, M.J.).

As noted above, neither Heidarpour nor the Firm appeared as counsel of record in the TCPA Action, and the Firm's involvement in the TCPA Action was limited. *See* ***Exhibit 1***. However, the Subpoena gives these facts no consideration. As drafted, the Subpoena constitutes the exact type

of fishing expedition that courts routinely and summarily forbid. *See Cox*, 17 F.3d at 1416 (quoting *Zolin*, 491 U.S. at 571).

Further illustrating the unreasonable breadth of the Subpoena, in request no. 14, Boost asked the Firm to produce "[a]ll documents exchanged between you and Andrew Heidarpour" referring or relating to a litany of persons and subjects, again without limitation. This request, like most of the Subpoena's requests, on its face seeks a universe of information that is "boundless and untethered to the claims or defenses actually at issue in the case." *Id.* Further, as Heidarpour is the founding attorney and primary actor in the name of the Firm, this request is logically incoherent; Heidarpour has not "exchanged" documents with himself, and it is unclear how that could ever occur. It is important to note that the requests in this Subpoena, including request no. 14, are identical to those in two other subpoenas issued by Boost to Heidarpour himself and to Dana Oliver, Esq. ("**Oliver**"). The apparent copy-and-paste approach Boost has taken to this Subpoena and its duplicates to Heidarpour and Oliver is a strong indicator that the Subpoena is an impermissible fishing expedition. *See Cox*, 17 F.3d at 1416 (quoting *Zolin*, 491 U.S. at 571).

More seriously, the Subpoena's unreasonably overbroad requests represent an attempt to discover how the Firm, investigates, works on, and prosecutes TCPA claims generally, rather than to discover facts and materials relevant to the TCPA Action at issue. Allowing Boost to pierce the attorney-client privilege for such an improper purpose would not only violate the confidentiality of these Plaintiffs but would create a chilling effect across similarly situated parties and potential class action lawsuits.

As discussed at length above and in the specific responses below, the Firm has no choice but to invoke the attorney-client privilege in objecting to the Subpoena generally, and as to its specific requests. It is well-settled that generally a party asserting the attorney-client privilege

bears the burden of proving the existence of the privilege. *See United States v. Schaltenbrand*, 930 F.2d 1554, 1562 (11th Cir. 1991). Ordinarily, courts require parties to meet this burden by producing a privilege log or index rather than asserting a blanket claim of privilege, or otherwise waive the privilege. *See Thermoset Corp v. Building Materials Corp. of America*, No. 14-60268-CIV, 2015 WL 1565310 at *6 (S.D. Fla. April 8, 2015 (citing *Universal City Dev. Partners, Ltd. v. Ride & Show Eng'g, Inc.*, 230 F.R.D. 688, 695 (M.D. Fla. Sept. 23, 2025)).

"The Eleventh Circuit has never determined what constitutes a timely production of a privilege log in response to a request for production of documents." *Id.* However, courts in this District evaluating this question have employed helpful analysis provided by the Ninth Circuit in *Burlington N. & Santa Fe. Ry. Co. v. United States Dist. Court for the Dist. Of Montana*, 408 F.3d 1142 (9th Cir. 2005). *See Thermoset Corp.*, 2015 WL 1565310 at *6. Under the *Burlington* analysis, courts apply several factors "in the context of a holistic reasonableness analysis" to determine the timeliness of the production of a privilege log, which are:

> the degree to which the objection or assertion of privilege enables the litigant seeking discovery and the court to evaluate whether each of the withheld documents is privileged (where providing particulars typically contained in a privilege log is presumptively sufficient and boilerplate objections are presumptively insufficient); the timeliness of the objection and accompanying information about the withheld documents . . . ; the magnitude of the document production; and other particular circumstances of the litigation that make responding to discovery unusually easy . . . or unusually hard.

*Id.*, citing *Burlington*, 408 F.3d at 1149.

