**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

KYLE BUTLER RASHLEY, *et al.*

Plaintiffs/Counter-Defendants,

v.

BOOST HEALTH INSURANCE AGENCY, LLC,

Defendant/Counter-Plaintiff.

CASE NO. 1:25-CV-21690-KMW-EAL

**NON-PARTIES' MOTION TO QUASH**
**SUBPOENAS TO PRODUCE DOCUMENTS**

Non-Parties Avi R. Kaufman, Rachel Kaufman, and Kaufman, P.A. (collectively, the "Kaufmans"), under Federal Rule of Civil Procedure 45(d)(3)(A), move this Court to quash the Subpoenas to Produce Documents ("Subpoenas") served on them by Defendant/Counter-Plaintiff Boost Health Insurance Agency, LLC ("Boost") on September 3, 2026, in this action.

## INTRODUCTION

Less than three weeks after Avi Kaufman and Kaufman, P.A. withdrew as Plaintiffs' counsel in this case, Boost served three Subpoenas to Produce Documents on Mr. Kaufman, his law partner Rachel Kaufman, and their firm Kaufman, P.A. The Subpoenas are breathtakingly overbroad. They demand the Kaufmans' entire client files, every communication with their former clients, files from unrelated representations, and documents about individuals unconnected to this case. The Subpoenas fail under every applicable standard.

Under the *Shelton* framework – which governs discovery directed at counsel – Boost cannot satisfy any of the three required showings. Boost has not even tried to obtain the requested discovery directly from Plaintiffs, though nearly every category of document it seeks is squarely

within Plaintiffs' possession. Many requests are irrelevant on their face – demanding files from unrelated representations, documents about non-parties, and communications outside the litigation period unconnected to the claims or counterclaims at issue. The requests are also permeated by privilege, sweeping in the Kaufmans' entire case files, attorney-client communications, co-counsel communications, and litigation strategy. And none of the information is crucial to Boost's case: Boost already possesses extensive evidence supporting its counterclaims. The Kaufmans' client files would add nothing Boost lacks or cannot obtain from Plaintiffs. The Court should quash these fishing expeditions into privilege and irrelevant matters.

The Subpoenas also independently require quashing under Rule 45(d)(3)(A). Beyond the privilege and relevance deficiencies above, the Subpoenas unduly burden non-parties with no stake here. Compliance would require the Kaufmans to search their entire law practice, conduct a massive privilege review, and prepare a voluminous privilege log – all because Boost chose to serve 103 untailored requests on former counsel rather than pursuing the information through ordinary party discovery or less burdensome means. The Court should quash the Subpoenas and award the Kaufmans their reasonable fees and costs.

## **BACKGROUND**

In April 2025, Plaintiffs Kyle Butler Rashley and Nicholas Dungey commenced this putative class action against Boost, alleging violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 (the "TCPA"). ECF 1. Avi R. Kaufman, Esq. ("Mr. Kaufman") is the founding member of Kaufman, P.A., a law firm based in Coral Gables, Florida, and served as counsel of record for Plaintiffs from inception through August 20, 2026. ECF 48 ¶¶ 1, 3; ECF 51. Rachel Kaufman is also a founding member of Kaufman, P.A. She has never represented any party in this case and has no connection to it beyond her role at the firm.

In June 2025, Defendant answered and asserted counterclaims against both Plaintiffs for fraudulent misrepresentation, abuse of process, and civil conspiracy. ECF 7 at 14–22. The next month, Plaintiffs moved to dismiss the counterclaim and submitted sworn declarations in support. ECF 11; ECF 11-1; ECF 11-2. Defendant then filed a First Amended Counterclaim narrowing its claims to two counts of fraudulent misrepresentation. ECF 14. Plaintiffs renewed their motion to dismiss, again relying on the same sworn declarations. ECF 16. The Court denied the motion on March 3, 2026. ECF 26 at 7–8.

During the representation, Mr. Kaufman learned information that undermined certain factual representations Plaintiffs had made to counsel and in sworn submissions filed with this Court. ECF 48 ¶ 12. Upon learning this, Mr. Kaufman promptly determined that he could no longer continue the representation under his professional and ethical obligations. On August 13, 2026, he filed a Motion for Leave to Withdraw as Counsel. ECF 48. The Court granted the motion in August 2026. ECF 51.

