**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No. 1:25-cv-21690-KMW

KYLE BUTLER RASHLEY, *et al.*

Plaintiffs/Counterclaim Defendants,

v.

BOOST HEALTH INSURANCE
AGENCY, LLC,

Defendant/Counterclaim-Plaintiff.

_______________________________________/

**DEFENDANT'S RESPONSE IN OPPOSITION TO THE MOTION TO QUASH SUBPOENAS TO PRODUCE DOCUMENTS OF NON-PARTIES, AVI R. KAUFMAN, RACHEL KAUFMAN, AND KAUFMAN, P.A.**

On September 3, 2026, Boost Health Insurance Agency, LLC ("Boost") served subpoenas (individually "Subpoena" or collectively "Subpoenas") on Avi R. Kaufman, Rachel Kaufman, and Kaufman, P.A. (collectively the "Kaufmans"), each attaching Exhibit A requests. (D.E. 60-1, 60-2, 60-3). On September 29, 2026, the Kaufmans filed a Motion to Quash Subpoenas to Produce Documents. (D.E. 60).[1] Boost respectfully submits its Response in Opposition to the Motion to Quash Subpoenas to Produce Documents by the Kaufmans.

## I. BACKGROUND

The Subpoenas relate to the Kaufmans' prior relationship with the Plaintiffs – Nicholas Dungey and Kyle Butler Rashley – and their case against Boost under the Telephone Consumer Protection Act ("TCPA"). Although work will be required of the Kaufmans in responding to the

---

[1] On August 5, 2026, Boost served similar subpoenas on the Kaufmans' co-counsel in this lawsuit – Andrew Heidarpour, Esq. ("Attorney Heidarpour"), Dana Oliver, Esq. ("Attorney Oliver"), and Heidarpour Law Office PLLC ("HLF") (collectively the "Heidarpour Non-Parties").

Subpoenas, that burden is not undue in this case. At the starting point, a tall task does not exist to collect documents and emails related to a pending case where the Kaufmans were lead counsel until August 13, 2026. Rather than correcting the filings they previously executed and filed with the Court, the Kaufmans immediately sought to withdraw from this class action lawsuit and abandoned their clients, thereby costing Boost to incur significant six-figure defense costs to defend against fraudulent claims.[2] Additionally, the Kaufmans' need to prepare a privilege log may prove entirely unnecessary given that it appears as though their communications with Dungey and Rashley are subject to disclosure under the crime-fraud exception, which nullifies the protections of the attorney-client privilege.

As described in greater detail below, the crime-fraud exception applies to communications between the Plaintiffs and their lawyers (*i.e.*, Avi Kaufman, Rachel Kaufman and their co-counsel – the Heidarpour Non-Parties). The exception applies because the fraudulent conduct commenced immediately upon the Plaintiffs seeking legal services from these attorneys and continued throughout the duration of their representation. The facts demonstrate a concerted course of conduct that underscores precisely why the crime-fraud exception applies here.

- Dungey received four unsolicited text messages from Boost between March 24 and March 27, 2025.
- Dungey contacted Attorney Oliver who, on March 27, 2025, sent an email to Boost about Dungey's claim.
- On March 28, 2025, the day after Attorney Oliver sent the email to Boost about Dungey's claim, an apparent complete stranger to Dungey (*i.e.*, Rashley), received an unsolicited text message from Boost.
- Rashley found the same lawyer (Attorney Oliver) who, on April 3, 2025, sent an email to Boost about Rashley's claim.

---

[2] On August 13, 2026, Avi Kaufman filed a Motion for Leave to Withdraw as Counsel (D.E. 48) asking the Court to allow him to withdraw as counsel from the lawsuit he filed. A hearing on that Motion was held on August 19, 2026. Mr. Kaufman did not appear for the hearing.

- Attorney Oliver then found counsel to file a lawsuit for these two individuals who claim they never met or communicated with each other (*i.e.*, Dungey and Rashley).

- Attorney Oliver found Avi Kaufman who, on April 12, 2025, filed this lawsuit.

