**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

KYLE BUTLER RASHLEY, *et al.*

Plaintiffs/Counter-Defendants,

v.

BOOST HEALTH INSURANCE AGENCY, LLC,

Defendant/Counter-Plaintiff.

CASE NO. 1:25-CV-21690-KMW-EAL

**NON-PARTIES' REPLY IN SUPPORT OF**
**MOTION TO QUASH SUBPOENAS TO PRODUCE DOCUMENTS**

Non-Parties Avi R. Kaufman, Rachel Kaufman, and Kaufman, P.A. (collectively, the "Kaufmans") reply in support of their Motion to Quash Subpoenas to Produce Documents (ECF 60) ("Motion") and in opposition to Defendant/Counter-Plaintiff Boost Health Insurance Agency, LLC's ("Boost") Response in Opposition (ECF 70) ("Opposition"). This reply is accompanied by the Second Declaration of Avi R. Kaufman ("Second Kaufman Decl.").

## ARGUMENT

### I. THE *SHELTON* FRAMEWORK APPLIES AND BOOST CANNOT SATISFY IT

Boost argues that *Shelton* does not apply because this Circuit has not adopted it, and accuses the Kaufmans of "misrepresent[ting]" *Covington* as having done so. ECF 70 at 5–7. That accusation does not hold up. *Covington* holds that "Courts in this District . . . have generally held that to allow the deposition of a party's attorney, the movant must show that: (1) the deposition is the only practical means of obtaining the information; (2) the information sought will not invade the realm of the attorney's work product or interfere with the attorney-client privilege; [and] (3) the information sought is relevant and crucial to the preparation of the case" – the first three *Shelton* factors. *Covington v. Walgreen Co.*, 2012 WL 2120776, at *3 (S.D. Fla. June 11, 2012); *see Shelton v. Am. Motors Corp.*, 805 F.2d 1323, 1327 (8th Cir. 1986). It is unclear what Boost believes was misrepresented.[1] Boost does not grapple with *Kolmat*, another case in this District

[1] The Motion acknowledges that *Covington* applies a fourth factor: whether the movant's needs outweigh the dangers of *deposing* a party's attorney. As explained, this factor has not been applied

that applied the *Shelton* test to a document subpoena served on counsel. *Kolmat Do Brasil, Ltda. v. Evergreen United Investments, LLC*, 2016 WL 11783288, at *1–2 & n.1 (S.D. Fla. Aug. 30, 2016). Nor does Boost's suggestion that "[m]ore recent cases" cite *Covington* but ignore *Shelton*, citing only *Doe v. School Board of Miami-Dade Cnty.*, 2020 WL 1305025, at *3 (S.D. Fla. Mar. 19, 2020), hold up. ECF 70 at 6. Last year, this Court acknowledged that "district courts in the Northern, Middle, and Southern Districts of Florida and other Circuits have adopted the *Shelton* test." *James v. Conley*, 2025 WL 2456872, at *5 (S.D. Fla. Aug. 26, 2025) (collecting cases).

Boost likewise misunderstands *Pamida, Inc. v. E.S. Originals, Inc.*, 281 F.3d 726 (8th Cir. 2002). *See* ECF 70 at 6. *Pamida* held that *Shelton* barred discovery from the subpoenaed attorneys regarding the case they were presently litigating and did not apply to discovery concerning a concluded matter that those attorneys had litigated. 281 F.3d at 729–31. The line it draws is between an attorney's current representation (where *Shelton* applies fully) and knowledge from a finished matter (where it does not) – not a line between privileged and discoverable information. *Id.* That helps the Kaufmans: the Subpoenas seek discovery about the Kaufmans' representation in this still-pending case – the paradigm scenario where *Pamida* says *Shelton* applies.

### A. BOOST MUST SATISFY *SHELTON*, EVEN IF THE CRIME-FRAUD EXCEPTION APPLIES

Boost contends that even if *Shelton* applies in this Circuit, it does not apply here because the information sought falls within the crime-fraud exception. ECF 70 at 5. Wrong again.

