**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No. 1:25-cv-21690-KMW

KYLE BUTLER RASHLEY, *et al.*,

Plaintiffs/Counterclaim Defendants,

v.

BOOST HEALTH INSURANCE AGENCY, LLC,

Defendant/Counterclaim-Plaintiff.
_____________________________________/

**BOOST HEALTH INSURANCE AGENCY, LLC'S MOTION FOR FINAL DEFAULT JUDGMENT PURSUANT TO RULE 55 OF THE FEDERAL RULES OF CIVIL PROCEDURE AND FOR AN AWARD OF MONETARY DAMAGES AND MEMORANDUM OF LAW IN SUPPORT**

Counterclaim Plaintiff, Boost Health Insurance Agency, LLC ("Boost"), by and through undersigned counsel and pursuant to the Court's Order dated October 21, 2026 (D.E. 73), respectfully requests that the Clerk enter default judgment against Plaintiffs Kyle Rashley ("Rashley") and Nicholas Dungey ("Dungey") as to their affirmative claims in their Complaint (D.E. 1); and enter an award of monetary damages against them and in favor of Boost upon the First Amended Counterclaim asserted against them (D.E. 14), and in support states as follows:

**MEMORANDUM OF LAW IN SUPPORT**

## I. INTRODUCTION

Simply stated, this case arises from the fraud committed by Rashley and Dungey. They conspired and coordinated a scheme whereby they visited Boost's website within days of each other, entered alias identities, entered their real telephone numbers, and affirmatively provided

their consent to be contacted by Boost. After Boost contacted them in reasonable reliance upon the consent they provided, they immediately sued Boost.

The fraud did not stop there, however. Rashley and Dungey then committed perjury by submitting untruthful Declarations to the Court in an attempt to defeat Boost's Fraudulent Misrepresentation Counterclaim. Specifically, in their word-for-word, identical Declarations, Rashley and Dungey perjured themselves by swearing that they didn't know each other, had never met and had never communicated with each other. Telephone records subpoenaed from their phone carriers show that they lied in their Declarations. Specifically, the telephone records show that they did communicate. In fact, there were seventy-one calls between them in the days and months leading up to the time they visited Boost's website.

When the fraud became apparent and demonstrable, their attorneys immediately withdrew from the case, even though it appears their attorneys knew or should have known about the fraud from the outset – this is even more so given that the phone records also show multiple communications between Rashley and Dungey and their lawyers in the days and months leading up to their coordinated visits to Boost's site. Following the lawyers' withdrawal as counsel – which the Court granted but also noted that the attorneys were "not out of the case" – Rashley and Dungey ignored several Orders of this Court. Their disregard of and failures to comply with the Court's Orders resulted in default judgment against both of them on their affirmative claims and on Boost's Counterclaim. This Motion and Memorandum of Law specifically address the monetary relief now sought by Boost in defending the claims and upon its Counterclaim.

## II. STATEMENT OF UNDISPUTED FACTS

A brief recitation of the relevant facts, which are undisputed by virtue of default against Rashley and Dungey, is set forth below.

Boost owns and maintains the website – www.findyourhealthplan.org – which allows consumers who are interested in obtaining health insurance to provide certain personal information in order to generate quotes for available health insurance products. (D.E. 14 at ¶¶ 1, 2) Boost controls this website and does not use any third parties to drive traffic to it or otherwise allow any third parties to access it. *Id.* at ¶ 3.

The first page of the website conspicuously displays detailed language pursuant to which the consumer provides consent to Boost for it to contact the consumer through a telephone call, text message, or email. That consent language which is intentionally placed on the website's first page at the beginning of the submission form states:

> *By pressing the continue button (1) you understand that using an electronic signature to express written consent to receive emails, telephone calls, text messages, artificial or pre-recorded messages from Boost Health Insurance, its affiliates, and/or any third-party partners (or service provider partners on their behalf), (2) you understand that you may be contacted at the email address and/or telephone number you provided, including your wireless phone number (if provided) utilizing an automated telephone dialing system or robocall, even if you are on a government do-not-call registry, and (3) you agree to this website's Privacy Policy and Terms of Use. You acknowledge your understanding that the provision of false information may subject you to liability. You understand that your consent is not required as a condition of purchase and that you may revoke your consent at any time. You may also call 866-978-9230 TTY 711 to speak with a licensed insurance agent directly. Message and data rates may apply. There is no obligation to enroll.*

(D.E. 14 at ¶¶ 4, 5)

The first page of the website also requires consumers to provide their name, email address, and telephone number and includes a check box where consumers can provide their consent to electronically sign their name and to be contacted by Boost at the email address and telephone number they provided. (D.E. 14 at ¶¶ 6, 7) If a consumer does not check the check box and no consent is provided, Boost will not contact the consumer by telephone or in any other fashion. *Id.* at ¶13.