As attested in the attached affidavit, Heidarpour, on behalf of the Firm, has made a good-faith effort to timely respond to the Subpoena. *See* ***Exhibit 1***. However, due to the sheer unreasonable breadth of the Subpoena, there are an estimated **70,000** pages of documents to be

reviewed, organized, and catalogued.[4] While this response is not accompanied by a privilege log, under these circumstances and the above factors, a later-in-time privilege log production does not waive the attorney-client privilege, which is "a cornerstone of the entire judicial/legal system in this country." *Id.* (quoting *Adega v. State Farm Fire & Cas. Ins. Co.*, No. 07-20696-CIV, 2008 WL 1009719, at *2 (S.D. Fla. Apr. 9, 2008) (Brown, M.J.)). As attested to in Heidarpour's affidavit, the documents requested include vast amounts of materials that are unrelated to the TCPA Action at issue, and review of such documents sufficient to produce a detailed privilege log would take an inordinate amount of time, and is not likely to lead to the production of relevant information or documents. *See* ***Exhibit 1***. In light of the foregoing principles and analysis, the Firm objects to the Subpoena as follows.

**SPECIFIC RESPONSES TO THE SUBPOENA**

**Request No. 1:**

All documents that refer or relate to the Lawsuit.

**Response:**

The Firm objects to this request because it is vague, overly broad, unreasonable in scope, and not reasonably calculated to lead to the discovery of admissible evidence. *See e.g.*, *Sharpe Inv. Land Tr. No. C v. Pac. Ins. Co., Ltd.*, No. 08-22061-CIV, 2009 WL 10667812, at *2 (S.D. Fla. Oct. 6, 2009) ("[T]he Court agrees that the phrase 'entire file' is overly broad."); *Alabama & Gulf Coast Ry., LLC v. United States*, No. CA 10-0352-WS-C, 2011 WL 1838882, at *2 (S.D. Ala. May 13, 2011) ("Certainly, the request for production of the entire files is overbroad."); *Cadle v. GEICO*

[4] This figure is a good-faith estimate based on review of records, and does not include the approximately 1,350 pages of documents that Oliver has identified as being described in the subpoena issued to him.

*Gen. Ins. Co.*, No. 6:13-CV-1591-Orl-31GJK, 2014 WL 12621189, at *3 (M.D. Fla. May 28, 2014) ("[W]hile counsel's entire file from the underlying action may contain some information relevant to this [bad faith] case, the request at issue will undoubtedly capture materials that are completely irrelevant to this matter. The Defendant made no effort to tailor the Subpoena to the issues in this case."). The Firm further objects to this request to the extent it seeks documents which are protected under the attorney-client and work-product privilege doctrines. *See* Fed. R. Civ. P. 45(e)(2)(A).

**Request No. 2:**

All documents that refer or relate to Nicholas Dungey.

**Response:**

The Firm objects to this request because it is vague, overly broad, unreasonable in scope, not reasonably calculated to lead to the discovery of admissible evidence, and not proportional to the needs of the case. *See, e.g.*, *Mancuso v. Fla. Metro. Univ., Inc.*, No. 09-61984-CIV, 2011 WL 310726, *3 n.3 (S.D. Fla. Jan 28, 2011) ("The scope of discovery under a Rule 45 subpoena is the same as the scope of discovery under Rule 26." (citing *Barrington v. Mortgage, IT, Inc.*, No. 07-61304-CIV, 2007 WL 4370647, at *3 (S.D. Fla. Dec. 10, 2007)); *see also* Fed. R. Civ. P. 26(b)(1) (Documents sought must be "reasonably calculated to lead to the discovery of admissible evidence."). Notably, this request is not limited by case, claim, subject matter, or any other criteria. Nicholas Dungey is the Firm's former client in this matter, and, without disclosing details, the Firm has represented him in other matters. *See* ***Exhibit 1***. Therefore, the Firm further objects to this request to the extent it seeks documents which are protected under the attorney-client and work-product privilege doctrines. *See* Fed. R. Civ. P. 45(e)(2)(A).

**Request No. 3:**

All documents that refer or relate to Kyle Butler Rashley.