On September 3, 2026 – less than three weeks after the Court granted the withdrawal – Defendant served three Subpoenas to Produce Documents, one on each of the Kaufmans, at their office in Coral Gables, Florida. *See* Subpoena to Produce Documents Directed to Avi R. Kaufman, dated September 3, 2026, attached as **Exhibit 1**; Subpoena to Produce Documents Directed to Rachel Kaufman, dated September 3, 2026, attached as **Exhibit 2**; Subpoena to Produce Documents Directed to Kaufman, P.A., dated September 3, 2026, attached as **Exhibit 3**. Each Subpoena contains thirty-four document requests – except for the Subpoena served on Kaufman, P.A., which contains thirty-five – that overwhelmingly target the Kaufmans' privileged attorney-client communications and work product. The requests demand, among other things, the Kaufmans' entire client files from this action, all communications with Plaintiffs during and

outside the litigation period, all documents exchanged with co-counsel and numerous third parties, files from every other matter in which the Kaufmans represented either Plaintiff, and documents about individuals who are not parties and have no apparent connection to this case. Many requests contain no temporal limitation, and nearly all seek privileged attorney-client communications and attorney work product.

Given the privilege concerns and undue burden these requests impose, the Kaufmans now move to quash the Subpoenas in their entirety.[1]

## LEGAL STANDARD

"The issuance of a subpoena to a third party is governed by Rule 45." *See Westchester Surplus Lines Ins. Co. v. Portofino Masters Homeowners Ass'n, Inc.*, 347 F.R.D. 228, 234 (N.D. Fla. 2024). A party issuing a subpoena "must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Fed. R. Civ. P. 45(d)(1). And as "with any discovery in a civil matter, the information sought in the subpoena must be relevant to the case." *Westchester*, 347 F.R.D. at 234.

Even when information is relevant, Rule 45(d)(3) provides that, on timely motion, a district court "***must*** quash or modify a subpoena that . . . (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or (iv) subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3) (emphasis added); *Westchester*, 347 F.R.D. at 234 (acknowledging same).

[1] Given the nature of the Subpoenas and the objections set forth in this motion, the Kaufmans elected to move to quash in the first instance. *See, e.g.*, *Ctr. for Individual Rights v. Chevaldina*, 2017 WL 5905191, at *4 (S.D. Fla. Nov. 29, 2017) (recognizing that a non-party may file a timely motion to quash to preserve its objections to a subpoena); *Arthur J. Gallagher & Co. v. O'Neill*, 2017 WL 5713361, at *4 (E.D. La. Nov. 27, 2017) ("In this case, [Non-Party] properly asserted its objections in a timely motion to quash under Rule 45(d)(3), choosing not to employ the separate Rule 45(d)(2) procedure. Its objections were not waived.").

"In other words, 'the mere relevance of those documents does not override the privilege.'" *Id.* (quoting *Guarantee Ins. Co. v. Heffernan Ins. Brokers, Inc.*, 300 F.R.D. 590, 594 (S.D. Fla. 2014)).

Moreover, non-parties are entitled to heightened protection under the discovery rules. *See, e.g.*, *Jordan v. Comm'r, Miss. Dep't of Corr.*, 947 F.3d 1322, 1337 (11th Cir. 2020) ("The status of the subpoena recipient as a non-party is also a factor that can weigh against disclosure in the undue burden inquiry."). These protections apply with particular force when a subpoena targets counsel for a party. *Shelton v. American Motors Corp.*, 805 F.2d 1323, 1327 (8th Cir. 1986); *see also Covington v. Walgreen Co.*, 2012 WL 2120776, at *3 (S.D. Fla. June 11, 2012) (applying the *Shelton* framework and requiring the movant to satisfy the *Shelton* factors before permitting discovery from a party's counsel).

## ARGUMENT

The Subpoenas should be quashed in their entirety. As a threshold matter, the *Shelton* framework governs discovery directed at counsel, and Defendant has not even tried to satisfy it. Apart from *Shelton*, the Subpoenas independently require quashing under Rule 45(d)(3)(A) because they seek privileged and irrelevant material and unduly burden the Kaufmans. Finally, Rule 45(d)(1) entitles the Kaufmans to their reasonable fees and costs.