- In sum, ***within a period of only twenty days***, two people who were allegedly strangers to one another, received text messages from Boost, randomly found the same lawyer (Attorney Oliver), and then coincidentally ended up with the same lawyer (Avi Kaufman) who filed a class action lawsuit on their behalf.
  Taken together – these facts cannot reasonably be deemed coincidence.

Even after Attorney Kaufman filed the lawsuit, the fraud was perpetuated as both Plaintiffs submitted demonstrably false testimony to this Court in sworn Declarations that are virtually identical to one another, drafted by their former counsel of record, and allegedly signed by the Plaintiffs. Boost reasonably believes that the Kaufmans drafted these Declarations and knew or had good reason to know that the Declarations were untruthful. One reason for this belief is that telephone records produced by Dungey in response to Boost's discovery requests were redacted. These redactions were made because the phone records Dungey provided to the Kaufmans showed that there were, in fact, multiple communications between him and Rashley, as corroborated by the phone records received directly from Verizon. (D.E. 63). Dungey testified at his deposition that he did not make the redactions, which leave the conclusion to be that the Kaufmans made the redactions and they did so to intentionally conceal information that would otherwise prove damaging to their case.

In the event that discovery reveals this information, Fed. R. Civ. P. 11 sanctions may be implicated. Specifically, Rule 11 provides, in pertinent part:

> (b) **Representations to the Court.** By presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:

> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery;

Here, it appears, at a minimum, that the Kaufmans presented and signed documents to the Court while concealing facts or, at least, without verifying them. The documents that rely on Dungey and Rashley's false Declarations include:

- Plaintiffs' Motion to Dismiss Defendant's Counterclaims and Incorporated Memorandum of Law (D.E. 11);
- Plaintiffs' Motion to Dismiss Defendant's Counterclaims (D.E. 16); and
- Plaintiffs' Reply in Support of Their Motion to Dismiss (D.E. 24).

Again, no doubt exists that Dungey and Rashley committed perjury in their Declarations. The critical issue is whether, when taking these facts together, is whether Plaintiffs lawyers assisted in the lies and the perpetuation of the manufactured lawsuit. When Dungey and Rashley sought the assistance of the Kaufmans they were engaging in fraudulent conduct. Moreover, the Kaufmans assisted by, in part, preparing untruthful Declarations and making redactions to damaging phone records. [3]

Boost respectfully requests an opportunity to obtain discovery related to the issues stated herein and documents requested in the Subpoenas. Plaintiffs' counsel actively maintained this manufactured lawsuit despite actual knowledge of its fraudulent nature. Because counsel's services were used in an ongoing fraud, the crime-fraud exception is triggered. Accordingly, both the attorney-client privilege and work-product doctrine are extinguished.

The information sought in the Subpoenas is necessary to determine, without limitation: (i) the extent the Kaufmans conspired with their long-time clients and co-counsel to manufacture the

---

[3] Indeed, the phone records of Dungey and Rashley also do not match some of the factual allegations in the Complaints filed by the Kaufmans.

case against Boost and were part of the fraud; (ii) whether the Kaufmans came up with the content in the Plaintiffs' Declarations; (iii) whether the Kaufmans reviewed the Plaintiffs' phone records before filing the lawsuit; and (iv) whether the Kaufmans told Rashley not to appear for either of his two scheduled depositions. The attorney-client privilege belongs to the client and only the client can waive it. At Rashley's deposition, Boost intended on asking him if he waived the attorney-client privilege – but Rashley did not appear for his deposition after representing to Boost's counsel that he would.[4]

## II. <u>LAW AND ARGUMENT</u>

Boost seeks to obtain information that may include privileged information from non-party attorneys who previously represented Plaintiffs in this case. Requests of this nature are governed by two separate standards: 1) the crime-fraud exception, and 2) the Rule 45(d)(3)(A) requirement that a court quash or modify a subpoena in certain circumstances, including where a subpoena subjects a person to an undue burden. The Kaufmans argue that the Eighth Circuit's decision in the *Shelton* case controls. It does not. The *Shelton* framework has not been adopted by this Circuit, and even if it had been, that analysis has no application where, as here, a party seeks information that falls within the crime-fraud exception to the attorney-client privilege.