*Shelton*'s prongs are independent; satisfying one does not excuse satisfying the others. *See James*, 2025 WL 2456872, at *5–7 (denying discovery though information was "not privileged and crucial" because other witnesses might have it). Therefore, even if the crime-fraud exception satisfies the privilege prong of the *Shelton* framework (and as discussed below, it does not), the requesting party must still show that the other prongs are satisfied for the Court to order discovery. *See Chesher v. Allen*, 122 F. App'x 184, 188 (6th Cir. 2005) ("The finding of the crime-fraud exception only satisfied the second prong of the *Shelton* test. The first and third prongs must also be proven.") (citation omitted). Boost does not attempt to satisfy the *Shelton* factors.

*First*, Boost does not establish that the Kaufmans are the only available source of the requested information. Boost contends that Plaintiffs "abandoned the lawsuit and disappeared," leaving "no way" to obtain discovery from them. ECF 70 at 12. But Boost ignores whether it has

---

in the document subpoena context. ECF 60 at 11 n.5 (citing *Kolmat*, 2016 WL 11783288, at *1–2).

tried to obtain this discovery from Plaintiffs. It has not: Boost has moved for sanctions over Rashley's missed deposition (ECF 65), but it has not moved to compel Rashley's or Dungey's compliance with any discovery request bearing on the discovery it now seeks from the Kaufmans.[2] Not having sought this information from the parties through the tools the Federal Rules make available, Boost cannot credibly claim there is "no way" to obtain it except from the Kaufmans. *See James*, 2025 WL 2456872, at *5–7 (denying discovery from counsel where other witnesses might possess the information sought).

*Second*, Boost cannot show the discovery it seeks is relevant. Relevance under Rule 45 is measured against the claims and defenses asserted. *See Jordan v. Comm'r, Miss. Dep't of Corr.*, 947 F.3d 1322, 1329 (11th Cir. 2020) (discovery is relevant only if it relates to a party's claim or defense, and information that would not help prove an element of the claim asserted has no relevance to it). Boost's relevance argument is that the Subpoenas "seek documents related to the perjury and fraud committed in this case by the Plaintiffs and the extent to which their lawyers engaged in acts to further this demonstrable perjury and fraud." ECF 70 at 11. But the operative claims turn on a narrow set of facts: whether Dungey and Rashley checked the consent box on Boost's website on specific dates in March 2025, using specific telephone numbers, and whether that consent was truthful. ECF 14 ¶¶ 9, 24–27, 72–74.

Measured against that background, most of the Subpoenas' requests have no connection to the case at all. Requests 1–9 demand all documents and communications concerning the Lawsuit, Dungey, and Rashley – including communications predating the website visits at issue and communications occurring more than a year after this suit was filed – without any tie to consent. ECF 60-1 at 4. Requests 19–22 demand every communication the Kaufmans ever exchanged with four other attorneys concerning eight individuals, most of whom have nothing to do with Dungey, Rashley, or Boost. *Id.* at 5. Boost's fallback – that the requests concern "two identified clients, a specific website, and enumerated communications with named counsel and third parties," ECF 70 at 11 – does not answer this problem. Naming a client or a website does not make every document mentioning them relevant. Request 1 alone – which seeks "all documents that refer or relate to the

[2] Boost does not respond to the Motion's argument that the Subpoenas are void for failure to serve Plaintiffs with notice and a copy of the Subpoenas under Rule 45(a)(4). ECF 60 at 7 n.2. Boost has thus waived the argument, and the Court should quash the Subpoenas on this ground alone. *See Lakeshore Community Assoc. Inc. v. Everest National Ins. Co.*, 2025 WL 1411094, at *1 (S.D. Fla. May 15, 2025) (treating failure to respond to an argument as a concession).

Lawsuit" – would sweep in the Kaufmans' billing records, case management notes, and strategy memoranda, none of which bears on the claims and defenses in this case. ECF 60-1 at 4. The requests tied to an element of the claims – consent and opt-in forms (Requests 10–11), the website and the specific phone numbers and individual (Thomas Murphy) at issue (Requests 13–18) – are the exception, not the rule, and yet still sweep in irrelevant material. *Id.* at 4–5. On the whole, Boost's requests are "untethered to the claims or defenses actually at issue" and thus fail to establish this prong of the *Shelton* framework. *AFSCME Council 79 v. Scott*, 277 F.R.D. 474, 478–79 (S.D. Fla. 2011).