Boost's website requires a consumer to take an affirmative step before consenting to be contacted. If a consumer does not check the consent box, Boost has no knowledge that the consumer visited the website, and any name, email address, or telephone number the consumer may have entered is not retained. (D.E. 14 at ¶15) However, if a consumer affirmatively checks the box and expressly consents to being contacted, the consumer is permitted to proceed through the remaining pages of the submission. Thereafter, the consumer may be contacted by Boost in accordance with the express consent that they provided. *Id.* at ¶16

Here, Rashley and Dungey interacted with Boost, provided false identifying information while supplying their actual telephone numbers, which caused Boost to believe they were legitimate prospective customers. (D.E. 14 at ¶17) Within just five days of one another, Rashley and Dungey each visited Boost's website, entered false contact information, and supplied their actual telephone numbers. *Id.* at ¶22 These facts show that their conduct was part of a deliberate and coordinated course of conduct designed to generate the very communications upon which they based their fraudulent telemarketing claims, in order to make money by extracting a quick settlement from Boost. *Id.* at ¶¶ 17-22. They filed a class action case claiming to be harmed by the limited contact they received from Boost. Quite to the contrary, however, Boost is the only party that has been harmed. Boost has already spent more than $200,000 to defend a contrived lawsuit that was fraudulent from inception. Declaration of Lisa Messner ("Messner Decl.") ¶ 20, Ex. A. Declaration of Nelson C. Bellido is attached hereto as Ex. B.

## III. <u>LAW AND ARGUMENT</u>

### I. <u>Boost's attorney's fees and costs are proper compensatory damages.</u>

Florida generally follows the American Rule, under which attorneys' fees are not recoverable from an opposing party unless authorized by statute, contract, or a recognized

exception. One such exception is Florida's wrongful-act doctrine, which recognizes that litigation expenses may constitute compensatory damages where a defendant's wrongful conduct naturally and directly causes another party to become involved in litigation. *Winselmann v. Reynold*s, 690 So. 2d 1325, 1328 (Fla. 3d DCA 1997); *State Farm Fire & Cas. Co. v. Pritcher*, 546 So. 2d 1060, 1061 (Fla. 3d DCA 1989). The Eleventh Circuit has likewise recognized the doctrine when applying Florida law. *See Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242, 1261 (11th Cir. 2014). Federal courts applying Florida law similarly recognize that litigation expenses resulting naturally and directly from wrongful conduct may constitute recoverable damages where the expenses arise from litigation. *See Johnson Law Grp. v. Elimadebt USA, LLC*, No. 09-81331-CIV, 2010 WL 2035284, at *8 (S.D. Fla. May 24, 2010); *CC-Aventura, Inc. v. Weitz Co., LLC*, No. 06-21598-CIV, 2008 WL 5143248, at *6 (S.D. Fla. Dec. 5, 2008); *Regions Bank v. Kel Title Ins. Grp., Inc.*, No. 3:12-cv-118-MCR-EMT, 2012 WL 5381510, at *4 (N.D. Fla. Nov. 1, 2012).

Where, as here, wrongful conduct places another in a position where litigation becomes necessary to protect its interests, the litigation expenses are treated as the legal consequences of the original wrong. They are not treated as a "prevailing-party fee award." *Winselmann*, 690 So. 2d at 1328. The relevant inquiry is not simply whether the claimant prevailed, but whether the litigation expenses sought as damages <u>were the natural and direct consequence of the antecedent wrongful conduct</u>. *See Canon Latin Am., Inc. v. Lantech* (C.R.) S.A., No. 08-21518-CIV, 2011 WL 240684, at *16 (S.D. Fla. Jan. 24, 2011) (examining whether the alleged wrongful conduct caused the claimant's involvement in the litigation) (emphasis added).

Here, Boost's request falls on the compensatory-damages side of that distinction. Boost does not merely request a judgment for the fees it incurred prosecuting its fraud Counterclaim against Rashley and Dungey. Rather, Boost seeks the litigation expenses it was forced to incur

defending the affirmative claims generated by Rashley's and Dungey's initial and *intentional fraud*. As alleged in Boost's Counterclaim, Plaintiffs supplied false identifying information while providing telephone numbers at which they could actually be reached, affirmatively induced Boost to communicate with them, and then asserted statutory claims against Boost predicated upon those very communications. (*See* D.E. 14, ¶¶ 23–118) The defense expenses and fees for which Boost seeks recovery did not arise merely because Boost elected to pursue relief against the alleged wrongdoers. They arose solely because the alleged wrongful conduct itself created the factual basis for the claims Boost was forced to defend.

Here, causation undeniably exists. Absent the fraudulent misrepresentations of Rashley and Dungey, Boost would never have had any communications with them. In the absence of this consensual contact, Rashley and Dungey never would have had any contact from Boost and Boost wouldn't have incurred the corresponding costs that have resulted from defending against the illegitimate claims brought by Rashley and Dungey. These expenses are, therefore, not merely incidental costs of Boost's decision to pursue relief against Counter-Defendants. They are a direct consequence of the fraudulent conduct by Rashley and Dungey.