**Response:**

The Firm objects to this request because it is vague, overly broad, unreasonable in scope, not reasonably calculated to lead to the discovery of admissible evidence, and not proportional to the needs of the case. *See, e.g.*, *Mancuso.*, 2011 WL 310726, at *3 n.3. Notably, this request is not limited by case, claim, subject matter, or any other criteria. Kyle Butler Rashley is the Firm's former client in this matter, and, without disclosing details, the Firm has represented him in other matters. *See **Exhibit 1***. Therefore, the Firm further objects to this request to the extent it seeks documents which are protected under the attorney-client and work-product privilege doctrines. *See* Fed. R. Civ. P. 45(e)(2)(A).

**Request No. 4:**

All documents that refer or relate to communications you had with Nicholas Dungey between January 1, 2025 and April 12, 2025.

**Response:**

The Firm objects to this request because it is vague, overly broad, unreasonable in scope, not reasonably calculated to lead to the discovery of admissible evidence, and not proportional to the needs of the case. *See, e.g.*, *Mancuso.*, 2011 WL 310726, at *3 n.3. Notably, this request is not limited by case, claim, or subject matter. Nicholas Dungey is the Firm's former client in this matter, and, without disclosing details, the Firm has represented him in other matters. *See **Exhibit 1***. Therefore, the Firm further objects to this request to the extent it seeks documents which are protected under the attorney-client and work-product privilege doctrines. *See* Fed. R. Civ. P. 45(e)(2)(A).

While the request appears cognizant of the date of the April 11, 2025 engagement agreement between the Firm and Dungey, the Firm's duty to maintain confidentiality extends beyond the dates covered by the effective dates of that agreement. *See, e.g., Preamble, Ch. 4 R. Regul. Fla. Bar* ("there are some duties, for example confidentiality under rule 4-1.6, which attach when the lawyer agrees to consider whether a client-lawyer relationship will be established."); *R. Regul. Fla. Bar 4-1.6(a)* ("A lawyer must not reveal information relating to a client's representation . . . unless the client gives informed consent.").

**Request No. 5:**

All documents that refer or relate to communications you had with Kyle Rashley between January 1, 2025 and April 12, 2025.

**Response:**

The Firm objects to this request because it is vague, overly broad, unreasonable in scope, not reasonably calculated to lead to the discovery of admissible evidence, and not proportional to the needs of the case. *See, e.g.*, *Mancuso.*, 2011 WL 310726, at *3 n.3. Notably, this request is not limited by case, claim, or subject matter. Kyle Rashley is the Firm's former client in this matter, and, without disclosing details, the Firm has represented him in other matters. *See **Exhibit 1***. Therefore, the Firm further objects to this request to the extent it seeks documents which are protected under the attorney-client and work-product privilege doctrines. *See* Fed. R. Civ. P. 45(e)(2)(A).

While the request appears cognizant of the date of the April 9, 2025 engagement agreement between the Firm and Rashley, the Firm's duty to maintain confidentiality extends beyond the dates covered by the effective dates of that agreement. *See Preamble, Ch. 4 R. Regul. Fla. Bar* ("there are some duties, for example confidentiality under rule 4-1.6, which attach when the lawyer

agrees to consider whether a client-lawyer relationship will be established."); *R. Regul. Fla. Bar 4-1.6(a)* ("A lawyer must not reveal information relating to a client's representation . . . unless the client gives informed consent.").

**Request No. 6:**

All documents that refer or relate to Boost Health Insurance Agency.

**Response:**

The Firm objects to this request because it is vague, overly broad, unreasonable in scope, not reasonably calculated to lead to the discovery of admissible evidence, and not proportional to the needs of the case. *See, e.g.*, *Mancuso.*, 2011 WL 310726, at *3 n.3. Notably, this request is not limited by case, claim, or subject matter. The Firm further objects to this request to the extent it seeks documents which are protected under the attorney-client and work-product privilege doctrines. *See* Fed. R. Civ. P. 45(e)(2)(A).

**Request No. 7:**

All documents that refer or relate to www.findyourhealthplan.org.