### I. THE *SHELTON* FRAMEWORK APPLIES AND DEFENDANT CANNOT SATISFY IT

When discovery is directed at counsel for a party, the party seeking the discovery must show that: (1) no other means exist to obtain the information; (2) the information is relevant and non-privileged; and (3) the information is crucial to case preparation. *Shelton*, 805 F.2d at 1327; *see also Covington*, 2012 WL 2120776, at *3 (same). Although *Shelton* arose in the deposition context, courts have applied its framework to document subpoenas directed at counsel, reasoning that "document requests are the substantial equivalent of depositions for these purposes and are just as problematic as the deposition requests." *Allen v. Brown Advisory, LLC*, 2020 WL 5603760,

at *2 (W.D. Va. Sept. 17, 2020) (quoting *Rygg v. Hulbert*, 2013 WL 264762, at *1 (W.D. Wash. Jan. 23, 2013)); *see also Monster Energy Co. v. Vital Pharm., Inc.*, 2020 WL 2405295, at *9 (C.D. Cal. Mar. 20, 2020) ("[B]ecause there is present, on-going litigation, because discovery sought from opposing counsel is universally disfavored, and because the consensus among courts is to apply the heightened standard from *Shelton*, the Court will do so here."). Courts in this District have followed suit. *See, e.g., Kolmat Do Brasil, Ltda. v. Evergreen United Investments, LLC*, 2016 WL 11783288, at *1–2 & n.1 (S.D. Fla. Aug. 30, 2016) (applying *Shelton* to a document subpoena directed at former counsel).

"[U]nder the *Shelton* framework, the party responsible for issuing the subpoena bears the burden of showing that compliance should be required." *Allen*, 2020 WL 5603760, at *3 (denying motion to compel document production from non-party attorney because the requesting party had "not yet attempted to satisfy" its burden under *Shelton*). The subpoenaed attorney need not justify withholding documents until the requesting party first shows that discovery from counsel is permissible. *Rygg*, 2013 WL 264762, at *2 ("Defendants need to satisfy the burdens associated with asserting privilege only after it is determined that discovery is otherwise permissible."). Boost has made no effort to carry this burden.

Application of each *Shelton* factor confirms that the Subpoenas must be quashed.

***No other means exist.*** The first *Shelton* factor requires Boost to show that no other means exist to obtain the information it seeks. *Shelton*, 805 F.2d at 1327. Boost cannot make that showing. A party must first seek the information from the parties themselves before burdening non-party counsel with a subpoena. *See AFSCME Council 79 v. Scott*, 277 F.R.D. 474, 478–79 (S.D. Fla. 2011) (quashing subpoena because the defendant could obtain the same information through other sources, and holding that the "availability of similar documents and information is

itself a separate basis to quash"); *see also Monster Energy*, 2020 WL 2405295, at *11–12 (similar). Boost has not even tried.[2] And a closer look at the requests confirms the point.[3] The vast majority – Requests 1 through 18 and 29 through 34 – seek documents and information squarely within Plaintiffs' own possession: documents about this action and each Plaintiff, communications with Plaintiffs, consent forms, documents about Boost and its website, litigation-hold instructions, and files from other matters involving either Plaintiff. Boost can attempt to obtain every one of these categories from Plaintiffs through ordinary party discovery.

As to the remaining requests, the information Boost seeks is available elsewhere. Requests 19 through 22, 26, 27, and 28 target documents exchanged with or referrals from attorneys who were not counsel of record here. If Boost believes those individuals possess relevant information, it should subpoena them directly. *Cf. Monster Energy*, 2020 WL 2405295, at *11 (acknowledging the requesting party's showing that it had already unsuccessfully attempted to obtain the same inter-firm communications directly from the other law firms). The Kaufmans know of no such subpoena. And Request 25[4] speaks for itself: it demands "[a]ll documents exchanged between you and any third party that refer or relate to: (i) the Lawsuit, (ii) Dungey, (iii) Rashley, (iv) Boost Health Insurance Agency, (v) Arthur Cochran, (vi) Andira Fox, (vii) Andrew Duncan Suess, (viii)

---

[2] In fact, it does not appear that Boost even attempted to serve Plaintiffs with notice and a copy of the Subpoenas before serving them on the Kaufmans, as Federal Rule of Civil Procedure 45(a)(4) requires. This failure independently requires quashing the Subpoenas. *See Sheets v. Presseller*, 2024 WL 4695880, at *1 (M.D. Fla. Nov. 6, 2024) (quashing subpoenas where the serving party failed to provide notice under Rule 45(a)(4)); *Fed. Deposit Ins. Corp. v. Kaplan*, 2015 WL 4744361, at *3 (M.D. Fla. Aug. 10, 2015) (holding subpoena "void and unenforceable" where serving party failed to provide opposing party notice before serving subpoena on non-party).