The crime-fraud exception allows a party to seek privileged information if the party has made a *prima facie* showing that an attorney's client committed fraud, as well as a showing that this was done with the assistance of the attorney. Though Rule 45(d)(3)(A) requires that a court quash a subpoena that is found to be unduly burdensome, ***an undue burden does not exist if said***

[4] On October 5, 2026, Defendant filed a Motion for Sanctions and to Show Cause as Plaintiff, Kyle Butler Rashley failed to appear for his deposition, and is pending ruling by the Court.

***burden is outweighed by the interests of the party in obtaining this information***. Boost's Subpoenas are appropriate under both standards.

**a. <u>The Kaufmans' reliance on Shelton is misplaced.</u>**

The Kaufmans contend that the Court should apply the Eighth Circuit's analysis in *Shelton*, which considered whether a party seeking non-privileged information could depose an attorney involved in the case. *Shelton v. American Motors Corp.,* 805 F.2d 1323 (8th Cir. 1986). *Shelton* is not the governing law in the Eleventh Circuit. More importantly, its analysis was never intended to reach a situation where a party may lawfully seek privileged information.

Indeed, the Eighth Circuit later clarified that the *Shelton* test was created to combat a growing trend of attorneys deposing opposing counsel about ostensibly non-privileged information as a means of eliciting privileged information such as the attorney's litigation strategy. *Pamida, Inc. v. E.S. Originals, Inc.*, 281 F.3d 726, 730 (8th Cir. 2002). It was formulated to prevent abuse of the discovery process to surreptitiously gather privileged information, not to be the analysis by which courts determine whether privileged information is discoverable. *Id.*

The Kaufmans' representation that *Shelton* has been adopted in the Eleventh Circuit is incorrect. They cite a 2012 case from this district which does not adopt the *Shelton* test but, rather, acknowledges its existence and the Eleventh Circuit's silence regarding it, and instead adopting a similar but distinct test applied in previous opinions in the Southern District of Florida. *Covington v. Walgreen Co.,* No. 1:11-CV-22900, 2012 WL 2120776, at *3 (S.D. Fla. June 11, 2012). More recent cases in this district cite to *Covington* but do not acknowledge the *Shelton* test nor any of the cases extending it to other situations. *See, e.g., Doe v. Sch. Bd. of Miami-Dade Cnty.*, No. 18-25430-CIV, 2020 WL 1305025, at *3 (S.D. Fla. Mar. 19, 2020). This may seem like a narrow

distinction at first. However, the Kaufmans' misrepresentation that *Covington* adopted this framework is wrongheaded here.

Ultimately, *Shelton* and its progeny do not apply here because it is fundamentally concerned with an attempt to discover privileged information without the permission of the court. Here, Boost seeks privileged information through Subpoenas because the Kaufmans hold information necessary to resolve the crime and fraud issues presented in this case.

**b. Boost may discover privileged information under the crime-fraud exception.**

Boost's showing that Plaintiffs engaged in fraudulent activity with the assistance of the Kaufmans allows for the discovery sought by the Subpoenas. While an attorney's work product and communications with their client are not generally discoverable, an exception exists where the attorney's client may have sought assistance from the attorney to commit fraud. *Drummond Co., Inc. v. Conrad & Scherer, LLP*, 885 F.3d 1324, 1335 (11th Cir. 2018). This exception applies when 1) "there is a prima facie showing that the client was engaged in criminal or fraudulent conduct when he sought the advice of counsel, or that he committed a crime or fraud subsequent to receiving the benefit of counsel's advice" and 2) there is a "showing that the attorney's assistance was obtained in furtherance of the criminal **or** fraudulent activity or was closely related to it." *Id* (emphasis added). Indeed, *Drummond* confirms that the Eleventh Circuit applies the crime-fraud exception in civil discovery, including where the subpoenaed person/entity is an attorney and/or a law firm. *Id.*