*Third*, Boost does not establish that the requested information is crucial to preparing its case. Boost says it needs the discovery to determine "the extent *the Kaufmans* conspired with their . . . clients . . . to manufacture the case," "whether *the Kaufmans* came up with the content in the Plaintiffs' Declarations," "whether *the Kaufmans* reviewed the Plaintiffs' phone records before filing the lawsuit," and whether "*the Kaufmans* told Rashley not to appear" for his deposition. ECF 70 at 4–5 (emphasis added). Every one of those is a question about *the Kaufmans'* own conduct as counsel. But Boost has not sued the Kaufmans. Boost alleges two fraudulent-misrepresentation counterclaims against Dungey and Rashley, each of which turns on whether *Dungey and Rashley* misrepresented consent – not on what *the Kaufmans* did as their lawyers. ECF 14 ¶¶ 23–70, 71–118. Whether the Kaufmans did anything is not relevant to any claim or defense pending before this Court, and thus cannot be "crucial" to Boost's case.

## B. BOOST HAS NOT ESTABLISHED THE CRIME-FRAUD EXCEPTION APPLIES

Boost's crime-fraud argument conflates two distinct theories to reach further than either supports. The first – that the lawsuit was "manufactured" from the moment Dungey and Rashley sought legal services – rests on circumstantial coordination: the Plaintiffs' contacts with each other, their shared intake path through Attorney Oliver and the Kaufmans, the volume and timing of the Kaufmans' TCPA filings, and clustering in filing dates. ECF 70 at 2–4, 8–10. The second – that Dungey's and Rashley's declarations were false and that redactions concealed contradictory phone records – rests on more specific, if still contested, evidence. *Id.* at 3–4. The crime-fraud exception has two prongs: (1) a prima facie showing of criminal or fraudulent activity and (2) a showing that counsel's assistance furthered or was closely related to that activity. *Drummond Co. v. Conrad & Scherer, LLP*, 885 F.3d 1324, 1335 (11th Cir. 2018). Each of Boost's theories fail to satisfy this test.

**The manufactured-lawsuit theory.** Boost's primary theory lacks evidence of fraud. Boost points to the Plaintiffs' pre-suit communications, their path to common counsel, the volume of TCPA cases the Kaufmans have filed, and the speed of filing, arguing the timing "cannot reasonably be deemed coincidence." ECF 70 at 2–3. None of that supplies what the exception requires. Boost must identify evidence that, if believed, would establish an ongoing or contemplated crime or fraud. *Drummond*, 885 F.3d at 1335. That Plaintiffs knew each other and communicated before this suit, that they used lawyers they already knew, and that those lawyers have filed many similar cases (*see* ECF 70 at 2–3, 8–10) does not show that Plaintiffs consented to Boost's texts, fabricated receiving them, knowingly alleged false facts, or retained counsel to pursue claims they knew were meritless. *See Hominski v. Gusar, LLC*, 2026 WL 1261972, at *9–10 (S.D. Fla. May 8, 2026) (finding communications with counsel and witness preparation insufficient to support an inference of false testimony). The 255 TCPA cases Boost catalogs (ECF 70 at 9) prove nothing: TCPA litigation is the Kaufmans' practice, and bringing many such cases is not evidence of wrongdoing in this one. Nor does Rashley's appearance as a plaintiff in multiple TCPA cases show that his claims here were manufactured. At most it shows that Rashley, like many TCPA plaintiffs, is litigious and willing to sue when he believes the statute was violated. *Id.* at 9–10. Rashley's own litigation history says nothing about Dungey, about whom Boost is silent. If Boost's real complaint is that the TCPA's private right of action enables repeat plaintiffs and their counsel to bring many cases, that is an objection to the statute, not evidence of fraud by the Kaufmans.

The Opposition does not address the second prong. If the intake-sequence facts and filing-pattern statistics Boost relies on for its "prima facie case" (ECF 70 at 10) could be read as reaching the second prong too, that fails as well. The second prong is satisfied only where the movant makes "a showing that the attorney's assistance was obtained in furtherance of the criminal or fraudulent activity or was closely related to it." *In re Grand Jury Subpoena*, 2 F.4th 1339, 49 (11th Cir. 2021). Courts applying that standard require the specific communications or documents at issue to be tied to the fraud itself, not merely to the broader representation. Boost's cases confirm the point. In *United States v. Stein*, for example, the court permitted crime-fraud discovery only into communications related to drafting the specific sham contract charged in the indictment – not into the attorney's file. 2023 WL 2585033, at *2, 6–7 (S.D. Fla. Mar. 21, 2023). And in *Drummond*, the Eleventh Circuit upheld the district court's approach of identifying specific

wrongs (concealed payments, false representations to the court, suborned perjury), matching defined categories to those wrongs, and ordering *in camera* review – rather than extinguishing privilege across the whole representation because the case was allegedly tainted. 885 F.3d at 1328–33. Boost does not attempt to connect the requested privileged material to the alleged fraud.