The relationship between Rashley's and Dungey's fraud and the resulting litigation is particularly harmful to Boost here because, accepting the well-pleaded allegations established by default, litigation was not merely an incidental or unforeseeable consequence of their conduct. Boost alleges that Rashley and Dungey *intentionally* induced Boost to engage in the very communications they then characterized as unlawful and used as the basis for their claims. (*See* D.E. 14) The alleged fraud did not simply lead to litigation; it created the factual circumstances upon which that litigation depended. The resulting defense costs were, therefore, a natural and

foreseeable consequence of the alleged fraud and constitute compensatory damages flowing from the wrongful conduct. *See Winselmann*, 690 So. 2d at 1328, and Messner Decl. ¶ 9.

II. Boost should also be awarded punitive damages based on the intentional and fraudulent conduct of Rashley and Dungey.

Florida Statute Section 768.72(2) permits punitive damages when the trier of fact determines by *clear and convincing evidence* that the defendant was personally guilty of either intentional misconduct or gross negligence. Fla. Stat. §768.72(2). The statute defines "intentional misconduct" to mean that "the defendant had actual knowledge of the wrongfulness of the conduct and the high probability that injury or damage to the claimant would result and, despite that knowledge, intentionally pursued that course of conduct, resulting in injury or damage." Fla. Stat. §768.72(2)(a).

Boost's claim rests on the undisputed facts that both Rashley and Dungey, known serial TCPA litigants, conspired and intentionally provided false information to manufacture this lawsuit. These undisputed facts compel the conclusion that Rashley and Dungey knew that their representations were false, knew that Boost would act in reliance on those representations, and deliberately pursued the course of conduct to extort money from Boost.

Florida Statute Section 768.73(1)(a) provides that, absent an applicable exception, punitive damages may not exceed the greater of (1) three times the amount of compensatory damages awarded to the claimant; or (2) $500,000. Fla. Stat. §768.73(1)(a). Thus, after determining the amount of Boost's compensatory damages, including the defense costs recoverable as consequential damages, the Court may determine an appropriate punitive award subject to the statutory limitation. Here, based on the premeditated and egregious tortious conduct of Rashley and Dungey, Boost requests punitive damages in an amount equal to three times its compensatory damages ($293,723.19), which amounts to $881,169.57.

## IV. CONCLUSION

For the reasons detailed above, Boost respectfully requests that the Court (i) enter final judgment awarding Boost compensatory damages consisting of the reasonable attorneys' fees and litigation costs it was required to incur as a direct and foreseeable consequence of the intentional fraud committed by Rashley and Dungey, and hold Rashley and Dungey jointly and severally liable for those damages; (ii) award punitive damages pursuant to Fla. Stat. §§ 768.72 and 768.73; and (iii) grant such other and further relief as the Court deems just and appropriate.

## V. SERVICE AND NOTICE

In accordance with the Court's October 21, 2026, Paperless Order and Federal Rule of Civil Procedure 55(b)(2), Boost is serving a copy of this Motion for Final Default Judgment and all supporting materials on Plaintiffs/Counterclaim Defendants Kyle Butler Rashley and Nicholas Dungey at their last known addresses and by email at the email addresses previously used in this litigation. Accordingly, Rashley and Dungey have been provided written notice of Boost's application for final default judgment.

Boost respectfully submits that an evidentiary hearing is unnecessary because the amount of compensatory damages sought is established through the Declarations of defense counsel, invoices, billing records, and other documentary evidence submitted with this Motion. Should the Court determine that a hearing is necessary under Rule 55(b)(2), however, Boost respectfully requests that the Court set such hearing after providing the notice required by Rule 55(b)(2).

Respectfully submitted,

By: /s/Nelson C. Bellido
NELSON BELLIDO
Florida Bar No. 974048
ROIG LAWYERS

201 S. Biscayne Blvd, 28th Floor
Miami, FL 33131
Telephone: (305) 405-0997
nbellido@roiglawyers.com

- and -

By: /s/ Lisa A. Messner________________
Lisa A. Messner
(*Admitted Pro Hac Vice*)
Mac Murray & Shuster, LLP
6525 West Campus Oval, Suite 210
New Albany, Ohio 43054
(614) 939-9955, (614) 939-9954
lmessner@mslawgroup.com

***ATTORNEYS FOR BOOST HEALTH INSURANCE AGENCY, LLC***

## CERTIFICATE OF SERVICE

I certify that pursuant to the Court's October 21, 2026, Paperless Order and Federal Rule of Civil Procedure 55(b)(2), a true and correct copy of the foregoing Motion, together with its supporting Declarations and exhibits, was served on November 20, 2026, upon Plaintiffs/Counterclaim Defendants Kyle Rashley and Nicholas Dungey as follows:

Kyle Rashley
14815 Boxwood Drive
West Palm Beach, Florida 33418
And by email to Kbrash91@gmail.com

Nicholas Dungey
245 NE 14th Street, Unit 3714
Miami, Florida 33132
- and -
170 NE 2nd Street, Box 294061
Boca Raton. Florida 33429-5092
And by email to ndungey88@gmail.com

By: /s/Nelson C. Bellido
NELSON BELLIDO