**Response:**

The Firm objects to this request because it is vague, overly broad, unreasonable in scope, not reasonably calculated to lead to the discovery of admissible evidence, and not proportional to the needs of the case. *See, e.g.*, *Mancuso.*, 2011 WL 310726, at *3 n.3. Notably, this request is not limited by case, claim, or subject matter. The Firm further objects to this request to the extent it seeks documents which are protected under the attorney-client and work-product privilege doctrines. *See* Fed. R. Civ. P. 45(e)(2)(A).

**Request No. 8:**

All documents that refer or relate to Thomas Murphy.

**Response:**

The Firm objects to this request because it is vague, overly broad, unreasonable in scope, not reasonably calculated to lead to the discovery of admissible evidence, and not proportional to the needs of the case. *See, e.g.*, *Mancuso.*, 2011 WL 310726, at *3 n.3. The Firm further objects to this request to the extent it seeks documents which are protected under the attorney-client and work-product privilege doctrines. *See* Fed. R. Civ. P. 45(e)(2)(A).

**Request No. 9:**

All documents that refer or relate to Thomas Murphy's association with the telephone number (561) 943-0417 as referenced in your April 3, 2025 email to Peter Rosenweig.

**Response:**

The Firm objects to this request because it is vague, overly broad, unreasonable in scope, not reasonably calculated to lead to the discovery of admissible evidence, and not proportional to the needs of the case. *See, e.g.*, *Mancuso.*, 2011 WL 310726, at *3 n.3. The telephone number (561) 943-0417 belongs to Dungey, who is the Firm's former client in the TCPA Action at issue. Boost's requests regarding this telephone number are functionally the same as requests seeking confidential information about Dungey himself. Therefore, the Firm further objects to this request to the extent it seeks documents which are protected under the attorney-client and work-product privilege doctrines. *See* Fed. R. Civ. P. 45(e)(2)(A).

**Request No. 10:**

All documents that refer or relate to the telephone number (561) 460-8422.

**Response:**

The Firm objects to this request because it is vague, overly broad, unreasonable in scope, not reasonably calculated to lead to the discovery of admissible evidence, and not proportional to

the needs of the case. *See, e.g.*, *Mancuso.*, 2011 WL 310726, at *3 n.3. The telephone number (561) 460-8422 belongs to Rashley, who is the Firm's former client in the TCPA Action at issue. Boost's requests regarding this telephone number are functionally the same as requests seeking confidential information about Rashley himself. Therefore, the Firm further objects to this request to the extent it seeks documents which are protected under the attorney-client and work-product privilege doctrines. *See* Fed. R. Civ. P. 45(e)(2)(A).

**Request No. 11:**

All documents that refer or relate to the telephone number (561) 943-0417.

**Response:**

The Firm objects to this request because it is vague, overly broad, unreasonable in scope, not reasonably calculated to lead to the discovery of admissible evidence, and not proportional to the needs of the case. *See, e.g.*, *Mancuso.*, 2011 WL 310726, at *3 n.3. The telephone number (561) 943-0417 belongs to Dungey, who is the Firm's former client in the TCPA Action at issue. Boost's requests regarding this telephone number are functionally the same as requests seeking confidential information about Dungey himself. Therefore, the Firm further objects to this request to the extent it seeks documents which are protected under the attorney-client and work-product privilege doctrines. *See* Fed. R. Civ. P. 45(e)(2)(A).

**Request No. 12:**

All documents that refer or relate to the telephone number (305) 776-8306.

**Response:**

The Firm objects to this request because it is vague, overly broad, unreasonable in scope, not reasonably calculated to lead to the discovery of admissible evidence, and not proportional to the needs of the case. *See, e.g.*, *Mancuso.*, 2011 WL 310726, at *3 n.3. The telephone number

(305) 776-8306 belongs to Dungey, who is the Firm's former client in the TCPA Action at issue. Boost's requests regarding this telephone number are functionally the same as requests seeking confidential information about Dungey himself. Therefore, the Firm further objects to this request to the extent it seeks documents which are protected under the attorney-client and work-product privilege doctrines. *See* Fed. R. Civ. P. 45(e)(2)(A).