[3] Although the three Subpoenas define "You" differently – as Avi Kaufman in one, Rachel Kaufman in another, and Kaufman, P.A. in the third – the requests are otherwise largely identical.

[4] The same Request is Request 26 in the subpoena served on Kaufman, P.A.

Nicholas Finley." Ex. 1, Request 25. If any of this information is relevant (and that is questionable), Boost can obtain it directly from those third parties.

***The information sought is either irrelevant, privileged, or both.*** The second *Shelton* factor requires Boost to show that the information is both relevant and non-privileged. *Shelton*, 805 F.2d at 1327. The Subpoenas fail on both fronts.

First, many requests are simply irrelevant. Requests 6–9 demand communications with Plaintiffs outside the litigation period and untethered to any claim or defense. *See Scott*, 277 F.R.D. at 478–79 ("The universe of information covered by these requests appears to be boundless and untethered to the claims or defenses actually at issue in the case."). Requests 31–32 demand files from every ***other*** matter in which the Kaufmans represented either Plaintiff, but not ***this action***; Requests 33–34 seek documents about Nicholas Finley, a former client of Kaufman, P.A. and non-party with no apparent connection to this case; and Requests 26–28 seek TCPA referral documents that likewise have nothing to do with this case. Requests 19–22 and 24–25 also contain sub-parts demanding documents about former clients who are not parties to or witnesses in this litigation. And Requests 2–3, which demand all documents relating to each Plaintiff without limitation, are not tailored to seek relevant information. *See Monster Energy*, 2020 WL 2405295, at *12–13 (quashing requests that were not "tailored to seek or obtain relevant information").

Second, the Subpoenas are permeated by invasive requests for privileged material. Because the Subpoenas seek documents from former counsel, Boost bears the burden of showing the discovery it seeks is not privileged. *See Monster Energy*, 2020 WL 2405295, at *13 ("[B]ecause VPX seeks communication from Monster's former counsel, VPX bears the burden [of] showing communications sought . . . are not privileged, and it has failed to do so here."). Boost has made no such showing. Requests 1 through 18 collectively demand the Kaufmans'

entire case file – all documents about this action and each Plaintiff, all communications with Plaintiffs (during and outside the litigation period), and all documents about consent forms, telephone numbers, and Boost's website. When directed at former counsel, these requests necessarily sweep in privileged attorney-client communications, litigation strategy, and work product. *See Westchester*, 347 F.R.D. at 234–35 (quashing subpoena to a law firm because the requests "are invasive of the attorney-client and work-product privileges").

Requests 19–22 raise similar problems, seeking documents exchanged between each subpoena recipient and attorneys who were not counsel in this action – communications protected by the attorney-client, work-product, or common-interest privileges to the extent that they relate to a joint representation or shared litigation interests. Requests 23 and 24 target communications between the subpoena recipient and co-counsel (Request 23) and the other Kaufman (Request 24) – privileged intra-firm and co-counsel communications. *See Monster Energy*, 2020 WL 2405295, at *13 (quashing inter-firm communication requests where the issuing party failed to show they were non-privileged and the common-interest doctrine may have applied).

The Subpoenas do not stop there. Request 25 demands all documents exchanged with "any third party" – an undefined, limitless term sweeping in communications with experts, consultants, and co-counsel in other proceedings. Requests 26–28 demand the Kaufmans' entire client files for every individual ever referred to them for TCPA representation – files that necessarily contain privileged communications and work product. Requests 29 and 30 seek litigation-hold instructions – quintessential work product reflecting counsel's assessment of what documents must be preserved. *See Shelton*, 805 F.2d at 1328–29 ("[S]election and compilation of documents by counsel falls within the highly protective category of opinion work product"); *Westchester*, 347 F.R.D. at 235–36 (similar). And Requests 31–34 demand files from entirely separate

representations independently protected by the attorney-client privilege and work-product doctrine, with no bearing on this case.

***Crucial to case preparation.*** Even if Boost could overcome the first two *Shelton* factors – and it cannot – it must still show that the information it seeks is crucial to preparing its case. *Shelton*, 805 F.2d at 1327. Boost cannot make that showing.