The first prong's *prima facie* finding is considered a "low hurdle" in the Southern District of Florida and is "met by a showing of evidence that, if believed by a trier of fact, would establish the elements of some violation that was ongoing or about to be committed." *Id.* (citations and footnote omitted). "This is a low hurdle." *United States v. Stein*, No. 21-20321-CR, 2023 WL

2585033, at *3 (S.D. Fla. Mar. 21, 2023) (citations and quotations omitted). This prong has been compared to "probable cause" and while it requires more than mere allegations of criminality, the party seeking to apply the exception "is not required to prove the existence of a crime or fraud beyond a reasonable doubt." Sworn statements and documentary evidence can be used to make this showing. See *Id*. at *5. Moreover, the law merely requires a preliminary showing of a factual basis and good faith belief that discovery materials *could* reveal that the crime-fraud exception applies.[5]

Here, Boost presents a *prima facie* showing that Dungey and Rashley engaged in fraudulent activity and that the Kaufmans assisted them. As is described in more detail below, the totality of: (i) Dungey's and Rashley's respective prior (nearly identical) TCPA cases, (ii) the numerous calls between them in the weeks and months leading up to the alleged unsolicited text messages from Boost, (iii) representation of each of them in multiple prior cases by Attorney Heidapour, Attorney Oliver and Attorney Kaufman, and (iv) the calls between each of them and the HLF leading up to the alleged unsolicited text messages – certainly sets forth a *prima facie* showing that they were all involved together in the fraud. The HLF knowingly assisted Dungey and Rashley in the fraud and sent them to Attorney Kaufman who carried out the fraud by filing the lawsuit.

As previously explained to the Court, the pattern goes as follows: (i) a company (soon to be the defendant) receives a letter/email from Attorney Heidarpour and/or Attorney Oliver advising they have a client who has been contacted without consent and requesting evidence of consent (the "form letter or email"), (ii) Attorney Heidarpour and/or Attorney Oliver thereafter rebuke any

[5] *United States v. Zolin,* 491 U.S. 554, 572 (1989). See also *In re Coll. Landings Ltd. P'ship,* 248 B.R. 619, 623 (Bankr. M.D. Fla. 1998) (holding that a *prima facie* showing does not require proof of the crime or fraud itself).

investigation demonstrating consent, and (iii) the imminent forwarding of the matter to Attorney Kaufman who files a TCPA class action lawsuit.

Indeed, a simple PACER search of the TCPA cases the Kaufmans have filed in the Florida federal district courts in just the last three years is illustrative. This displays the high-volume, repeat-plaintiff TCPA filing pattern and identifies circumstances warranting further examination of whether counsel fraudulently coordinated serial filings through a recurring group of representative plaintiffs. Specifically, the search shows that the Kaufmans filed 255 TCPA cases in Florida federal district courts between January 5, 2023, and August 7, 2026. The annual breakdown is:

- 2023 - 48 cases
- 2024 - 102 cases
- 2025 - 76 cases
- 2026 (through 8/7/26) - 29 cases

The data reflects a substantial and sustained volume, including 178 cases during 2024 and 2025 alone.

Interestingly, 255 cases involve approximately 158 distinct named plaintiffs. Forty-five plaintiffs appear in more than one case. Those repeat plaintiffs account for 142 of the 255 cases, or approximately 55.7% of the cases reviewed. Twenty-three plaintiffs appear in at least three cases, collectively accounting for 98 cases. The most frequently recurring named plaintiffs are:

| **Plaintiff** | **Number of Cases** |
|---|---|
| | |
| Wilson[6] | 11 |
| ***Rashley*** | ***8*** |
| Mithcell | 7 |

[6] Mr. Wilson's pattern was more fully elucidated to the Court in Boost's response to the Heidarpour Motion for Protective Order. (See D.E. 63 at pages 9-10).