**The declaration-and-redaction theory.** Boost's second crime-fraud theory bundles two distinct – though related – sub-theories of fraud, each of which must independently satisfy both prongs of the exception. The first is that Dungey and Rashley submitted sworn declarations denying a relationship or prior communications, and that Verizon's carrier records contradict those denials. ECF 70 at 3–4. The second is that the version of Dungey's phone records produced in discovery concealed those same communications through redactions. *Id.* Neither survives.

As to the declarations, it fails on the second prong. Crediting Boost's allegation concerning the declarations, that showing reaches, at most, communications concerning the preparation and submission of those declarations, not the Subpoenas' sweep across the entire representation and other documents and communications outside the representation. *See Hominski*, 2026 WL 1261972, at *7–9 (rejecting reliance on counsel's general conduct and representation where the movant failed to connect specific communications to the misconduct alleged). Boost has not explained, and cannot explain, how communications unrelated to the declarations – the overwhelming majority of what the Subpoenas demand – are in furtherance of, or closely related to, that alleged misconduct. Without that showing, discovery into anything beyond the declarations' preparation and submission is unsupported.

The redactions are a different matter. Boost reasons that because Dungey denied making the redactions, "the conclusion" must be "that the Kaufmans made the redactions and they did so to intentionally conceal information that would otherwise prove damaging to their case." ECF 70 at 3. That does not hold up. Mr. Kaufman did not make the redactions, nor did anyone at his firm. Second Kaufman Decl. ¶ 6. Nor were the redactions targeted at anything: every single telephone call on the production – not merely the calls between the Plaintiffs – is redacted. *Id.* ¶ 9; *see id.* Ex. A.[3] That is because it is Mr. Kaufman's standard practice in TCPA text-message cases – like this one – to redact all calls, because calls are generally not relevant to text-message-only cases.

[3] The redactions applied in black in Exhibit A were applied by the undersigned to protect Mr. Dungey's address and account information. The redactions applied in grey are those that existed at the time the records were produced in this case.

*Id.* ¶ 8. A standard-practice redaction applied to every call on the production is not evidence of an intent to conceal any particular, damaging communication – and Boost identifies no evidence, as opposed to pure speculation, to the contrary. *See Drummond*, 885 F.3d at 1335 (requiring evidence that, if believed, would establish an ongoing or contemplated crime or fraud).

Boost's own conduct confirms there was nothing suspicious about the redactions: Boost's counsel never sought to confer with Plaintiffs' former counsel within the 28-day window Local Rule 26.1 prescribes for disputes over the sufficiency of a production. *Id.* ¶ 10. Boost's counsel attempted to confer months later on several other discovery issues, but their request did not mention the production of redacted telephone records. *Id.* ¶ 11. And Boost did not subsequently move to compel the unredacted records. Instead, having raised no objection at the time, Boost now accuses non-party counsel of suborning the concealment of evidence, with nothing to back that charge beyond its own say-so. An accusation of that gravity demands more than speculation. Because Boost has no prima facie evidence that anyone intentionally concealed anything through the redactions, this sub-theory fails the exception's first prong, and the Court need not reach the second. But even if it did, the redactions sub-theory would fail the second prong for the same reason the declarations sub-theory does: any showing would reach, at most, communications about making the redactions, not the Subpoenas' sweep across the entire representation and unrelated matters. *See Hominski*, 2026 WL 1261972, at *7–9.[4]

## II. THE SUBPOENAS MUST BE QUASHED UNDER RULE 45

Boost contends the Subpoenas should not be quashed under Rule 45 because the crime-fraud exception waives privilege, and because the discovery sought is both relevant and proportional to the needs of this case. ECF 70 at 10–12. Boost is wrong on both accounts.