**Request No. 13:**

All documents exchanged between you and Avi Kaufman that refer or relate to: (i) the Lawsuit, (ii) Nicholas Dungey, (iii) Kyle Rashley, (iv) Boost Health Insurance Agency.

**Response:**

The Firm objects to this request because it is vague, overly broad, unreasonable in scope, not reasonably calculated to lead to the discovery of admissible evidence, and not proportional to the needs of the case. *See, e.g.*, *Mancuso.*, 2011 WL 310726, at *3 n.3. The Firm further objects to this request to the extent it seeks documents which are protected under the attorney-client and work-product privilege doctrines. *See* Fed. R. Civ. P. 45(e)(2)(A).

**Request No. 14:**

All documents exchanged between you and Andrew Heidarpour that refer or relate to: (i) the Lawsuit, (ii) Nicholas Dungey, (iii) Kyle Rashley, (iv) Boost Health Insurance Agency.

**Response:**

The Firm objects to this request because it is vague, overly broad, unreasonable in scope, not reasonably calculated to lead to the discovery of admissible evidence, and not proportional to the needs of the case. *See, e.g.*, *Mancuso.*, 2011 WL 310726, at *3 n.3. Further, this request is non-sensical and incoherent insofar as Heidarpour is the founding attorney and primary actor on behalf of the Firm and has not exchanged documents with himself. Regardless, to the extent any such

documents exist, the Firm further objects to this request to the extent it seeks documents which are protected under the attorney-client and work-product privilege doctrines. *See* Fed. R. Civ. P. 45(e)(2)(A).

**Request No. 15:**

All documents that refer or relate to instructions you gave to Nicholas Dungey to preserve relevant evidence including, without limitation, his telephones and records of incoming and outgoing telephone communications.

**Response:**

The Firm objects to this request because it is vague, overly broad, unreasonable in scope, not reasonably calculated to lead to the discovery of admissible evidence, and not proportional to the needs of the case. *See, e.g.*, *Mancuso.*, 2011 WL 310726, at *3 n.3. The Firm further objects to this request to the extent it seeks documents which are protected under the attorney-client and work-product privilege doctrines. *See* Fed. R. Civ. P. 45(e)(2)(A).

**Request No. 16:**

All documents that refer or relate to instructions you gave to Kyle Rashley to preserve relevant evidence including, without limitation, his telephones and records of incoming and outgoing telephone communications.

**Response:**

The Firm objects to this request because it is vague, overly broad, unreasonable in scope, not reasonably calculated to lead to the discovery of admissible evidence, and not proportional to the needs of the case. *See, e.g.*, *Mancuso.*, 2011 WL 310726, at *3 n.3. The Firm further objects to this request to the extent it seeks documents which are protected under the attorney-client and work-product privilege doctrines. *See* Fed. R. Civ. P. 45(e)(2)(A).

Dated: September 2, 2026

Respectfully submitted,

COLE, SCOTT & KISSANE, P.A.
*Counsel for Non-Party Heidarpour Law Office PLLC.*
Esperante Building
222 Lakeview Avenue, Suite 500
West Palm Beach, FL 33401
Telephone (561) 383-9234
Facsimile (561) 683-8977
Primary e-mail: Jeremy.Colvin@csklegal.com
Primary e-mail: Jensen.Hoernig@csklegal.com
Secondary e-mail: Bianca.Brostrom@csklegal.com

By:

*/s/ Jensen C. Hoernig*
Jeremy M. Colvin, Esq.
Florida Bar No.: 152226
Jensen C. Hoernig, Esq.
Florida Bar No.: 1055056

# EXHIBIT 1

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

KYLE BUTLER RASHLEY, and
NICHOLAS DUNGEY, on behalf of
Themselves and others similarly situated,

Plaintiffs,

Case No.: 1:25-CV-21690-KMW

v.

BOOST HEALTH INSURANCE, INC.,

Defendant.
_______________________________/

**AFFIDAVIT OF ANDREW HEIDARPOUR, ESQ.**

BEFORE ME, the undersigned authority, personally appeared Andrew Heidarpour, Esq., who being first duly sworn, deposes, and says:

1. My name is Andrew Heidarpour, Esq.

2. I am the founding attorney of Heidarpour Law Office, PLLC (the "Firm").

3. One of the Firm's primary practice areas involves asserting claims under the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("**TCPA**") claims on behalf of class action plaintiffs.