Boost's amended counterclaims allege that each Plaintiff used a VPN to visit Boost's website, entered a fictitious name and email address but his real telephone number, and falsely consented to be contacted – all to manufacture TCPA claims. ECF 14 ¶¶ 28–43 (Dungey), 72–89 (Rashley). That conduct occurred on Boost's own website, which Boost claims to have documented in real time through video replays. ECF 14 ¶¶ 26, 74; ECF 23-1 ¶¶ 24, 58. Boost possesses those website records and video replays, Verizon call and messaging records for Plaintiffs (ECF 47 at 3), forensic imaging results from Plaintiffs' devices (*id.* at 2), deposition testimony from Mr. Dungey (*id.* at 3), and the sworn declarations Plaintiffs filed with this Court (ECF 11-1; ECF 11-2). Even if the Subpoenas were limited to the client file, the Kaufmans' files would add nothing crucial, especially because any necessary discovery either has been obtained or could be obtained directly from Plaintiffs. *See Shelton*, 805 F.2d at 1327–28 (finding that the "crucial" factor was not met where "the information sought can be, and in some instances has been, obtained by means other than deposing in-house counsel"). And the requests that extend beyond this action – TCPA referral documents, files from other representations, and documents about non-party individuals – are even further removed from anything relevant, much less crucial, to Boost's case.

In short, Boost fails all three *Shelton* factors as to every one of the requests. The Subpoenas should be quashed in their entirety on this basis alone.[5]

## II. THE SUBPOENAS MUST BE QUASHED UNDER RULE 45

Even apart from *Shelton*, the Subpoenas must be quashed under Rule 45(d)(3)(A) on multiple independent grounds.

First, the Subpoenas demand privileged material protected by the attorney-client privilege and the work-product doctrine. Rule 45(d)(3)(A)(iii) requires the Court to quash a subpoena that "requires disclosure of privileged or other protected matter, if no exception or waiver applies." No exception or waiver applies here. Plaintiffs have not waived the attorney-client privilege, and "[a] party does not waive the attorney-client privilege simply by bringing or defending a lawsuit." *Westchester*, 347 F.R.D. at 237. As to work product, Rule 26(b)(3) protects materials prepared in anticipation of litigation unless the requesting party shows "substantial need" and inability to obtain the substantial equivalent by other means. *Id.* at 235. Boost has not tried to make that showing. And even if it could demonstrate substantial need, much of what the Subpoenas seek – litigation strategy, case assessments, litigation-hold decisions – constitutes opinion work product entitled to near-absolute protection: the Court "must protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney" regardless of any showing of need. Fed. R. Civ. P. 26(b)(3)(B); *see Shelton*, 805 F.2d at 1328. The Subpoenas therefore require disclosure of privileged material and must be quashed under Rule

---

[5] In the deposition context, some courts in this District have considered a fourth factor: whether the requesting party's needs outweigh the dangers of obtaining the discovery from counsel. *See Covington*, 2012 WL 2120776, at *3 (collecting cases). This factor derives from the deposition-specific concerns underlying *Shelton* and has not been applied in the document-subpoena context. *See, e.g.*, *Kolmat*, 2016 WL 11783288, at *1–2 (applying three-factor Shelton test to document subpoena). In any event, for the reasons discussed with respect to each of the three *Shelton* factors, Boost's needs do not outweigh the dangers of compelling production from former counsel here.

45(d)(3)(A)(iii). *See Westchester*, 347 F.R.D. at 234–36 (quashing subpoenas where the requests "are invasive of the attorney-client and work-product privileges").

Second, the Subpoenas must be quashed because they unduly burden the Kaufmans. Non-parties are entitled to heightened protection from the burdens of discovery, and the Court must "balance the interests served by demanding compliance with the subpoena against the interests furthered by quashing it." *Jordan*, 947 F.3d at 1337. Pertinent factors include the "relevance of the information requested" and the "burden [that would be] imposed" by producing it. *Id.* The balance tips decisively toward quashing.

A substantial number of the requests seek information unrelated to this action: communications outside the litigation period, files from separate representations, TCPA referral documents, and materials about individuals who are not parties. This discovery has no nexus to the case before this Court and the Subpoenas should be quashed accordingly. *See Jordan*, 947 F.3d at 1329 ("[A] subpoena issued under Rule 45 should be quashed to the extent it seeks irrelevant information"); *Feingold v. Cardinale*, 2024 WL 5120553, at *5–6 (S.D. Fla. Dec. 16, 2024) (affirming quashing of nonparty subpoenas where defendant "fail[ed] to establish relevance and a need for the evidence and documents he has requested").

The burden imposed is equally fatal. The Kaufmans are non-parties with no stake in this litigation. Yet compliance would force them to search for, collect, and review documents spanning their entire practice, then conduct a wholesale privilege review and prepare a voluminous privilege log. Indeed, when Mr. Kaufman ran a representative set of the Subpoenas' search terms across only his own email account – not accounting for Rachel Kaufman's email account or any non-email data – the searches returned well over 60,000 hits in the aggregate, each of which would need to be reviewed for responsiveness, privilege, and confidentiality. *See* Declaration of Avi R.