| | |
|---|---|
| Kunzman | 6 |
| Ashroth | 5 |
| McConigle | 5 |
| Duverger | 4 |
| McClain | 4 |
| Taylor | 4 |
| Tom | 4 |
| Weaver | 4 |

The information obtained from PACER also shows numerous days when multiple cases were filed. The strongest example is October 16, 2024, when 11 listed cases were filed. Other notable same-day clusters include:

- August 29, 2024 - 5 cases
- December 30, 2024 - 5 cases
- May 22, 2024 - 4 cases

Here, the repeat plaintiffs, substantially similar pleadings, common counsel, common intake methods and synchronized pre-suit activity, fully support an inference of a fraudulent, coordinated filing operation. This information, when taken together with the specific details and interactions between the Heidarpour Non-Parties, Kaufman Non-Parties and Plaintiffs, sets forth a *prima facie* case whereby Boost meets the crime-fraud exception burden.

c. **The Subpoenas are not unduly burdensome under Rule 45; if any burden is found, tailoring the Requests is the proper remedy.**

Boost's requests to the Kaufmans are highly relevant to the resolution of this matter, whether fraud occurred, and to what extent. Rule 45 requires the issuing party to take reasonable steps to avoid imposing undue burden or expense on non-parties, and authorizes courts to quash or modify subpoenas that require disclosure of privileged matter or subject a person to undue burden. Fed. R. Civ. P. 45(d)(3)(A)(iv). In determining whether a request for information in discovery imposes an undue burden, the court must "balance the interests served by demanding

compliance with the subpoena against the interests furthered by quashing it." *Jordan v. Comm'r, Mississippi Dep't of Corr.*, 947 F.3d 1322, 1337 (11th Cir. 2020). Several factors are considered in this analysis, including the relevance of the information requested and the burden imposed on the requestee. *See Id.* If the request is made to a non-party, the court may consider the expense and inconvenience imposed on them. *See Id.*

The Subpoenas seek documents related to the perjury and fraud committed in this case by the Plaintiffs and the extent to which their lawyers engaged in acts to further this demonstrable perjury and fraud. Each Subpoena attaches Rule 45's protections and makes clear that appearance is not required for document production. Proportionality favors allowing discovery where, as here, the requests focus on two identified clients, a specific website, and enumerated communications with named counsel and third parties, rather than an unlimited universe.

Further, a motion to quash requires a specific evidentiary showing of undue burden tied to the subpoena's particular requests, not generalized assertions. *In re Application of Mesa Power Grp., LLC*, 878 F. Supp. 2d 1296, 1306 (S.D. Fla. 2012). The motion characterizes the requests as "breathtakingly overbroad" and asserts that compliance would require searching the entire practice, conducting a massive privilege review, and preparing a voluminous log, but it does not provide request-by-request burden metrics or custodial/device counts. The sole burden evidence is a declaration reporting aggregate email "hits" from several broad terms (*e.g.*, "TCPA," "do not call," party names), totaling "well over 60,000" for one mailbox, and a speculative estimate of "well over 100,000" hits if extended to non-email and another custodian, without deduplication or application of limiting parameters. Such aggregate "hit count" extrapolations—untethered to tailored search terms, date limits, or the discrete request topics—do not establish undue burden. They reflect overinclusive terms ("TCPA," "do not call") that can be narrowed and deduplicated.

Further, the Kaufmans contend the information is available from parties or other sources. But Rule 26 allows discovery from any source within proportional bounds. Fed. R. Civ. P. 26(b)(1). Availability elsewhere should go to sequencing and tailoring—not quashing—particularly where a subpoena seeks counsel's communications with Plaintiffs. The Kaufmans argue Boost "has not even tried" to obtain categories from Plaintiffs and that many requests reach privileged matter; they seek wholesale quashing rather than proposing concrete narrowing. Here, however, just like the Kaufmans, the Plaintiffs have abandoned the lawsuit and disappeared. There is no way by which Boost can obtain anything from the Plaintiffs.