First, Boost's requests seek privileged communications and attorney work product. Although Boost contends this privilege is overridden by the crime-fraud exception, as shown above, Boost has failed to establish that exception. *Supra* Section I.B. As a result, the Subpoenas should be quashed under Rule 45(d)(3)(A)(iii). ECF 60 at 11; *see Westchester Surplus Lines Ins. Co. v. Portofino Masters Homeowners Ass'n, Inc.*, 347 F.R.D. 228, 234–36 (N.D. Fla. 2024)

[4] If the Court concludes Boost has made that narrower showing as to the declarations and the redactions, the Court should review those materials *in camera* before any disclosure is authorized. *See Cox v. Adm'r U.S. Steel & Carnegie*, 17 F.3d 1386, 1417 (11th Cir. 1994) ("[T]he decision whether to engage in *in camera* review rests in the sound discretion of the district court.") (quotations omitted).

(quashing subpoena to counsel where the requesting party failed to establish an exception to the attorney-client and work-product privileges and the requests were overbroad as written).

Second, Boost argues that the Subpoenas do not impose an undue burden because the requests "are highly relevant" – they "seek documents related to the perjury and fraud committed in this case by the Plaintiffs and the extent to which their lawyers engaged in acts to further this demonstrable perjury and fraud." ECF 70 at 10–11. As explained, that is not an accurate description of what the Subpoenas say, and the requests are untethered to the claims and defenses at issue here. *Supra* Section I.A. That lack of relevance alone warrants quashing. *See Feingold v. Cardinale*, 2024 WL 5120553, at *5–6 (S.D. Fla. Dec. 16, 2024) (affirming magistrate's order quashing nonparty subpoenas where the issuing party failed to establish relevance and a need for the documents sought, and the requests were disproportional to the needs of the case); *Meide v. Pulse Evolution Corp.*, 2019 WL 1518959, at *6–7 (M.D. Fla. Apr. 8, 2019) (quashing subpoenas seeking information that did not affect the issues pled and for which the issuing party failed to establish a legitimate need).

Third, Boost complains that the Kaufmans' evidence of the burden imposed by the Subpoenas is too "generalized." ECF 70 at 11. It is not: the Kaufmans identified the specific irrelevant requests and the specific burdens of searching and reviewing for responsiveness, privilege, and confidentiality. ECF 60 at 8, 12–13. *See United States ex rel. Willis v. SouthernCare, Inc.*, 2015 WL 5604367, at *8–9 & n.21 (S.D. Ga. Sept. 23, 2015) (excising subpoena requests as unduly burdensome where they lacked subject-matter limits and would sweep in matters unrelated to the case); *McMullen v. GEICO Indem. Co.*, 2015 WL 2226537, at *8–9 (S.D. Fla. May 13, 2015) (finding undue burden where overbroad requests would require non-party counsel to review years of files, cull privileged material, and prepare a privilege log). The case Boost cites (at 11), *In re Application of Mesa Power Grp., LLC*, 878 F. Supp. 2d 1296 (S.D. Fla. 2012), is not comparable. It did not involve Rule 45 discovery from non-party former counsel or any privilege dispute at all; it concerned a request for international judicial assistance under 28 U.S.C. § 1782. *Id.* at 1299–1301, 1305.

Boost also faults the Kaufmans' hit-count evidence as untethered to tailored terms or date limits. ECF 70 at 11. That criticism has it backwards. The Kaufmans' search terms track the language of the Subpoenas' own requests, which impose no date limits or other tailoring. ECF 60-1. Requests 26–28, for example, demand documents about every individual that three named

attorneys ever referred for any TCPA issue – a term search for that category necessarily returns a large volume because the request itself, not the search methodology, is unbounded. Boost cannot draft unlimited requests and then fault the Kaufmans for using search terms that mirror them.

Boost also has no response to the burden of preparing a privilege log. Boost assumes the privilege-log burden "may prove entirely unnecessary" because the crime-fraud exception supposedly "nullifies the protections of the attorney-client privilege" altogether. ECF 70 at 2. As explained above, that is not how the exception works. Even if the Court found privilege waived for a defined category of documents, the Kaufmans would still have to review and log everything that falls outside that category – which, as shown above, is the overwhelming majority of what the Subpoenas demand. *Supra* Section I.B.