4. Since May 2022, I have handled approximately 1,000 claims for filing.

5. Once a client retains the Firm to handle a TCPA claim, when appropriate I refer the day-to-day file management to appropriate local or otherwise qualified counsel.

6. Even when I refer a claim to another attorney, I continue to represent the clients and serve as a resource for the clients and the referral counsel as needed.

7. I have known and worked on multiple claims with Avi Kaufman, Esq. for approximately five years.

8. Dana Oliver, Esq., is an independent contractor who performs work on behalf of the Firm, including on the instant TCPA claim and other claims connected with Plaintiffs, and has acted on behalf of the Firm with respect to those claims.

9. Without disclosing details, I have represented Kyle Rashley ("Rashley") in approximately sixteen (16) claims, including the instant TCPA claim.

10. I began my engagement with Rashley in the instant TCPA claim on April 9, 2025.

11. I terminated my engagement with Rashley in the instant TCPA claim on August 12, 2026.

12. Without disclosing details, I have represented Nicholas Dungey ("Dungey") in approximately twenty-five (25) claims, including the instant TCPA claim.

13. I began my engagement with Dungey in the instant TCPA claim on April 11, 2025.

14. I terminated my engagement with Dungey in the instant TCPA claim on August 12, 2026.

15. I am familiar with the issues described in the instant TCPA claim.

16. I have made a good-faith effort to comply with the Subpoena.

17. In preparing for the Response to the Subpoena, I utilized the following search terms to compile the voluminous materials from two (2) firm email addresses, aheidarpour@hlfirm.com, and heidarpourlawfirm@gmail.com:

a. "Rashley";

b. "Thomas Murphy";

c. "Dungey";

d. "Boost";

e. "Dungey," and "Rashley," excluding "Boost";

f. "Avi," Dungey," and "Rashley," excluding "Boost";

g. "Mirror/Mirroring";

h. "Add/Delete/Remove";

i. "561-460-8422";

j. "561-943-0417";

k. "305-776-8306";

l. "(561) 460-8422";

m. "(561) 943-0417";

n. "(305) 776-8306";

o. "Preserving or keeping evidence";

p. "Old phone/old device/previous";

q. "findyourhealthplan.org";

r. "Preserve Data"; and

s. "Preservation".

18. The above search terms yielded over 70,000 pages of documents.

19. The above search did not include searching for and obtaining additional documents, communications, and materials possessed by Dana Oliver, Esq. via the email address doliver.heidarpourlawfirm@gmail.com, which themselves presently appear to number approximately an additional 1,350 pages.

20. Review of these documents would take an inordinate hours to search, review, and categorize for privileged information.

21. Because these documents include vast amounts of materials that are not related to the TCPA Action at issue, review of these documents is not likely to result in the production of any relevant information or documents.

22. I am unable to effectuate review of all the documents requested by the Subpoena in advance of the compliance deadline.

23. Responding to the Subpoena, including by preparing and producing a privilege log, will incur extensive monetary costs.

24. Responding to the Subpoena, including by preparing and producing a privilege log, will severely disrupt my regular business activities.

FURTHER AFFIANT SAYETH NOT.

[signature]
Andrew Heidarpour, Esq.

The foregoing instrument was acknowledged before me this 2nd day of September, 2026, by Andrew Heidarpour, Esq. who is personally known to me and who did/did not take an oath.

[signature]
Notary Signature

Bianca M. Brostrom
Notary Name – print

Notary Public State of Florida
Bianca M. Brostrom
My Commission HH 796759
Expires 6/12/2030



COLE, SCOTT & KISSANE, P.A.
ESPERANTE BUILDING - 222 LAKEVIEW AVENUE SUITE 500 - WEST PALM BEACH, FLORIDA 33401 (561) 383-9200 - (561) 683-8977 FAX