Kaufman, dated September 29, 2026, attached as **Exhibit 4**, ¶¶ 3–5, 7. Including non-email data such as documents and other files, and before any deduplication, Mr. Kaufman expects that running these search terms across the full universe of his data would return well over 100,000 hits. *Id.* ¶ 6. Courts routinely refuse to impose that burden on non-parties. *See Westchester*, 347 F.R.D. at 236 (former counsel "should [not] be required to produce responsive documents subject to redaction for privileged information and produce a privilege log for responsive documents withheld from production" because "such a requirement is unduly burdensome"); *Monster Energy*, 2020 WL 2405295, at *13 (rejecting privilege-log remedy as "unreasonably burdensome"). "A nonparty should not have to do the work of tailoring a subpoena to what the requesting party needs; the requesting party should have done that before serving it." *Va. Dep't of Corrections v. Jordan*, 921 F.3d 180, 190 (4th Cir. 2019). Boost made no such effort, and the Court should quash the Subpoenas on that basis as well.

## III. THE COURT SHOULD AWARD THE KAUFMANS THEIR REASONABLE FEES AND COSTS

Boost's approach to the Subpoenas warrants an award of attorneys' fees and costs. Rule 45(d)(1) provides that the party issuing a subpoena "must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena," and that "[t]he court for the district where compliance is required must enforce this duty and impose an appropriate sanction . . . on a party or attorney who fails to comply." Fed. R. Civ. P. 45(d)(1). Courts have awarded non-party former counsel their reasonable fees and costs where, as here, the subpoenaing party failed to take reasonable steps to avoid imposing undue burden. *See High Tech Med. Instrumentation, Inc. v. New Image Indus., Inc.*, 161 F.R.D. 86, 88–89 (N.D. Cal. 1995) (awarding non-party former counsel fees under Rule 45 for responding to an overbroad subpoena, finding it "unreasonable for defendant to insist that [former counsel] review and produce all responsive documents").

The award may include the costs of bringing the motion to quash or, if the Court authorizes the discovery, the costs of compliance. *Id.* at 88–89 (awarding fees incurred in filing the motion and for the cost of complying with narrowed discovery (citing Fed. R. Civ. P. 45, Advisory Committee Notes)). Boost served 103 untailored document requests on non-party former counsel without any effort to comply with its duty under Rule 45(d)(1), forcing the Kaufmans to retain counsel and incur substantial expense to file this motion. The Court should award the Kaufmans their reasonable attorneys' fees and costs in connection with this motion and, if the Court permits any discovery to proceed, the fees and costs the Kaufmans incur in responding to the Subpoenas.

## CONCLUSION

For these reasons, Non-Parties Avi R. Kaufman, Rachel Kaufman, and Kaufman, P.A. request that this Court enter an Order: (1) quashing the Subpoenas in their entirety; (2) awarding the Kaufmans their reasonable attorneys' fees and costs in connection with this motion, under Fed. R. Civ. P. 45(d)(1); and (3) if the Court permits any discovery to proceed, awarding the Kaufmans their reasonable fees and costs incurred in responding to the Subpoenas, together with any other relief the Court deems just and appropriate.

## LOCAL RULE 7.1 CERTIFICATION

In accordance with Southern District of Florida Local Rule 7.1(a)(3), on September 29, 2026, counsel conferred with Lisa Messner, counsel for Boost, regarding the relief sought in this motion. Boost's counsel advised that Boost opposes the relief sought, but is willing to confer further on narrowing the scope of the subpoena.

Dated: September 29, 2026

Respectfully submitted,

/s/ *James N. Robinson*
James N. Robinson (Florida Bar No. 608858)
Zachary B. Dickens (Florida Bar No. 98935)
WHITE & CASE
200 South Biscayne Boulevard, Suite 4900
Miami, Florida 33131
Telephone: (305) 371-2700
Facsimile: (305) 358-5744
jrobinson@whitecase.com
zachary.dickens@whitecase.com

Blair E. Trahan (*pro hac vice pending*)
WHITE & CASE
701 Thirteenth Street N.W.
Washington, D.C. 20005
Telephone: (202) 626-3600
Facsimile: (202) 639-9355

*Counsel for the Kaufmans*