Rule 45 directs courts to modify subpoenas to alleviate burden, protect privilege, and ensure proportionality. Narrowing custodians, date ranges, search terms, and categories, phased discovery, deduplication, and categorical privilege logging are standard tools to reduce cost while preserving access to relevant information. *See UnitedHealthcare of Fla., Inc. v. Am. Renal Assocs. LLC,* No. 16-CV-81180, 2017 WL 4785457 (S.D. Fla. Oct. 20, 2017). Here, the requests are already defined by named parties, identified attorneys (*e.g.*, Paronich, Heidarpour, Oliver, Duffie), specific URLs, and particular phone numbers, which can be efficiently searched using objective fields and targeted terms, with appropriate date limitations. The Subpoenas do not require personal appearance, specify a single production location in Miami, and invoke Rule 45's protections, enabling modification without a wholesale order quashing them.

**d. <u>An award of attorney's fees is not warranted here.</u>**

A request for attorney's fees for quashing a subpoena is appropriately denied where the subpoena does not impose an undue burden and the issuing party did not act in bad faith. Courts in the Eleventh Circuit have held that absent undue burden imposed by an oppressive subpoena, a facially defective subpoena, or bad faith on the part of the requesting party, Rule 45(d)(1) sanctions

are inappropriate. Where the court finds that the proponent of the subpoena did not impose undue burden or expense on the recipient, imposition of sanctions upon the proponent is not warranted. *Bailey Industries, Inc. v. CLJP, Inc.*, 270 F.R.D. 662 (N.D. Fla. 2010). Moreover, where a motion to quash is granted only in part and the movant prevails on only some of the arguments raised, an award of attorney's fees is not warranted. *U.S. Equal Employment Opportunity Commission v. Stratton*, Case No. 2:08-cv-00106, 2008 WL 11334159 (N.D. Ga. Dec. 8, 2008).

Here, Boost's Subpoenas properly seek information from the Kaufmans under the crime-fraud exception, as noted above. The Kaufmans' request for attorney's fees should therefore be denied.

## III. CONCLUSION

The Motion seeks the extraordinary remedy of quashing the Subpoenas in their entirety, yet the Kaufmans have not made a request-specific evidentiary showing sufficient to justify that result. Instead, their burden argument rests principally on aggregate "hit" counts generated by broad search terms, without deduplication, targeted parameters, or meaningful analysis of the individual requests. At the same time, Boost has identified a concrete factual basis for examining whether Plaintiffs' sworn submissions and the filing of this action were connected to fraudulent conduct undertaken with the assistance of counsel. The discovery sought therefore should not be foreclosed based on generalized assertions of burden or an inapplicable legal standard.

Boost respectfully requests that the Court deny the Motion to Quash and require compliance with the Subpoenas. If the Court concludes that any discrete request requires further limitation, the appropriate remedy is modification or phased production, not quashing.

Boost further requests such other relief as the Court deems just and proper.

Respectfully submitted,

By: /s/Nelson C. Bellido
NELSON BELLIDO
Florida Bar No. 974048
ROIG LAWYERS
201 S. Biscayne Blvd, 28th Floor
Miami, FL 33131
Telephone: (305) 405-0997
nbellido@roiglawyers.com

- And -

By: /s/ Lisa A. Messner
Lisa A. Messner
(*Admitted Pro Hac Vice*)
Mac Murray & Shuster, LLP
6525 West Campus Oval, Suite 210
New Albany, Ohio 43054
(614) 939-9955, (614) 939-9954
lmessner@mslawgroup.com

***ATTORNEYS FOR BOOST HEALTH INSURANCE AGENCY, LLC***

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on October 13, 2026, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronic Notices of Electronic Filing.

Kyle Butler Rashley
14815 Boxwood Drive, West Palm Beach, Florida 33418
Kbrash91@gmail.com

Nicholas Dungey
245 NE 14thStreet, Unit 3714, Miami Florida 33132
170 NE 2ndStreet, Box 294061, Boca Raton, Florida 33429-5092
ndungey88@gmail.com

/s/Nelson C. Bellido
NELSON C. BELLIDO