Nor has Boost established proportionality. Boost argues that "[p]roportionality favors allowing discovery" because the requests concern "two identified clients, a specific website, and enumerated communications with named counsel and third parties." ECF 70 at 11. That answers the wrong question. The relevant balance weighs the burden and expense of the discovery – heightened here because the Kaufmans are non-parties – against the relevance of the information sought and the interests served by compliance. *Jordan*, 947 F.3d at 1337. Naming the clients and website at issue says nothing about that balance: it does not reduce the burden of the 103 requests demanded. ECF 60-1. Nor do the other identifiers Boost cites – "named parties, identified attorneys . . . specific URLs, and particular phone numbers," ECF 70 at 12 – narrow those requests, which still demand all documents concerning the lawsuit, Dungey, and Rashley; every other matter in which the Kaufmans represented either Plaintiff; and unrelated referrals and third parties. ECF 60-1.

Boost's own position undercuts proportionality further still. Boost concedes that "the Plaintiffs have abandoned the lawsuit and disappeared" and that there is "no way" to reach them. ECF 70 at 12. If that is so, it cannot be proportional to impose a comprehensive document collection and privilege review on non-party former counsel – covering 103 sweeping requests – for a case that, on Boost's own account, may never proceed.

Boost argues that if any burden is found, tailoring – not quashing – is the proper remedy, proposing narrower custodians, date ranges, search terms and categories, phased discovery, deduplication, and categorical privilege logging. ECF 70 at 12. None of that cures the overbreadth here. *See McMullen*, 2015 WL 2226537, at *8 (quashing despite proposed exclusions, since

counsel would still have to sift files and prepare privilege logs). Boost has not articulated what those limitations are or why they would narrow the burden on the Kaufmans. Boost's cited authority (at 12) addressed refining party discovery within established limits – not quashing non-party subpoenas under Rule 45. *See UnitedHealthcare of Fla., Inc. v. Am. Renal Assocs. LLC*, 2017 WL 4785457, at *3–6 (S.D. Fla. Oct. 20, 2017) (directing cooperation in a "discovery slugfest" while preserving previously imposed limits on discovery).

## III. THE COURT SHOULD AWARD THE KAUFMANS THEIR REASONABLE FEES AND COSTS

Boost argues fees are unwarranted because the Subpoenas impose no undue burden, properly seek crime-fraud discovery, and the Kaufmans have not prevailed request-by-request. ECF 70 at 12–13. Each argument fails for the reasons already explained. Serving 103 facially unbounded requests on former counsel, reaching unrelated clients and matters having nothing to do with Boost or this case, was not a reasonable step to reduce the burden on the Kaufmans, and Boost's belated willingness to confer on narrowing after the fact does not cure that. Fees are warranted under Rule 45(d)(1). ECF 60 at 13–14; *see McMullen*, 2015 WL 2226537, at *9. If the Court orders any discovery, it should likewise award the Kaufmans' fees for the burden of reviewing and producing that material. *See* ECF 60 at 14.

## CONCLUSION

For these reasons and those stated in the Motion, Non-Parties Avi R. Kaufman, Rachel Kaufman, and Kaufman, P.A. request that this Court enter an Order: (1) quashing the Subpoenas in their entirety; (2) awarding the Kaufmans their reasonable attorneys' fees and costs incurred in connection with the Motion, under Fed. R. Civ. P. 45(d)(1); and (3) if the Court permits any discovery to proceed, awarding the Kaufmans their reasonable fees and costs incurred in responding to the Subpoenas, together with any other relief the Court deems just and appropriate.

Dated: October 20, 2026

Respectfully submitted,

/s/ *James N. Robinson*
James N. Robinson (Florida Bar No. 608858)
Zachary B. Dickens (Florida Bar No. 98935)
WHITE & CASE
200 South Biscayne Boulevard, Suite 4900
Miami, Florida 33131
Telephone: (305) 371-2700
Facsimile: (305) 358-5744
jrobinson@whitecase.com
zachary.dickens@whitecase.com

Blair E. Trahan (admitted *pro hac vice*)
WHITE & CASE
701 Thirteenth Street N.W.
Washington, D.C. 20005
Telephone: (202) 626-3600
Facsimile: (202) 639-9355
blair.trahan@whitecase.com

*Counsel for the Kaufmans*